**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| GARY ZIMMERMAN | : | No.:302 CV 0181 (AVC) |
| *Plaintiff* | : | |
| | : | |
| VS. | : | |
| | : | |
| GARY COHEN | : | |
| *Defendant.* | : | April 30, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR RECONSIDERATION**

**FACTS:**

The Plaintiff, Gary Zimmerman, is currently a resident of the State of Nevada. He was formerly a resident of Connecticut. The Defendant, Gary Cohen, is an attorney duly admitted to practice in the State of Connecticut, and is, upon information and belief, a resident of the Town of Greenwich, County of Fairfield and State of Connecticut. At all times relevant herein the Defendant, Gary Cohen, maintained a law office in the Town of Greenwich, County of Fairfield and State of Connecticut.

On or about August 4, 2000, the plaintiff, Gary Zimmerman, retained attorney Gary Cohen to represent him in a divorce proceeding against his wife Joan Zimmerman. (Aff. ¶ 2, 4). The divorce action had already been filed by another attorney. Attorney Cohen was hired to replace Mr. Zimmerman's prior

counsel.  (Aff. ¶ 5).  At Attorney Cohen's request, Mr. Zimmerman executed a written retainer agreement.   (Aff. ¶ 1).   Pursuant to the retainer agreement executed between Mr. Zimmerman and Attorney Cohen, Mr. Zimmerman paid the Defendant an initial retainer fee in the amount of $20,000.  (Aff. ¶ 1).  A copy of the Retainer Agreement is attached hereto as Exhibit "A."   Gary Zimmerman thereafter paid various additional retainer fees to the Defendant Gary Cohen whenever requested by the Defendant.  (Aff. ¶ 5).  In all, Mr. Zimmerman paid over $100,000 in billed hourly fees.  (Aff. ¶ 13).   The Defendant, Gary Cohen, at the Plaintiff's request, pursued the existing divorce action in the Superior Court of the State of Connecticut.  Shortly thereafter, however, the Plaintiff's then wife initiated a competing divorce action against the Plaintiff, Gary Zimmerman in the State of Nevada.  (Aff. ¶ 5).  Attorney Cohen participated in the defense of that action as well through local counsel. (Aff. ¶ 5).

Attorney Cohen represented Mr. Zimmerman in the defense of a motion to dismiss filed in Connecticut and assisted, in defense of a motion to dismiss filed in the Nevada action.  No substantive depositions were taken.  However, certain depositions limited only to the issue of jurisdiction and residence were taken.

After both motions to dismiss were denied and both divorce actions proceeded, the parties agreed to "mediate" their divorce. (Aff. ¶ 6). On or about May 17, 2001, the Plaintiff paid the Defendant an additional retainer fee of $25,000, which was requested just prior to a scheduled mediation conference to be held in Chicago, Illinois. (Aff. ¶ 6).

On or about May 21, 2001, the Plaintiff, Attorney Gary Cohen, the Plaintiff's then wife, and her attorney, met in Chicago for a one-week mediation in an attempt to reach a divorce settlement agreement, and to end the litigation proceeding in both Connecticut and Nevada (the "Chicago Mediation"). (Aff. ¶ 7). From approximately May 21, 2001 to May 25, 2001, the Defendant, Gary Cohen represented the Plaintiff, Gary Zimmerman at the mediation. (Aff. ¶ 8). By accepting the Plaintiff, Gary Zimmerman as a client, the Defendant, Gary Cohen accepted the duty and obligation to represent the Plaintiff and to meet the applicable standard of care for attorneys representing clients in divorce proceedings. He also accepted the responsibility to represent. (Aff. ¶ 9). Attorney Cohen breached both the applicable standard of care and the Rules of Professional Responsibility.

On or about May 24, 2001, the Defendant, Attorney Gary Cohen breached the applicable standard of care owed to his client, in that, in his representation of the Plaintiff, Gary Zimmerman, the Defendant, Gary Cohen,

failed to remain within the scope of the representation and abide by the Plaintiff's decisions concerning said representation, when such decisions were within the parameters prescribed by law. (Aff. ¶ 9). Moreover, he proceeded to represent Mr. Zimmerman despite an obvious conflict of interest.

As the mediation progressed, the Defendant, Gary Cohen's representation of the Plaintiff became directly adverse to the Plaintiff's interests, in that said representation was devoid of any degree of loyalty normally afforded a client in that the Defendant's ultimate goal was to coerce a $300,000, from the Plaintiff. (Aff. ¶ 10-15). In addition to Mr. Cohen's breach of the applicable standard of care, the Plaintiff claims that Attorney Cohen's action in coercing additional fees from the Plaintiff constituted fraudulent conduct and a violation of CUTPA. (Aff. ¶ 10-15). During this one-week mediation attempt in Chicago, Illinois, the Defendant, Attorney Gary Cohen, demanded that the Plaintiff pay him $300,000, in addition to approximately $150,000 of legal fees already paid by the Plaintiff, or billed by the Defendant for his representation in the divorce proceeding upon the actual or implicit threat of withdrawal of his representation unless the Plaintiff agreed. (Aff. ¶ 10-15). Attorney Cohen said and implied, that he would divulge to opposing counsel certain information related to the divorce action in Connecticut which would be detrimental to Mr. Zimmerman's best interests, which information was

in fact withheld from the Plaintiff Gary Zimmerman, until the time of the mediation. (Aff. ¶ 10-15). The $300,000 is falsely in the Separation Agreement as a fee to Attorney Cohen for tax advice given to Zimmerman Properties, Inc. (a corporation at that time to be wholly caused by Mr. Zimmerman) as well as a fee to Mr. Zimmerman's ex-wife's attorney for the same services. See, Separation Agreement Exhibit "B". No tax advice was given. In fact, just before the execution of the Separation Agreement Attorney Cohen told Mr. Zimmerman in writing that he was giving no tax advice. See, Exhibit "C". (Aff. ¶ 22).

During this one-week mediation attempt, the Defendant, Attorney Gary Cohen also demanded that the Plaintiff pay his then wife's counsel $300,000. (Aff. ¶ 19). The Defendant, Attorney Gary Cohen advised the Plaintiff and reported to others that should the Plaintiff, Gary Zimmerman fail to pay the requested sums, Defendant, Attorney Cohen would leave Chicago, and "shelve" the mediation and possible settlement.

The Defendant's demand of $300,000 created a conflict of interest forcing the Plaintiff to retain new counsel, an attorney admitted to practice in the State of Illinois, to represent the Plaintiff in negotiations with the Defendant Gary Cohen. (Aff. ¶ 17). When the Defendant, Gary Cohen learned that the Defendant's new counsel would represent the Plaintiff in the mediation should

the Defendant leave Chicago as intimated, the Defendant threatened or intimated that he would undermine the ongoing mediation were the Plaintiff to replace him. When the Plaintiff's new counsel informed the Defendant that the Plaintiff did not wish to pay him the demanded $300,000.00, or pay his wife's attorney $300,000, the Defendant's response was that said $600,000.00 would then have to go to his wife as part of the divorce settlement. (Aff. ¶ 19). Attorney Cohen never said this to Mr. Zimmerman. (Aff. ¶ 19). These sums were misrepresented on the Settlement Agreement creating a very risky tax position in regards to Zimmerman Properties, Inc.[1] (Aff. ¶ 22).

Moreover, the Defendant, Gary Cohen, failed to secure for the Plaintiff in his divorce proceeding any one of the family homes despite at least one of the four homes being available to the Plaintiff at the beginning of negotiations. (Aff. ¶ 24). He failed to provide any substantial tax advice at all to the Plaintiff during the course of the divorce despite assessing over $300,000 in legal fees for tax advice. (Aff. ¶ 25). In fact, Attorney Cohen expressly disclaimed providing any tax advice. (Aff. ¶ 25).

In regards to the legal malpractice, Attorney Cohen failed to properly serve or to reserve and file the divorce action in Connecticut so as to properly

---

[1] The Plaintiff bases his misrepresentation claims as well as his CUTPA claims on the fact that these alleged misrepresentations and conduct arise from the "entrepreneurial" aspects of the relationship.

assert personal jurisdiction over the plaintiff's then-wife who was a "resident" of the State of Connecticut with a home in Redding, Connecticut. (Aff. ¶ 23). This issue became a fraud or CUTPA issue when Attorney Cohen then, using the jurisdiction issue as leverage to obtain his bonus, failed to properly inform the Plaintiff of his rights and options regarding the jurisdictional issues. (Aff. ¶ 23). The Defendant, Gary Cohen to-date has failed to submit any invoices reflecting any activity on the Plaintiff's account since on or about May 7, 2001, neither has the Defendant ever refunded monies to the Plaintiff based on the initial and/or subsequent retainer fees paid by the Plaintiff. (Aff. ¶ 28). The Defendant, in violation of one or more Rules of Professional Conduct entered into a Retainer Agreement with the Plaintiff, which provided for the non-refundability of unexpended retainer funds, in this case a total of more than $46,000.[2] (Aff. ¶ 29-30).

---

[2] The provision in the retainer agreement provided s follows:

An initial retainer of $20,000 is required, against which we will bill until that amount has been exhausted. The initial retainer is also a minimum fee. If we are able to conclude our representation prior to exhausting your retainer payment, the balance shall be retained by use as an additional fee. This shall not apply to those actions in which reconciliation terminates the need for our services. In those cases, a return of the unused retainer will be made upon a case by case review and our mutual agreement.

When the initial retainer has been used, you will be required to pay an additional reasonable retainer. In any event you will be responsible for charges not covered by your retainers. IF your case has not been settled by negotiation and it is assigned for trial by the court, then you agree to pay a reasonable trial retainer sufficient to cover the anticipated cost of trial.

Zimmerman/memo of law re motion for reconsideration

Attorney Cohen has taken the position that the approximately $46,000 balance in Mr. Zimmerman's account at the conclusion of the representation was covered by this provision.  (Aff. ¶ 29).  As a result, Attorney Cohen retained in addition to his hourly fees and an additional fee of $300,000 the unused portion of Mr. Zimmerman's additional retainer of $43,000.  (Aff. ¶ 29-30).

As a result of the Defendant's conduct, the Plaintiff was damaged.  In particular, the Plaintiff sustained a loss of a significant portion of his estate, incurred unnecessary attorney fees, was forced into paying large sums of money under threats, misrepresentations and intimidation that he did not want to pay, and to and has not been provided with a final accounting of the charges incurred and amounts paid to the Defendant pursuant to the Defendant's representation during the divorce proceeding, and has been deprived of over $46,000 in retainer fund which represent payment of unearned fees to the Defendant.  (Aff. ¶ 30).

**<u>PROCEDURAL STATUS</u>:**

The Defendant, Gary Cohen, filed a motion for partial summary judgment pursuant to Fed. R. Civ. P. 56(b) seeking summary judgment as to counts 4, 5 and 7 of the Plaintiff's complaint.   The motion for summary judgment was narrowly drafted and raised only two very precise issues.

The Defendant's motion raised precisely the following issues:

The Fourth Count of the Complaint sounds in intentional misrepresentation, and the Fifth Count sounds in reckless misrepresentation.  <u>Both counts fail, however, because the plaintiff is bound by his affirmation in the Marital Settlement Agreement wherein he affirmed that he suffered no undue influence or coercion, nor were there any misrepresentations made to him with regard to the resolution of his divorce proceedings.</u>  Accordingly, he cannot now, as a matter of law, raise a genuine issue of material fact regarding his intentional and reckless misrepresentation of claims against the defendant in connection with those proceedings.  Therefore, the defendant is entitled to judgment as a matter of law on the Fourth and Fifth Counts of the plaintiff's Complaint.

Furthermore, the defendant is entitled to summary judgment in his favor on the Seventh Count of the plaintiff's Complaint, alleging a violation of CUTPA.  <u>It is well established that, as a matter of law, professional negligence does not constitute a violation of CUTPA.  CUTPA applies to the conduct of attorneys only when actions at issue are chiefly concerned with the solicitation of business or billing practices, and not the attorney's competence or strategy.  The plaintiff's CUTPA claim expressly relies on the factual allegations underlying his claim of professional negligence and simply recharacterizes the defendant's alleged negligent conduct as "unfair," "deceptive" and "commercial."  Because professional negligence does not constitute a violation of CUTPA, however, the defendant is entitled to judgment as a matter of law on the Seventh Count of the plaintiff's Complaint.</u>

The court describes the issues broadly as follows:

The issues presented are:  (1) whether there is a genuine issue of material fact regarding the defendant's alleged intentional misrepresentation; (2) whether there is a genuine issue of material fact regarding the defendant's alleged reckless misrepresentation; and (3) whether the CUTPA cause of action must fail because the defendant's alleged conduct falls outside of the entrepreneurial aspect of the practice of law.

Zimmerman/memo of law re motion for reconsideration

The Plaintiff responded to, briefed and addressed the narrow issues raised by the defendant not those addressed by the court. While this was apparently not what the Court believed the issues, Plaintiff's counsel erroneously believed the Defendant's motion to be essentially a Fed. R. Civ. R. 12(b)(6) motion. In fact, the <u>only</u> factual issues raised by the Defendant was the language of the Separation Agreement and its legal affect and the content of the Plaintiff's CUTPA count. The motion filed by the defendant although in the guise of a Rule 56(b) motion is, in fact, a Rule 12 (b)(6) motion. The only references to fact in the motion are to the Separation Agreement which both parties admit is the Separation Agreement signed by the Plaintiff and his wife and the allegation of Plaintiff's complaint. The defendant argues that:

1.     As a matter of law the Plaintiff is barred from claiming misrepresentation whether intentional or reckless because of the language of the Separation Agreement.

2.     As a matter of law, the defendant, Gary Cohen cannot be liable under CUTPA because the allegations of the Plaintiff's Complaint are identical to those in Count One alleging legal malpractice and cannot form the basis for a CUTPA claim.

The court ruled as follows:

For the reasons that hereafter follow, the court concludes that: (1) the plaintiff fails to raise a genuine issue of material fact regarding the defendant's alleged intentional misrepresentation because the record lacks any evidentiary basis for the claim; (2) the plaintiff fails to adduce sufficient evidence to establish that there is a genuine issue of material fact regarding the defendant's alleged reckless misrepresentation; and (3) the plaintiff fails to adduce sufficient evidence to establish that the conduct at issue constitute the basis for a CUTPA violation. Accordingly, the defendant's motion for summary judgment (document no. 26) is GRANTED.

## ARGUMENT:

**A.    THE COURT SHOULD RECONSIDER ITS DECISION AS TO THE MOTION FOR SUMMARY JUDGMENT AND ALLOW THE PLAINTIFF TO SUPPLEMENT HIS RESPONSE BECAUSE THERE WAS A FUNDAMENTAL MISUNDERSTANDING OF THE SCOPE OF THE DEFENDANT'S MOTION**

Rule 56(e) provides:

(e) Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the maters stated therein. Sworn or certified copies of tall papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. <u>When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.</u> If the adverse party does not so respond, summary judgment if appropriate, shall be entered against the adverse party.

The Defendant simply did not support the Motion for Summary Judgment as set forth in F. R. Civ. P. § 56(e).  While the Defendant need not comply with Rule 56(c) to file a Motion For Summary Judgment.  The support it does affect the obligation of the Plaintiff in response.

In <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) (Justice White concurring) the Supreme Court said:

> <u>I agree that the Court of Appeals was wrong in holding that the moving defendant must always support his motion with evidence or affidavits showing the absence of a genuine dispute about the material fact.  I also agree that the movant may rely on depositions, answers to interrogatories, and the like, to demonstrate that the plaintiff has no evidence to prove his case and hence that there can be no factual dispute.  But the movant must discharge the burden the Rules place upon him:  It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has not evidence to prove his case.</u>
>
> A plaintiff need not initiate any discovery or reveal his witnesses or evidence unless required to do so under the discovery Rules or by court order.  Of course, he must respond if required to do so; but he need not also depose his witnesses or obtain their affidavits to defeat a summary judgment motion asserting only that he has failed to produce any support for his case.  <u>It is the defendant's task to negate, if he can, the claimed basis for the suit.</u>

The Defendant in this case did even less than that.  He did not argue that the Plaintiff did not have the evidence to prove his case, he argued that based solely upon the Separation Agreement he could not prove any set of

facts which would prove his issue.  That is a Rule 12(b)(6) assertion.
Moreover, as to CUTPA, he agreed that the allegations were malpractice
allegations and as a matter of law were insufficient to allow the case to
proceed.  This too is a Rule 12(b)(6) argument.  While, the Motion for Summary
judgment can be used to raise those issues, the filing of such a motion does
not put the Plaintiff to the burden of establishing the factual basis of his case.

In the Celotex dissent by Justice Brennan, Chief Justice Rohnquist and
Justice Blackman, Justice Brennan first describes Rule 56 standards to which
both the majority and dissent assent.  The dissent states:

> The burden of production imposed by Rule 56 requires the
> moving party to make a prima facie showing that it is entitled to
> summary judgment.  10A Wright § 2727.  The manner in which
> this showing can be made depends upon which party will bear the
> burden of persuasion on the challenged claim at trial.  If the
> moving party will bear the burden of persuasion at trial, that party
> must support its motion with credible evidence – using any of the
> materials specified in Rule 56(c) -- that would entitle it to a
> directed verdict if not controverted at trial.  *Ibid*.  <u>Such an
> affirmative showing shifts the burden of production to the party
> opposing the motion and requires that party either to produce
> evidentiary materials that demonstrate the existence of a
> "genuine issue" for trial or to submit an affidavit requesting
> additional time for discovery.  *Ibid.*</u>; Fed. Rules Vic. Proc. 56(e),
> (f).
> <u>If the burden of persuasion at trial would be on the
> nonmoving party, the party moving for summary judgment may
> satisfy Rule 56's burden of production in either of two was.  First,
> the moving party may submit affirmative evidence that negates an
> essential element of the nonmoving party's claim.  Second, the
> moving party may demonstrate to the court that the nonmoving</u>

party's evidence is insufficient to establish an essential element o the nonmoving party's claim. See 10A Wright § 2727, pp. 130-131; Louis, Federal Summary Judgment Doctrine:  A Critical Analysis, 83 Yale L. J. 745, 750 (1974) (hereinafter Louis).  IF the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., ante, at 249.

Where the moving party adopts this second option an seeks summary judgment on the ground that the nonmoving party – who will bear the burden of persuasion at trial – has no evidence, the mechanics of discharging Rule 56's burden or production are somewhat trickier. Plainly, a conclusory assertion that the nonmoving has no evidence is insufficient.  See *ante*, at 328 (White J., concurring).  Such a "burden" of production is not burden at all and would simply permit summary judgment procedure to be converted into a tool for harassment.  See Louis 750-751.  Rather, as the Court confirms, a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record.  *Ante*, at 323.  This may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy of documentary evidence.  If there is literally no evidence in the record, the moving party mat demonstrate this by reviewing the for court the admissions, interrogatories, and other exchanges between the parties that are in the record.  Either way, however, the moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party.

If the moving party has not fully discharged this initial burden of production, its motion for summary judgment must be denied, and the court need not consider whether the moving party has net its ultimate burden of persuasion.  Accordingly, the nonmoving party may defeat a motion for summary judgment that asserts that the nonmoving party has no evidence by calling the court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party.  In that event, the moving party must respond by making an attempt to demonstrate the inadequacy of this evidence, for it is only by attacking all the

record evidence allegedly supporting the nonmoving party that a party seeking summary judgment satisfies Rule 56's burden of production.  Thus, if the record disclosed that the moving party had overlooked a witness who would provide relevant testimony for the nonmoving party at trial, the court could not find that the moving party had discharged its initial burden of production unless the moving party sought to demonstrate the inadequacy of this witness' testimony.  Absent such a demonstration, summary judgment would have to be denied on the ground that the moving party had failed to meet its burden of production under Rule 56.

Justice Brennan states in footnote 3:

Once the moving party has attacked whatever record evidence – if any – the nonmoving party purports to rely upon, the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f).  See 10A Wright § 2727, pp. 138-143.  Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material facts for trial.  See, e.g., First National Bank of Arizona v. Cities Service Co., 291 U.S. 253, 289 (1968).

The point is that either plaintiff's counsel or the court misunderstood the Defendant's motion.  The Plaintiff should not be penalized because the Defendant filed a narrow Motion for Summary Judgment and the Plaintiff responded narrowly.  The Defendant raised two distinct factual issues and (1) was based entirely upon the admitted Separation Agreement and involves only

an issue of law and interpretation of the Agreement. As to misrepresentation, the only challenge to the Plaintiff's case was that the Separation Agreement barred any misrepresentation claims.

The Second claim did not challenge the Plaintiff evidence at all but claimed that the allegations of the Plaintiffs CUTPA claim were identical to those of the Plaintiff's malpractice claims such that it was barred because CUTPA is not applicable to attorney malpractice claims.

The Plaintiff therefore responded just as precisely assuming that all the court would address are the specific issues raised by the Defendant. The Second Circuit Court of Appeals in Farid v. Smith, 850 F.2d 917 (1988) also discussed the burden on the moving party in a motion for summary judgment. The Court said:

> Under Fed. R. Civ. P. 56(c), summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Where, as here, the burden of persuasion at trial would bon the non-moving party (Farid), the party moving for summary judgment may satisfy his burden of production under Rule 56 in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 331, 91, L. Ed. 2d 265, 106 s. Ct. 2548 (1986) (Brennan, J., dissenting). We conclude that summary judgment was appropriate in the present case only if appellee either negated an

essential element of Farid's due process and first amendment claims, or demonstrated that the evidence submitted by Farid was insufficient as a matter of law.

In <u>Hughes v. City of Stamford</u>, 2004 U.S. Dist. LEXIS 5480 (2004) (No. 3:01CV2325) U.S. District Court Judge Squatrito said of the Rule 56 burden:

> Although Hughes must prove pretext to the factfinder, which is ancillary to his ultimate burden of proving discrimination, the Department, as the moving party, has the burden of proving that there is no issue of material fact with respect to the issue of pretext. The Department has not met this burden. This is not a situation where the movant meets its initial burden of demonstrating no material issue of fact, thereby triggering the non-moving party's burden to produce evidence that there is indeed a material issue of fact. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330-31, 91 L. Ed. 2d 265, 106 S.Ct. 2548 (1986) (Brennan, J. dissenting) ("The burden of establishing the nonexistence of a 'genuine issue' is on the party moving for summary judgment…This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party…The court need not decide whether the moving party has satisfied its ultimate burden or persuasion unless and until the Court finds that the moving party has discharged its initial burden of production"). Rather, this is a situation where the movant has not met its initial burden and it is not necessary for the non-moving party to present any evidence.

Because of the Plaintiff's fundamental misunderstanding of the Court's view of the Defendant's Motion it is appropriate to allow the Plaintiff to respond to the broader issues raised by the Court.

**B. THE PLAINTIFF HAS CLEARLY NOT WAIVED ITS ABILITY TO BRING A CLAIM BASED UPON MISREPRESENTATION AND THERE IS MORE THAN SUFFICIENT MISREPRESENTATION CLAIMS.**

The Plaintiff, Gary Zimmerman, has asserted claims sounding in intentional misrepresentation, reckless misrepresentation and CUTPA. The Plaintiff has also asserted claims based upon negligent misrepresentation and professional malpractice which have not been challenged. The Defendant has challenged only Plaintiff's claims sounding in intentional and reckless misrepresentation and CUTPA. The Connecticut Supreme Court has addressed the standards for alleging misrepresentation.

Misrepresentation is based upon the duty not to affirmatively mislead. The Connecticut courts have long recognized a cause of action for negligent or innocent misrepresentation as well as intentional and reckless misrepresentation. See, Williams Ford, Inc. v. Hartford Courant Company, 232 Conn. 559 (1995). Williams Ford is probably the Connecticut Supreme Court's most recent and most complete explanation of the law of misrepresentation. The Connecticut Supreme Court has said:

> This court has long recognized liability for negligent misrepresentation. We have held that even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth. Richard v. A. Waldman & Sons, Inc., 155 Conn. 343, 346, 232 A.2d 307 (1967); see also J. Frederick Scholes Agency v. Mitchell, 191

Conn. 353, 359, 464 A.2d 795 (1983); <u>Johnson v. Healy</u>, 176 Conn. 97, 102, 405 A.2d 54 (1978); <u>Warman v. Delaney</u>, 148 Conn. 469, 473, 172 A.2d 188 (1961); <u>Boucher v. Valus</u>, 6 Conn. Cir. Ct. 661, 665-66, 298 A.2d 238 (1972).  The governing principles are set forth in similar terms in § 552 of the Restatement (Second) of Torts (1977): 'One who, in the course of his business, profession or employment … supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.'  See also <u>Ultramares Corporation v. Touche</u>, 255 N.Y. 170, 174 N.E. 441 (1931); <u>Glanzer v. Shepard</u>, 233 N.Y. 236, 135 N.E. 275 (1922); <u>W. Prosser & W.P. Keeton</u>, <u>supra</u>, § 107, p. 745." (Internal quotation marks omitted).  <u>D'Ulisse-Cupo v. Board of Directors of Notre Dame High School</u>, 202 Conn. 206, 217-18, 520 A.2d 217 (1987).

      <u>See</u>, <u>Williams Ford, Inc. v. Hartford Courant Company</u>, 232 Conn. 559 (1995).

      The Court continued:

We have already decided that the tort of negligent misrepresentation is not limited to those in the business of selling information.  In <u>D'Ulisse-Cupo v. Board of Directors of Notre Dame High School</u>, <u>supra</u>, 202 Conn. 217-18, we concluded that a private school could be liable for negligent misrepresentation by stating to a teacher that she would be rehired the following year, when it should have known that that would not be the case.  The language of § 552 of the Restatement (Second) of Torts, which we adopted in <u>D'Ulisse-Cupo</u>, plainly does not limit the tort of negligent misrepresentation to those in the "business of selling information."  To the contrary § 552 applies to anyone who supplies information "in the course of his business, profession or employment, or in any other

transaction in which he has a pecuniary interest."
Providing information in the course of one's business is
plainly more expansive than selling information as the
purpose of one's business.

In footnote 1 the <u>Williams Ford</u> court continues:

Any doubt in this regard is resolved by examining
illustration 4 of the comments on subsection (2) of § 552 of
the Restatement (Second) of Torts, regarding the intended
scope of the tort of negligent misrepresentation,  In that
illustration, A, having real estate lots for sale, negligently
supplies misinformation about those lots to a multiple
listing agent for the purpose of having the information
incorporated into a multiple listing available to numerous
potential customers.  B, in reliance upon the
misinformation, purchases one of A's lots and in
consequence suffers pecuniary loss.  A is subject to
liability to B.

The Connecticut Supreme Court has applied similar standards to

Intentional Misrepresentation.  In <u>Suffield Development Associates Limited</u>

<u>Partnership v. National Loan Investors L.P., et al</u>, 260 Conn. 766 (2002) the

Supreme Court said:

The essential elements of an action in common law fraud, as
we have repeatedly held, are that (1) a false representation
was made as a statement of fact; (2) it was untrue and
known to be untrue by the party making it; (3) it was made to
induce the other party to act upon it; and (4) the other party
did so act upon that false representation to his injury;"
<u>Barbara Weisman, Trustee v. Kaspar</u>, 233 Conn. 531, 539,
661 A.2d 530 (1995).  Under a fraud claim of this type, the
party to whom the false representation was made claims to
have relied on that representation and to have suffered harm
as a result of the reliance.

The Plaintiff has adequately pled and supported a claim for intentional and reckless misrepresentation.

Rule 9(b) of the Federal Rules of Civil Statute in relevant part:

> (b)    **Fraud, Mistake, Condition of the Mind.**  In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Rule 9(b) applies only to allegations of fraud.

The Second Circuit Court of Appeals has said of Rule 9(b).

> In reviewing a district court's grant of a motion to dismiss, we accept the facts alleged in the Complaint as true.  Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1052 (2d Cir. 1993). Generally, we will uphold a district court's dismissal of a claim only if it appears that the plaintiff can prove no set of facts upon which relief may be granted.  Conley v. Gibson, 355 U.S. 41, 45-46, 2 L.Ed. 2d 80, 78 S. Ct. 99 (1957).  When fraud is asserted, however, we must also view the complaint in light of Rule 9(b), which requires that "the circumstances constituting fraud … be stated with particularity."  Fed.R.Civ.P. 9(b).  Securities fraud allegations under § 10(b) and Rule 10b-5 are subject to the pleading requirements of Rule 9(b), and a complaint making such allegations must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) (citing Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989)).

Rule 9(b) also provides that "malice, intent, knowledge, and other condition of mind of a person may be averred generally." However, since Rule 9(b) is intended "to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit," O'Brien v. National Property Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991) (internal quotes omitted); see also Ross v. Bolton, 904 F.2d 819, 823 (2d Cir. 1990); DiVittorio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242, 1247 (2d Cir. 1987), the relaxation of Rule 9(b)'s specificity requirement for scienter "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.'" O'Brien, 936 F.2d at 676 (quoting Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990)). Therefore, to serve the purposes of Rule 9(b), we require plaintiffs to allege facts that give rise to a strong inference of fraudulent intent. See Mills, 12 F.3d at 1176; O'Brien, 936 F.2d at 676; Quaknine v. MacFarlane, 897 F.2d 75, 79 (2d Cir. 1990).

The requisite "strong inference" of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. See In re Time Warner Inc. Securities Litigation, 9 F.3d 259, 268-69 (2d cir. 1993), cert. denied, 114 S. Ct. 1397 (1994); Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46, 50 (2d Cir. 1987), cert. denied, 484 U.S. 1005, 98 L. Ed. 2d 650, 108 S. Ct. 698 (1988), overruled on other grounds by United States v. Indelicato, 865 F.2d 1370 (2d Cir. 1989) (en banc). We agree with the district court that Shields has failed to plead facts sufficient to raise a strong inference of fraud, and that the Complaint therefore must be dismissed for failure to meet the specificity requirements of Rule 9(b).

Rule 9(b) appears only to apply to assertions of fraud and not the negligent or reckless conduct.  See, Shields v. City of Bancorp, Inc., 25 F.3d 1124 (1794).  In Smith v. The Maritime Aquarium at Norwalk, Inc., 198 F. Supp. 2d 492 (2002) the District for the Southern District of New York in specifically dealing with claims based upon negligent misrepresentation under Connecticut law as well as fraud.  The Court specifically applied Rule 9(b) to the Connecticut Common Law fraud claims, but not to the Connecticut negligent misrepresentation claims.  The factual allegations of both claims were identical.

In terms of fraud and intentional misrepresentations, the Second Circuit has said:

> To satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.  See Goldman v. Belden, 754 F.2d 1059, 1069-70 (2d Cir. 1985).  On a motion to dismiss, a court must read the complaint generously, and draw all inferences in favor of the pleader.  See Yoder v. Orthomolecular Nutrition Inst., Inc., 751 F.2d 555, 562 (2d Cir. 1985).

The Connecticut Supreme Court has held that fraud may arise when one party accepts a stipulation based upon a fraudulent representation by the other party.  See, Billington v. Billington, 220 Conn. 212, 217-18 (1991).  Although, in

the family context, the only remedy afforded the defrauded party is to have the

court open and reconsider the judgment as a matter of equity.  In this case the

party committing the alleged fraud is not a party to the agreement.  Reopening

the judgment would have no effect on the Defendant in this case so the fraud is

and should be actionable.

What Billington, supra, tells us is that the act of inducing the execution of a

stipulation by fraud or misrepresentation taints the entire agreement making it

void or voidable as against the fraudulent party.

In Billington v. Billington, 220 Conn. 212, 218 (1991) the Connecticut

Supreme Court recognized the right of a party to reopen a judgment entered on a

Settlement Agreement in a marital dissolution case.  The Court said:

> We turn now to the first certified issue.  "'Fraud consists in deception
> practiced in order to induce another to part with property or surrender
> some legal right, and which accomplishes the end designed.'"  Alexander
> v. Church, 53 Conn. 561, 562, 4 A. 103 (1886), quoting T. Cooley, Torts p.
> 474.  The elements of a fraud action are: (1) a false representation was
> made as a statement of fact; (2) the statement was untrue and known to
> be so by its maker; (3) the statement was made with the intent of inducing
> reliance thereon; and (4) the other party relied on the statement to his
> detriment.  Maturo v. Gerard, 196 Conn. 584, 587, 494 A.2d 1199 (1985);
> Miller v. Appleby, 183 Conn. 51, 54-55, 438 A.2d 811 (1981).  A marital
> judgment based upon a stipulation may be opened if the stipulation, and
> thus the judgment, was obtained by fraud.  Kenworthy v. Kenworthy, 180
> Conn. 129, 131, 429 A.2d 837 (1980).  "The power of the court to vacate a
> judgment for fraud is regarded as inherent and independent of statutory
> provisions authorizing the opening of judgment; hence judgments obtained
> by fraud may be attacked at any time."  Id.

**C.    THE PLAINTIFF DESPITE THE APPARENT NARROW SCOPE OF THE DEFENDANTS ORIGINAL MOTION FOR SUMMARY JUDGMENT HAS ESTABLISHED THAT THERE IS A MATERIAL ISSUE OF FACT FOR TRIAL AS TO MISREPRESENTATION.**

The Plaintiff can prove each and every allegation of his complaint.  In support of his attaches the Affidavit of Gary Zimmerman In Support of Motion For Reconsideration.  In addition, the Plaintiff submits the Deposition Testimony of Gary Cohen and Gary Zimmerman.

The Deposition transcripts support the affidavit testimony of Gary Zimmerman.  In addition, attached to the Affidavit of Gary Zimmerman is the Retainer Letter between Gary Zimmerman and Gary Cohen, the Separation Agreement and the letter of May 24, 2001 from Mr. Cohen to Mr. Zimmerman.

The evidence submitted by the Plaintiff tends to show the following in support of his claims:

1.    On or about August 4, 2000, he attorney Gary Cohen to represent my interests in a divorce proceeding against his wife.  He paid Gary Cohen an initial retainer fee in the amount of $20,000.  He signed a written retainer letter.

2.    He paid various additional retainer fees to Gary Cohen, when requested by Gary Cohen during the course of his representation.

3.    Attorney Cohen, at his request, pursued an existing divorce action in the Superior Court of the State of Connecticut.

4.    His wife initiated a competing divorce action against him in the State of Nevada and Attorney Cohen assisted him in his representation in that matter through local counsel.

5.    On or about May 17, 2001, He paid Attorney Cohen, an additional retainer fee of $25,000, which was requested just prior to a scheduled mediation conference to be held in Chicago, Illinois.

6. On or about May 21, 2001, He along with Attorney Cohen met with my wife, and her attorney, in Chicago for a one-week mediation in an attempt to reach a divorce settlement agreement, and to end the litigation proceeding in both Connecticut and Nevada.

7.    Beginning on May 21, 2001 and continuing through May 25, 2001, Attorney Cohen represented him at the Chicago mediation.

8.    When I hired Attorney Cohen, I believed and relied upon the fact that he had accepted the <u>duty</u> and <u>obligation</u> to represent him diligently and faithfully and to meet the standard of care and abide by the ethical rules applicable to attorneys representing clients in divorce proceedings.

9.    Beginning on May 24, 2001, Attorney Cohen due to what Mr. Zimmerman believes to be a conflict of interest, that being his desire to charge

additional fees, failed to remain with the scope of the representation as defined by him and abide by the clients decisions concerning his divorce, when his decisions were clearly within the parameters prescribed by law.

10.    From on May 21, 2001 onward, Attorney Cohen's representation of Mr. Zimmerman was adverse to his interests, in that it appeared to me that Attorney Cohen's ultimate goal was to coerce an additional $300,000 from Mr. Zimmerman and as part of that coercion to pay an additional $300,000 to his wife's lawyer. At various times he used threatening language, hung up phones on Mr. Zimmerman and walked away from him all while he was paying him to be his lawyer.

11.    In particular, Attorney Cohen on Wednesday, May 23, 2001 and Thursday, May 24, 2001 at various times demanded of Mr. Zimmerman and pressured me to pay to him and to his wife's lawyer $600,000 of additional fees for work never performed.

12.    During this one-week mediation attempt in Chicago, Illinois, in particular on Wednesday, May 23rd and Thursday, May 24th, 2001, Attorney Cohen demanded that Mr. Zimmerman pay him a $300,000 in addition to approximately $150,000 of legal fees already paid by me, or billed by the him for his representation in the divorce proceeding upon the actual or implicit threat of withdrawal of his representation.

13.     Attorney Cohen clearly implied to Mr. Zimmerman that he would divulge to opposing counsel certain information related to the divorce action in Connecticut which would be detrimental to his best interests, which information was in fact withheld from me until the time of the mediation unless Mr. Zimmerman paid the additional fees.

14.     During this one week mediation attempt, Attorney Cohen demanded that Mr. Zimmerman make a $300,000 payment to my wife's counsel.

15.     Attorney Cohen told others including a lawyer in Chicago Mr. Zimmerman consulted for help, that should he not agree to pay the requested sums, he would leave Chicago, and "Shelve" the mediation and any possibility of settlement.

16.     Attorney Cohen's request for fees far in excess of any fees Mr. Zimmerman agreed to pay or was obligated to pay by the Retainer Agreement created a conflict of interest, forcing Mr. Zimmerman to attempt to retain an attorney admitted to practice in the State of Illinois, to represent him in my discussions with Attorney Cohen.  He was in the impossible situation of having to hire an attorney to talk to his own attorney.

17.     Mr. Zimmerman was so fearful of Attorney Cohen's threats that he would not allow the Attorney he contacted in Chicago to step into the case.

Zimmerman/memo of law re motion for reconsideration

When Attorney Cohen found out that Mr. Zimmerman spoke with another lawyer he became angry and reiterated his threat to disclose adverse information to opposing counsel.

18.     When Mr. Zimmerman's new counsel informed Attorney Cohen he did not wish to pay him the demanded $300,000 or pay his wife's attorney $300,000, Attorney Cohen's angry response was that the $600,000 would then have to go to Mr. Zimmerman's wife which was clearly contrary to his best interests.

19.     As a result of the threats and intimidation Mr. Zimmerman was coerced and frightened into paying the $600,000 to Attorney Cohen and to Attorney Grund, his wife's lawyer.

20.     When Mr. Zimmerman refused to pay Attorney Cohen demanded the $300,000 Attorney Cohen failed to follow my instructions and remove provisions from the settlement agreement that discussed the payment of the funds.

21.     Mr. Cohen and Mr. Grund stood over Mr. Zimmerman and demanded that he immediately wire the money into their accounts.  Mr. Cohen and Mr. Grund insisted that they would hold the money in escrow until the Separation Agreement was accepted by the Nevada Court.  Attorney Cohen,

contrary to that representation, immediately put the $300,000 into his general account.

22.    Attorney Cohen designated the $600,000 as a fee paid for "tax advice", while Mr. Zimmerman was told in a letter dated May 24, 2001 that no such advice was given.  In addition, the separation agreement that Mr. Zimmerman objected to held a provision disclaiming liability relative to "tax advice".  Finally, the tax structure of the separation agreement was defective as it actually caused Mr. Zimmerman to incur taxes for distribution to my wife.

23.    While Attorney Cohen was coercing Mr. Zimmerman to pay him the $300,000 and to pay Attorney Grund $300,000, Attorney Cohen told me there was a serious jurisdictional defect in Mr. Zimmerman's Connecticut case which threatened his ability to obtain a valid property division in Connecticut. Mr. Zimmerman did not hear of this problem until he was in Chicago.

24.    In addition, Attorney Cohen failed to secure for Mr. Zimmerman in his divorce proceeding any one of four (4) family homes despite at least one of the four (4) family homes being available to Mr. Zimmerman at the beginning of negotiations.

25.    Attorney Cohen failed to provide any tax advice at all to Mr. Zimmerman during the course of the divorce despite claiming over $300,000 in

legal fees for tax advice.  His bills to Mr. Zimmerman and his time records produced in this case reveal only .5 hours spent reviewing a tax return.

26.     Attorney Cohen to-date has failed to submit any invoices to Mr. Zimmerman reflecting any invoices reflecting any activity on the Plaintiff's account since May 7, 2001.  Mr. Zimmerman had on deposit with Attorney Cohen over $40,000 in retainer funds which were neither billed against nor applied by Attorney Cohen against billings.

27.     Attorney Cohen entered into a Retainer Agreement with Mr. Zimmerman which provided for the non-refundability of unexpended and unearned retainer funds, in this case a total of more than $46,000.

28.     As result of Attorney Cohen's conduct Mr. Zimmerman have been damaged.  In particular, Mr. Zimmerman lost a large portion of my assets, incurred unnecessary attorney fees, was forced into paying large sums of money under threat, coercion, misrepresentation and intimidation and Mr. Zimmerman did not want to pay.  Mr. Zimmerman to-date has not been provided with a final accounting of the charges incurred and amounts paid to Attorney Cohen and have been deprived of over $46,000 in retainer funds which represent payment of unearned fees.

29.     Attorney Cohen made various statements and representations to Mr. Zimmerman during the course of his divorce which were untrue, and were

clearly designed to benefit him and not Mr. Zimmerman including the fact that (1) the Connecticut Divorce action was jurisdictionally defective, (2) Attorney Cohen has never told Mr. Zimmerman why that was so, (3) Attorney Cohen told Mr. Zimmerman 's accountant he had a two step process by which the distributions from Zimmerman Properties, Inc. to his wife would be tax fee which was untrue,  (4) Mr. Cohen said he would walk out of the Chicago Mediation if Mr. Zimmerman did not pay him the money he demanded and (5) Mr. Cohen represented that the additional money was for tax advise which was untrue because Mr. Cohen gave Mr. Zimmerman a letter saying no tax advice was given.

30.    Mr. Zimmerman reasonable relied upon the statements and representations of the Defendant to his detriment.  Mr. Zimmerman relied upon these statements and upon Attorney Cohen.

31.    Most of Attorney Cohen's actions asserted above relates solely to the business relationship between he and Mr. Zimmerman and not his representation of Mr. Zimmerman.

32.    Mr. Zimmerman has sustained ascertainable loss of money and property, and it is substantial in nature within the meaning of Connecticut's Unfair Trade Practice Act.

Mr. Zimmerman's Affidavit and the complaint clearly sets forth several material misstatements of fact which were reasonably relied upon by Mr. Zimmerman to his detriment.  There is sufficient evidence to establish that the representations were untrue.  The predicate allegations are made and support this is a material issue of fact.

**D.     THE CONDUCT UPON WHICH THE PLAINTIFF BASES HIS CUTPA CLAIMS DO NOT SIMPLY CONSTITUTE LEGAL MALPRACTICE BUT INVOLVE THE ENTREPRENEURIAL ASPECTS OF THE PRACTICE OF LAW.**

Connecticut General Statutes § 42-110b(a) provides:

No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

The Connecticut Supreme Court said in Suffield Development Associates Limited Partnership v. National Loan Investors, L.P., et al, 260 Conn. 766, ___ (2002) in regards to the applicability of CUTPA to attorneys:

The U.S. District Court has stated that, in general, CUTPA applies to the conduct of attorneys.  Heslin v. Connecticut Law Clinic of Trantolo & Trantolo, 190 Conn. 510, 521, 461 A.2d 938 (1983).  The statute's regulation of the conduct of any trade or commerce does not totally exclude all conduct of the profession of law…. Id.  The Connecticut

Supreme Court has stated, that the entrepreneurial aspects of the

practice of law are covered by CUTPA.  Haynes v. Yale-New Haven

Hospital, 243 Conn. 17, 34, 699 A.2d 964 (1997).  Beverly Hills

Concepts, Inc. v. Schatz & Schatz, Ribicoff & Kotkin, 247 Conn. 48, 79,

717 A.2d 724 (1998).  (emphasis added)

The Supreme Court's analysis has been slated simply as:

Our CUTPA cases illustrate that the most significant question in

considering a CUTPA claim against an attorney is whether the

allegedly improper conduct is part of the attorney's professional

representation of a client or is part of the entrepreneurial aspect of

practicing law.

The Supreme Court in Suffield Development Associates Limited

Partnership v. National Loan Investors, LP, 260 Conn. 766 (2002) specifically

said about the "entrepreneurial" exception:

First, it is important to note that, although all lawyers are subject to

CUTPA, most of the practice of law is not.  The "entrepreneurial"

exception is just that, a specific exception from CUTPA immunity for a

well-defined set of activities – advertising and bill collection, for

example.  See, Haynes v. Yale-New Haven Hospital, 243 Conn. 17,

34-38, 699 A.2d 964 (1997) (reasoning that practice of law and medicine may give rise to CUTPA claims only for entrepreneurial aspects, such as solicitation of business and billing, and not for claims involving issues of competence and strategy). It is not a call-all provision intended to subject any arguably improper attorney conduct to CUTPA liability. Therefore, the mere fact that the actions of the attorney and the law firm might have deviated from the standards of their profession does not necessarily make the action entrepreneurial in nature.

The allegations of the Plaintiff's complaint fall squarely within the entrepreneurial exception. The claims made by the Plaintiff, at least in part, relate to the Defendants' billing practices, fees, retainer agreement and the solicitation of a fee for services he acknowledged were not provided. This conduct is completely within the entrepreneurial exception. It deals with the business relationship between the client and attorney. The allegations are sufficient to set forth a claim under CUTPA. Each is supported by evidence.

In Williams Ford, the Connecticut Supreme Court dealt with similar issues raised by the Defendant in this case.

In Williams Ford, supra, the Plaintiff alleged as follows:

Count four of the plaintiffs' complaint asserted that, based on the allegations contained therein, the defendants have violated CUTPA by "[using] and [employing] unfair and deceptive acts and practices in connection with the solicitation and entering into of structured settlements in connection with the sale of annuities."  The defendants argue that this count should be stricken because: (1) no consumer relationship existed between the defendants and the plaintiffs' and (2) the claim was not pleaded with sufficient particularity.

...

The Supreme Court held:

"In determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise – in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons] ….  All three criteria do not need to be satisfied to support a finding of [a violation of CUTPA]." (Internal quotation marks omitted.)  Hartford Electric Supply Co. v. Allen-Bradley Co., 150 Conn. 334, 367-68, 736 A.2d 824 (1999)…. We are unpersuaded that there is any special requirement of pleading particularity connected with a CUTPA claim, over and above any other claim….The Plaintiff has adequately pled a CUTPA claim.  There is no particularity of pleading required under Connecticut law and clearly Connecticut is a fact pleading jurisdiction.

The Plaintiff's allegations are more than sufficient to allow the CUTPA claim to proceed.  The Defendant's conduct relate not to his role as the Plaintiff's attorney and not to his role as a businessman getting, collecting and obtaining a fee from his client.  The Defendant cannot cloak his conduct in the attorney-client relationship, when in fact it was separate and distinct from the legal representation.  The Plaintiff's Affidavit as well as the Transcript excerpts of both Mr. Zimmerman's and Mr. Cohen's depositions demonstrate a violation of CUTPA.

## E.    THERE IS A MATERIAL ISSUE OF FACT FOR TRIAL AS TO CUTPA

The facts supported by the Affidavit of Gary Zimmerman, the Deposition of Gary Zimmerman and the Deposition of Gary Cohen show conclusively a material issue of fact remains as to the Plaintiff's  CUTPA claims.

Connecticut's Unfair Trade Practice Act, Conn. Gen. Stat. § 42-110b(a) states:  "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  CUTPA applies to the conduct of attorneys.  Heslin v. Conn. Law Clinic of Trantolo & Trantolo, 190 Conn. 510, 521, 461 A.2d 938 (1983).  The Connecticut Supreme Court stated:

> [W]e have declined to hold that every provision of CUTPA permits regulation of every aspect of the practice of law…We have stated, instead, that, only the entrepreneurial aspects of the practice of law

are covered by CUTPA…[W]e conclude that professional negligence—that is, malpractice—does not fall under CUTPA.

(citations omitted; internal quotation marks omitted.)  <u>Suffield Dev. Assocs. Ltd. Partnership v. Nat'l Loan Investors</u>, 260 Conn. 766, 781 (2002).  "[T]he most significant question in considering a CUTPA claim against an attorney is whether the allegedly improper conduct is part of the attorney's professional representation of a client or is part of the entrepreneurial aspect of practicing law."  <u>Suffield Dev. Assocs. Ltd. Partnership v. Nat'l Loan Investors</u>, 260 Conn. 766, 781 (2002).  "The 'entrepreneurial' exception is…a specific exception from CUTPA immunity for a well-defined set of activities, [including] advertising and bill collection."  <u>Id</u>. At 782.

Specifically, the complaint alleges that Attorney Cohen "designated the 'bonus' as a fee paid for 'tax advice' [after Cohen] notified [Zimmerman] in writing that no such advice was being given."  Such a bonus deals with the entrepreneurial portion of the practice of law subject to CUTPA.  In addition, the various pressure tactics of Attorney Cohen in seeking to obtain monies not earned are equally a violation of CUTPA.

THE PLAINTIFF
GARY ZIMMERMAN


By:_____

     Kenneth A. Votre, Esq. (ct05981)
     Votre & Associates, P.C.
     201 Orange Street
     New Haven, CT 06510
     Tel:   (203) 498-0065
     Fax:  (203) 821-3595


## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid,

on this, the 29th day of April, 2004, to the following counsel of record:


Robert Scott Slifka, Esq.
Katherine C. Callahan, Esq.
Updike, Kelly & Spellacy, P.C.
One State Street, Suite 2400
P.O. Box 231277
Hartford, CT 06123-1277

Christopher P. McClancy, Esq.
1051 Post Road, Suite 3
P.O. Box 1124
Darien, CT 06820-1124


_____
Kenneth A. Votre, Esq.


Zimmerman/memo of law re motion for reconsideration