# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT
### (Hartford)

| | | |
|---|---|---|
| GARY ZIMMERMAN | : | No.: 302 CV 0181 (AVC) |
| *Plaintiff* | : | |
| | : | |
| vs. | : | |
| | : | |
| GARY COHEN | : | April 30, 2004 |
| *Defendant* | : | |

## AMENDED LOCAL RULE 56(a) STATEMENT IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

I.   Pursuant to Rule 56(a) of the Local Rules of Civil Procedure, the Plaintiff, Gary Zimmerman ("Plaintiff") responds to the Defendant's Statement of Undisputed Material facts as follows:

   1.   The Defendant was retained by the Plaintiff to provide legal services to the Plaintiff in connection with divorce proceedings against the Plaintiff's former wife, Joan Zimmerman.  Complaint, First Count, ¶ 6.

**Admitted.**

   2.   On December 16, 2002, pursuant to Rule 36 of the Federal Rules of Civil Procedure, the Defendant served on the Plaintiff Defendant's First Set of Requests for Admission ("Requests for Admissions").  Defendant's First Set of Requests for Admissions, dated December 16, 2002.

**Admitted.**

      3.      Request #3 of the Requests for Admissions stated, "The copy of the Marital Settlement Agreement, attached as Exhibit 3, is a true and accurate copy of the Marital Settlement Agreement that creates no suspicion as to authenticity." Requests for Admissions, p. 2, ¶ 3.

**Admitted.**

      4.      To date, the Plaintiff has not responded to the Defendant's First Set of Requests for Admissions.

**Admitted. However, counsel for the Plaintiff has informed counsel for the Defendant that a formal response will be forthcoming and that the Plaintiff does in fact admit the authenticity of the submitted documents.**

      5.      Pursuant to Rule 36 of the Federal Rules of Civil Procedure, after thirty days, requests to which no answer or objection is received are deemed admitted. Fed.R.Civ.Pro. 36.

**OBJECTION:**      **The statement requires a legal conclusion. However, the Plaintiff admits Rule 36 is controlling.**

      6.      More than thirty days has elapsed without response from the Plaintiff and, therefore, the Requests for Admissions are deemed admitted. Fed.R.Civ.Pro. 36.

**OBJECTION:**      **Seeks a legal conclusion. The Plaintiff admits that Rule 36 is applicable.**

7. Accordingly, the Marital Settlement Agreement (hereinafter the "Agreement") (attached hereto as Exhibit A), is a true and accurate copy of the Agreement that creates no suspicion as to its authenticity. Fed.R.Civ.Pro. 36.

**Admitted.**

8. The Plaintiff and his former wife, Joan Zimmerman, signed the Agreement on May 25, 2001. Marital Settlement Agreement, dated May 25, 2001, at 24.

**Admitted.**

9. The Defendant provided legal services to the Plaintiff in connection with the negotiation and finalization of the Agreement. Complaint, First Count, ¶ 11; Agreement, at 18.

**Admitted.**

10. The Agreement is twenty-four pages long, and the Plaintiff initialed each page and signed the last page before a notary public. See generally Agreement.

**Admitted.**

11. The Agreement calls for the Plaintiff to transfer his interest in certain commercial properties located in Arizona and Nevada to Ms. Zimmerman. Agreement, at 3-5.

**Denied.**

12. The Agreement additionally calls for the Plaintiff to transfer his interest in certain real property located in California to Ms. Zimmerman. Agreement, at 3-5.

**Denied.**

13.    The Agreement further calls for the Plaintiff to cooperate in the sale of the former primary residence of the Plaintiff and Mrs. Zimmerman, located in Redding, Connecticut.  Agreement, at 8.

**OBJECTION:        The Agreement speaks for itself.**

14.    The Agreement finally calls for the corporation held jointly by the Plaintiff and Mrs. Zimmerman, Zimmerman Properties, Inc., to compensate the Defendant and Mrs. Zimmerman's counsel in the amount of $300,000 each for legal services rendered in connection with the negotiation of the Agreement.  Agreement, at 8-9.

**Denied.**

15.    The Plaintiff and Mrs. Zimmerman stipulated in the Agreement that each "had the opportunity to discuss with independent tax counselors, other than the attorneys of record in the divorce action filed pertaining to the parties, concerning the income tax and estate tax implications and consequences with respect to the agreed upon division of properties and indebtedness."  Agreement, at 18.

**OBJECTION:        The document speaks for itself.**

16.    The Plaintiff and Mrs. Zimmerman stipulated in the Agreement that each defendant "[was] not expected to provide and, in fact, did not provide tax advice." Agreement, at 18.

**Denied.**

17.  The Plaintiff and Mrs. Zimmerman stipulated in the Agreement that each party "had the opportunity to be independently advised by his or her attorneys as to the legal effect of the execution of this Agreement." Agreement, at 18.

**OBJECTION:** **The document speaks for itself.  To the extent specific statements are contained in the Agreement, they state what they state.**

18.  The Plaintiff and Mrs. Zimmerman stipulated in the Agreement that "both parties have entered into this Agreement without undue influence, coercion, misrepresentation, or for any other cause except as herein specified." Agreement, at 18.

**OBJECTION:** **The document speaks for itself.  To the extent specific statements are contained in the Agreement, they state what they state.**

## II.  PLAINTIFF'S STATEMENT OF ISSUES OF MATERIAL FACT TO WHICH THERE IS DISPUTE.

1.  On or about August 4, 2000, he attorney Gary Cohen to represent my interests in a divorce proceeding against his wife.  He paid Gary Cohen an initial retainer fee in the amount of $20,000.  He signed a written retainer letter.  Affidavit of Gary Zimmerman ("Aff.") ¶ 2, 4, 5.

2.  He paid various additional retainer fees to Gary Cohen, when requested by Gary Cohen during the course of his representation.  Aff. ¶ 2, 4.

3. Attorney Cohen, at his request, pursued an existing divorce action in the Superior Court of the State of Connecticut. Aff. ¶ 5.

4. His wife initiated a competing divorce action against him in the State of Nevada and Attorney Cohen assisted him in his representation in that matter through local counsel. Aff. ¶ 5.

5. On or about May 17, 2001, He paid Attorney Cohen, an additional retainer fee of $25,000, which was requested just prior to a scheduled mediation conference to be held in Chicago, Illinois. Aff. ¶ 6.

6. On or about May 21, 2001, He along with Attorney Cohen met with my wife, and her attorney, in Chicago for a one-week mediation in an attempt to reach a divorce settlement agreement, and to end the litigation proceeding in both Connecticut and Nevada. Aff. ¶ 7.

7. Beginning on May 21, 2001 and continuing through May 25, 2001, Attorney Cohen represented him at the Chicago mediation. Aff. ¶ 8.

8. When he hired Attorney Cohen, he believed and relied upon the fact that he had accepted the duty and obligation to represent him diligently and faithfully and to meet the standard of care and abide by the ethical rules applicable to attorneys representing clients in divorce proceedings. Aff. ¶ 9.

9. Beginning on May 24, 2001, Attorney Cohen due to what Mr. Zimmerman believes to be a conflict of interest, that being his desire to charge additional fees, failed

to remain with the scope of the representation as defined by him and abide by the clients decisions concerning his divorce, when his decisions were clearly within the parameters prescribed by law. Aff. ¶ 10.

10. From on May 21, 2001 onward, Attorney Cohen's representation of Mr. Zimmerman was adverse to his interests, in that it appeared to me that Attorney Cohen's ultimate goal was to coerce an additional $300,000 from Mr. Zimmerman and as part of that coercion to pay an additional $300,000 to his wife's lawyer. At various times he used threatening language, hung up phones on Mr. Zimmerman and walked away from him all while he was paying him to be his lawyer. Aff. ¶ 10, 11, 13, 13, 14, 15.

11. In particular, Attorney Cohen on Wednesday, May 23, 2001 and Thursday, May 24, 2001 at various times demanded of Mr. Zimmerman and pressured me to pay to him and to his wife's lawyer $600,000 of additional fees for work never performed. Aff. ¶ 12.

12. During this one-week mediation attempt in Chicago, Illinois, in particular on Wednesday, May 23rd and Thursday, May 24th, 2001, Attorney Cohen demanded that Mr. Zimmerman pay him a $300,000 in addition to approximately $150,000 of legal fees already paid by me, or billed by the him for his representation in the divorce proceeding upon the actual or implicit threat of withdrawal of his representation. Aff. ¶ 13.

13. Attorney Cohen clearly implied to Mr. Zimmerman that he would divulge to opposing counsel certain information related to the divorce action in Connecticut which would be detrimental to his best interests, which information was in fact withheld from me until the time of the mediation unless Mr. Zimmerman paid the additional fees. Aff. ¶ 14.

14. During this one week mediation attempt, Attorney Cohen demanded that Mr. Zimmerman make a $300,000 payment to my wife's counsel. Aff. ¶ 15.

15. Attorney Cohen told others including a lawyer in Chicago Mr. Zimmerman consulted for help, that should he not agree to pay the requested sums, he would leave Chicago, and "Shelve" the mediation and any possibility of settlement. Aff. ¶ 16.

16. Attorney Cohen's request for fees far in excess of any fees Mr. Zimmerman agreed to pay or was obligated to pay by the Retainer Agreement created a conflict of interest, forcing Mr. Zimmerman to attempt to retain an attorney admitted to practice in the State of Illinois, to represent him in my discussions with Attorney Cohen. He was in the impossible situation of having to hire an attorney to talk to his own attorney. Aff. ¶ 17.

17. Mr. Zimmerman was so fearful of Attorney Cohen's threats that he would not allow the Attorney he contacted in Chicago to step into the case. When Attorney Cohen found out that Mr. Zimmerman spoke with another lawyer he became angry and reiterated his threat to disclose adverse information to opposing counsel. Aff. ¶ 18.

18. When Mr. Zimmerman's new counsel informed Attorney Cohen he did not wish to pay him the demanded $300,000 or pay his wife's attorney $300,000, Attorney Cohen's angry response was that the $600,000 would then have to go to Mr. Zimmerman's wife which was clearly contrary to his best interests. Aff. ¶ 19, T. Zimmerman.

19. As a result of the threats and intimidation Mr. Zimmerman was coerced and frightened into paying the $600,000 to Attorney Cohen and to Attorney Grund, his wife's lawyer. Aff. ¶ 20, T. Zimmerman.

20. When Mr. Zimmerman refused to pay Attorney Cohen demanded the $300,000 Attorney Cohen failed to follow my instructions and remove provisions from the settlement agreement that discussed the payment of the funds. Aff. ¶ 22, T. Zimmerman.

21. Mr. Cohen and Mr. Grund stood over Mr. Zimmerman and demanded that he immediately wire the money into their accounts. Mr. Cohen and Mr. Grund insisted that they would hold the money in escrow until the Separation Agreement was accepted by the Nevada Court. Attorney Cohen, contrary to that representation, immediately put the $300,000 into his general account. Aff. ¶ 23., T. Zimmerman.

22. Attorney Cohen designated the $600,000 as a fee paid for "tax advice", while Mr. Zimmerman was told in a letter dated May 24, 2001 that no such advice was given. In addition, the separation agreement that Mr. Zimmerman objected to held a

9

provision disclaiming liability relative to "tax advice". Finally, the tax structure of the separation agreement was defective as it actually caused Mr. Zimmerman to incur taxes for distribution to his wife. Aff. ¶ 23, 34.

23. While Attorney Cohen was coercing Mr. Zimmerman to pay him the $300,000 and to pay Attorney Grund $300,000, Attorney Cohen told me there was a serious jurisdictional defect in Mr. Zimmerman's Connecticut case which threatened his ability to obtain a valid property division in Connecticut. Mr. Zimmerman did not hear of this problem until he was in Chicago. Aff. ¶ 23, T. Zimmerman.

24. In addition, Attorney Cohen failed to secure for Mr. Zimmerman in his divorce proceeding any one of four (4) family homes despite at least one of the four (4) family homes being available to Mr. Zimmerman at the beginning of negotiations. Aff. ¶ 24.

25. Attorney Cohen failed to provide any tax advice at all to Mr. Zimmerman during the course of the divorce despite claiming over $300,000 in legal fees for tax advice. His bills to Mr. Zimmerman and his time records produced in this case reveal only .5 hours spent reviewing a tax return. Aff. ¶ 25.

26. Attorney Cohen to-date has failed to submit any invoices to Mr. Zimmerman reflecting any invoices reflecting any activity on the Plaintiff's account since May 7, 2001. Mr. Zimmerman had on deposit with Attorney Cohen over $40,000 in

retainer funds which were neither billed against nor applied by Attorney Cohen against billings.  Aff. ¶ 28.

27.     Attorney Cohen entered into a Retainer Agreement with Mr. Zimmerman which provided for the non-refundability of unexpended and unearned retainer funds, in this case a total of more than $46,000.  Aff. ¶ 29.

28.     As result of Attorney Cohen's conduct Mr. Zimmerman have been damaged.  In particular, Mr. Zimmerman lost a large portion of my assets, incurred unnecessary attorney fees, was forced into paying large sums of money under threat, coercion, misrepresentation and intimidation and Mr. Zimmerman did not want to pay. Mr. Zimmerman to-date has not been provided with a final accounting of the charges incurred and amounts paid to Attorney Cohen and have been deprived of over $46,000 in retainer funds which represent payment of unearned fees.  Aff. ¶ 30.

29.     Attorney Cohen made various statements and representations to Mr. Zimmerman during the course of his divorce which were untrue, and were clearly designed to benefit him and not Mr. Zimmerman including the fact that (1) the Connecticut Divorce action was jurisdictionally defective, (2) Attorney Cohen has never told Mr. Zimmerman why that was so, (3) Attorney Cohen told Mr. Zimmerman 's accountant he had a two step process by which the distributions from Zimmerman Properties, Inc. to his wife would be tax fee which was untrue,  (4) Mr. Cohen said he would walk out of the Chicago Mediation if Mr. Zimmerman did not pay him the money

he demanded and (5) Mr. Cohen represented that the additional money was for tax advise which was untrue because Mr. Cohen gave Mr. Zimmerman a letter saying no tax advice was given.  Aff. ¶ 31, 32, 33, 34., T. Cohen.

30. Mr. Zimmerman reasonable relied upon the statements and representations of the Defendant to his detriment.  Mr. Zimmerman relied upon these statements and upon Attorney Cohen.  Aff. ¶ 35.

31. Most of Attorney Cohen's actions asserted above relates solely to the business relationship between he and Mr. Zimmerman and not his representation of Mr. Zimmerman.  Aff. ¶ 36.

32. Mr. Zimmerman has sustained ascertainable loss of money and property, and it is substantial in nature within the meaning of Connecticut's Unfair Trade Practice Act.  Aff. ¶ 37.

                    THE PLAINTIFF
                    GARY ZIMMERMAN


                    By:_____
                      Kenneth A. Votre, Esq. (ct05981)
.                     Votre & Associates, P.C.
                      201 Orange Street
                      New Haven, CT 06510
                      Ph: (203) 498-0065
                      Fax: (203) 821-3595

**CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, postage prepaid, on this, the 30th day of April, 2004, to the following counsel of record:

Robert Scott Slifka, Esq.
Katherine C. Callahan, Esq.
Updike, Kelly & Spellacy, P.C.
One State Street, Suite 2400
P.O. Box 231277
Hartford, CT 06123-1277

Christopher P. McClancy, Esq.
1051 Post Road, Suite 3
P.O. Box 1124
Darien, CT 06820-1124

_____
Kenneth A. Votre, Esq.