Service: **Get by LEXSEE®**
Citation: **2004 U.S. Dist. LEXIS 4139**

2004 U.S. Dist. LEXIS 4139, *; 2004-1 Trade Cas. (CCH) P74,335

MM GLOBAL SERVICES, INC., MM GLOBAL SERVICES PTE., LTD, MEGA VISTA SOLUTIONS (S) PTE., LTD., and MEGA VISA MARKETING SOLUTIONS LTD., Plaintiffs, vs. THE DOW CHEMICAL COMPANY, UNION CARBIDE CORPORATION, UNION CARBIDE ASIA PACIFIC, INC., UNION CARBIDE CUSTOMER SERVICES PTE., LTD, and DOW CHEMICAL PACIFIC (SINGAPORE) PTE., LTD., Defendants.

Civil No. 3:02cv 1107 (AVC)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2004 U.S. Dist. LEXIS 4139; 2004-1 Trade Cas. (CCH) P74,335

March 18, 2004, Decided

**PRIOR HISTORY:** MM Global Servs. v. Dow Chem. Co., 283 F. Supp. 2d 689, 2003 U.S. Dist. LEXIS 16643 (D. Conn., 2003)

**DISPOSITION:** Prior order adhered to on reconsideration.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiffs, a distributor and its affiliates, filed an amended complaint against defendant manufacturers, alleging violations of the Sherman Antitrust Act, 15 U.S.C.S. § 1 et seq., breach of contract, and negligent misrepresentation. Defendants filed a motion under U.S. Dist. Ct., D. Conn., R. 7(c) for reconsideration of an order denying defendants' motion to dismiss the cause of action arising under the Sherman Antitrust Act.

**OVERVIEW:** Plaintiffs' amended complaint alleged a price fixing conspiracy for product sales in India that was intended to prevent erosion to prices and, in this way, maintain artificially high prices for products that defendants sold to end-users in the United States. Defendants' motion to dismiss the antitrust claim was based on the argument that the court was without jurisdiction to hear the claim under the Foreign Trade Antitrust Improvements Act of 1982 (FTAIA), 15 U.S.C.S. § 6a. Defendants' motion for interlocutory appeal was denied until after the instant motion were filed and ruled upon. After reconsidering the ruling the court denied the relief requested. The court acknowledged that its earlier decision was incorrectly based on a belief that federal subject matter jurisdiction existed where only a showing was made under the National Bank of Canada test. The FTAIA also required a showing that the effect of the conduct had to be direct, substantial, and reasonably foreseeable and could not be presumed if jurisdiction were contested. The court found that the amended complaint and the evidentiary record supported a finding of conduct meeting that test.

**OUTCOME:** The court granted the motion for reconsideration but denied the relief requested.

**CORE TERMS:** commerce, reasonably foreseeable, Sherman Act, antitrust, end-user, subject matter jurisdiction, reconsideration, affiliate, resale, domestic market, presumed, domestic, conspiracy, Sherman Antitrust Act, price fixing, anti-competitive, motion to dismiss, import,

relief requested, per se violation, artificially, spillover, customer, pricing, prices charged, distributor, erosion, tragedy, export, Foreign Trade Antitrust Improvements Act

**LexisNexis (TM) HEADNOTES - Core Concepts - ♦ Hide Concepts**

Antitrust & Trade Law > Sherman Act
Antitrust & Trade Law > Price Fixing & Restraints of Trade > Per Se Rule & Rule of Reason
*HN1* Per se violations of the Sherman Anti-Trust Act, 15 U.S.C.S. § 1 et seq., create a presumption of anti-competitive effect. More Like This Headnote

Civil Procedure > Relief From Judgment > Motions to Alter & Amend
*HN2* Reconsideration of a previous ruling is appropriate where there has been an intervening change in controlling law, new evidence, or a need is shown to correct a clear error of law or to prevent manifest injustice. More Like This Headnote

Antitrust & Trade Law > Sherman Act
*HN3* See 15 U.S.C.S. § 1.

Antitrust & Trade Law > Sherman Act
*HN4* An agreement between a manufacturer and a distributor to fix prices is per se illegal under the Sherman Anti-Trust Act, 15 U.S.C.S. § 1 et seq. Per se violations do not require a showing of deleterious impact on competition and create a presumption of anticompetitive effect. This is so because of their pernicious effect on competition and lack of any redeeming virtue. More Like This Headnote

Antitrust & Trade Law > Sherman Act
*HN5* Under an amendment to the Sherman Anti-Trust Act, 15 U.S.C.S. § 1 et seq., known as the Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C.S. § 6a, the court does not have jurisdiction to adjudicate antitrust conduct that involves trade or commerce (other than import trade or import commerce) with foreign nations unless (1) such conduct has a direct, substantial, and reasonably foreseeable effect (A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or (B) on export trade or export commerce With foreign nations, of a person engaged In such trade or commerce in the United States; and (2) such effect gives rise to a claim under the provisions of the Sherman Anti-Trust Act, other than 15 U.S.C.S. § 6a. If the Sherman Anti-Trust Act applies to such conduct because of the operation of 15 U.S.C.S. § (1)(B), then the Sherman Anti-Trust Act shall apply to such conduct only for injury to export business in the United States. 15 U.S.C.S. § 6a. More Like This Headnote

Antitrust & Trade Law > Sherman Act
*HN6* Consistent with the rule for determining subject matter jurisdiction that existed prior to the 1982 enactment of Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C.S. § 6a, i.e. the National Bank of Canada test, the requisite "effect" for establishing jurisdiction under subsection two is that which stems from antitrust conduct that is directed at both domestic and foreign markets that actually reduced the competitiveness of a domestic market or otherwise makes possible anticompetitive conduct that gives rise to a claim under the Sherman Anti-Trust Act, 15 U.S.C.S. § 1 et seq. More Like This Headnote

Antitrust & Trade Law > Sherman Act
*HN7* The Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C.S. § 6a, provides significant limit on the reach of the antitrust laws, i.e., the "effect" of the conduct

must be direct, substantial, and reasonably foreseeable. Such effects may not be presumed when jurisdiction is contested--even in cases where a per se violation of the Sherman Anti-Trust Act, 15 U.S.C.S. § 1 et seq., is alleged. If domestic effects could be presumed, then in every case alleging a per se violation United States courts would have jurisdiction however foreign the conduct without any showing whatsoever of an effect on United States commerce.  More Like This Headnote

Antitrust & Trade Law > Sherman Act
**HN8** Regarding alleged violations of the Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C.S. § 6a, even spillover effects that cause artificially inflated prices can rise to direct and substantial over time.  More Like This Headnote

Antitrust & Trade Law > Sherman Act
**HN9** Regarding alleged violations of the Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C.S. § 6a, district courts must adopt a broad view of the proscribed conduct.  More Like This Headnote

**COUNSEL:** [*1]  For MM Global Svc Inc, MM Global Svc TPE Ltd, Megavisa Solutions (S) PTE LTD, Plaintiffs: Michael S. Elkin, Richard S. Taffet, Susan B. McInerney, Alyson L. Redman, Paul A. Winick, Thelen Reid & Priest, New York, NY. Robert M. Langer, Steven Bruce Malech, Wiggin & Dana, Hartford, CT. Suzanne Ellen Wachsstock, Wiggin & Dana, Stamford, CT.

For Dow Chemical Co, Union Carbide Corp, Union Carbide Asia Pacific, Inc., Defendants: Andrew S. Marovitz, Britt M. Miller, Dana S. Douglas, Mayer Brown Rowe & Maw LLP - IL, Chicago, IL. Christopher J. Kelly, Maer, Brown Rowe & Maw, Washington, DC. Craig A. Raabe, Edward J. Heath, Elizabeth A. Fowler, Robinson & Cole, Hartford, CT.

**JUDGES:** Alfred V. Covello, United States District Judge.

**OPINIONBY:** Alfred V. Covello

**OPINION:**

**RULING ON THE DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S RULING DENYING THE MOTION TO DISMISS THE FEDERAL ANTITRUST CLAIM**

This is an action for damages arising out of a business arrangement pursuant to which the plaintiffs purchased chemicals, polymers, and other products from the defendants and resold them to customers located in India. The amended complaint alleges violations of the Sherman Antitrust Act, 15 U.S.C. § 1, [*2] breach of contract, and negligent misrepresentation.

The defendants, Dow Chemical Company, Union Carbide Corporation, and Union Carbide Asia Pacific, Inc., now move pursuant to Rule 7(c) of the Local Rules of the District of Connecticut for reconsideration of the court's September 12, 2003 order denying the motion to dismiss the cause of action arising under the Sherman Antitrust Act, 15 U.S.C. § 1. For the reasons hereinafter set forth, the motion for reconsideration is GRANTED. The relief requested, however, is DENIED.

**FACTS**

The background giving rise to the instant action is more fully discussed in the court's September 12, 2004 decision. See MM Global Services, Inc. et al v. Dow Chemical Co, et al., 283 F. Supp. 2d 689 (D. Conn. 2003). While familiarity is presumed, the facts are summarized as follows.

In 1984, the defendant, Union Carbide, a New York corporation headquartered in Connecticut, owned and operated a chemical plant in Bhopal, India. In December of that year, lethal gas escaped from the plant and caused the death of 3,800 persons and injuries to an additional 200,000. In February 1989, Union Carbide and its Indian **[*3]** affiliate were ordered to pay a total of $ 470 million for all civil claims arising from the tragedy.

In the aftermath of this tragedy, Union Carbide ceased selling products directly to customers in India and, in 1987, appointed the plaintiff, Mega Vista Marketing Solutions Ltd. ("MVMS") as a nonexclusive distributor to maintain Union Carbide's access to the Indian marketplace. MVMS is an Indian corporation, having its principal place of business in Mumbai, India.

Over the next several years, MVMS formed corporate affiliates with the purpose of assisting with product sales in India. The affiliates purchased Union Carbide products in the United States and resold them to end-users in India. The affiliates included the plaintiffs, Mega Global Services, Inc. ("MMGS"), Mega Vista Marketing Solutions, Ltd. ("MVMS"), Mega Global Services, Inc. - Singapore ("MMGS-S"), and Mega Vista Solutions (S) Pte Ltd ("MVS").

In or around August 1999, Union Carbide announced a plan of merger with the co-defendant herein, Dow Chemical Company ("Dow"). Dow is a corporation organized under the laws of Delaware, with a principal place of business in Midland, Michigan. The amended complaint alleges that **[*4]** with the plan of merger, the need dropped for the re-sale services in India previously performed by MVMS, MVS, MMGS and MMGS-S. Consequently, the amended complaint alleges that Union Carbide and its affiliates ceased acting consistently with their alleged contractual and legal obligations and, in particular, undertook efforts to establish Dow, untainted by the Bhopal tragedy, in place of the plaintiffs as a direct seller of products to end-users in India.

On February 6, 2001, Union Carbide merged with a subsidiary of Dow and became a wholly owned subsidiary of Dow. At around this time, Dow also created the defendant, Dow Chemical Pacific (Singapore) Private Ltd. ("Dow Singapore"). Dow created Dow Singapore to effectuate sales of Union Carbide products to the plaintiffs and to further Union Carbide and Dow's relationship with the plaintiffs.

On January 16, 2002, Dow Singapore advised MVS that, effective March 31, 2002, MVS would no longer be a distributor for Union Carbide products other than wire and cable compounds. MVS refused to continue the relationship with Dow Singapore on those terms.

On June 25, 2003, the plaintiffs commenced this lawsuit against the defendants, Union Carbide **[*5]** and Dow, alleging violations of the Sherman Antitrust Act, 15 U.S.C. § 1, and common law precepts concerning breach of contract and negligent misrepresentation, among other theories. The plaintiffs also sued several Union Carbide/Dow affiliates, including the defendants Union Carbide Asia Pacific, Inc. ("UCAP") (Singapore), Union Carbide Customer Service Pte Ltd ("UCCS") (Singapore), and Dow Chemical Pacific Private Pte Ltd. (Singapore). n1

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 On November 17, 2003, the court dismissed the amended complaint with respect to UCCS and Dow Singapore for want of personal jurisdiction.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In connection with the federal antitrust claim, the plaintiffs alleged that, from 1993 through

March 2002, Union Carbide and Dow, directly and through their affiliates, compelled the plaintiffs to agree to engage in a price maintenance conspiracy with respect to the resale of Union Carbide products in India, and refused to accept orders or cancelled accepted orders if the prospective resale prices to end-users in **[*6]** India were below certain levels. According to the amended complaint, Dow and Union Carbide sought to "ensure that prices charged by [the] plaintiffs to end-users in India for products would not cause erosion to prices for the products charged by [Union Carbide] and Dow to end-users. . . in the United States as well as in other jurisdictions. . ," and that,

> as a direct and proximate result of [the] defendants fixing of minimum resale prices and other terms of sale, competition in the sale and resale of [Union Carbide] products in and from the United States was improperly diminished and restrained. . .

The defendants thereafter moved to dismiss the antitrust claim, arguing that, because the amended complaint failed to allege antitrust conduct having a direct, substantial, and reasonably foreseeable effect on the commerce of the United States, the court was without subject matter jurisdiction to hear the claim under the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA"), 15 U.S.C. § 6a(1).

On September 12, 2003, the court denied the motion, concluding that, to the contrary, the amended complaint did in fact allege antitrust conduct having **[*7]** a direct, substantial, and reasonably foreseeable effect on the commerce of the United States and, accordingly, FTAIA § 6a(1) presented no limitation to court's subject matter jurisdiction. MM Global Services, Inc. et al v. Dow Chemcial Co, et al., 283 F. Supp. 2d 689, 698 (D. Conn. 2003). In reaching this conclusion, the court observed that, because the amended complaint alleged price fixing, that is, a per se violation of the Sherman Act, anti-competitive effects would be presumed. See id; see also id. at 697 (quoting Gianna Enterprises v. Miss World Ltd., 551 F. Supp. 1348, 1354 (S.D.N.Y. 1982) HN1 ("Per se violations . . . create a presumption of anti-competitive effect"). Further, because the amended complaint alleged antitrust conduct directed at both domestic and foreign markets that reduced the competitiveness of a domestic market, the amended complaint sufficiently alleged conduct having a direct, substantial, and reasonably foreseeable effect on the commerce of the United States within the meaning of FTAIA § 6a(1) and, consequently, jurisdiction was authorized as explained by the Second Circuit in **[*8]** Kruman v. Christie 's Int'l PLC, 284 F.3d 384, 395 (2d Cir. 2001).

On October 10, 2003, the defendants filed a motion seeking immediate interlocutory appeal of the court's September 12, 2003 ruling. On December 9, 2003, the court denied the motion without prejudice to its refiling after the defendants filed and served, and the court had ruled, on a motion for reconsideration. In the court's December 9, 2003 order, the court ordered the plaintiffs to identify all known antitrust effects on domestic commerce arising from the defendants' conduct that could be considered "substantial and reasonably foreseeable."

**STANDARD**

HN2 Reconsideration of a previous ruling is appropriate where there has been an intervening change in controlling law, new evidence, or a need is shown to correct a clear error of law or to prevent manifest injustice. United States v. Sanchez, 35 F.3d 673, 677 (2d Cir. 1994).

**DISCUSSION**

The defendants assert that the court erred in denying their motion to dismiss the Sherman Antitrust claim, arguing that the court's September 12, 2003 ruling misconstrued both FTAIA §

6a(1) and the Second Circuit's decision in Kruman v. Christie 's Int'l PLC **[*9]** , 284 F.3d 384 (2d Cir. 2001), and hence, improperly concluded that federal subject matter jurisdiction existed under § 6a(1), i.e., the first prong of the FTAIA test. In the defendants' view, because the amended complaint alleges price fixing directed at end-user customers located exclusively in India, and there is no averment or evidence to suggest that such conduct had a direct, substantial and reasonably foreseeable effect on the domestic market as required by § 6a(1), the court is deprived of subject matter jurisdiction over the claim by FTAIA.

In response, the plaintiffs maintain that the court's September 12, 2003 ruling is entirely consistent with applicable authority, and is further supported by the Second Circuit's most recent discussion concerning the requirements of § 6a(1) in Sniado v. Bank Austria AG, 352 F.3d 73 (2d Cir. 2003). In this regard, the plaintiffs argue that, when adopting a broad view of antitrust conduct as mandated by the Second Circuit in Sniado, the relevant conduct for FTAIA purposes is the defendants' resale price conspiracy, formed within the United States by United States companies to fix the **[*10]** plaintiffs' resale prices in India for the purpose of maintaining supra-competitive prices in the United States. Allegations of such conduct that directly target the domestic market for the anti-competitive purpose of maintaining artificially high prices plainly satisfies, in the plaintiffs view, the first prong of the FTAIA test. The plaintiffs maintain that they have shown that such conduct was intended to and did in fact cause significant anti-competitive effects on commerce in the United States by limiting the plaintiffs ability to compete freely in the United States and by raising prices for products sold to others, including the United States.

Section 1 of the Sherman Act provides in relevant part:

> **HN3** Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.

15 U.S.C. § 1. **HN4** An agreement between a manufacturer and a distributor to fix prices is per se illegal under the Sherman Act. Monsanto Company v. Spray-Rite Service Corp., 465 U.S. 752, 759, 104 S. Ct. 1464, 79 L. Ed. 2d 775 (1984); see **[*11]** also Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U.S. 373, 31 S. Ct. 376, 55 L. Ed. 502 (1911) (vertical price fixing is per se illegal). "Per se violations do not require a showing of deleterious impact on competition. . . [and] create a presumption of anticompetitive effect." Gianna Enterprises v. Miss World Ltd., 551 F. Supp. 1348, 1354 (S.D.N.Y. 1982); see also United States v. National Assoc. of Real Estate Bds., 339 U.S. 485, 489, 70 S. Ct. 711, 94 L. Ed. 1007 (1950). This is so because of their "pernicious effect on competition and lack of any redeeming virtue." Northern Pacific Railroad Co. v. United States, 356 U.S. 1, 5, 78 S. Ct. 514, 518, 2 L. Ed. 2d 545 (1958).

The reach of the Sherman Act, however, is limited. Metallgesellschaft AG v. Sumitomo Corp., 325 F.3d 836, 838 (7th Cir. 2003). **HN5** Under an amendment to the Sherman Act, known as the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA"), 15 U.S.C. § 6a, the court does not have jurisdiction to adjudicate antitrust conduct that:

> involves trade or commerce (other than import trade **[*12]** or import commerce) with foreign nations unless:
>
> (1) such conduct has a direct, substantial, and reasonably foreseeable effect:

>   (A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or
>
>   (B) on export trade or export commerce With foreign nations, of a person engaged In such trade or commerce in the United States; and
>
>   (2) such effect gives rise to a claim under the provisions of [the Sherman Act], other than this section.
>
>   If [the Sherman Act applies] to such conduct because of the operation of paragraph (1)(B), then [the Sherman Act] shall apply to such conduct only for injury to export business in the United States.

15 U.S.C. § 6a (emphasis added). In Kruman v. Christie's Int'l PLC, 284 F.3d 384, 395 (2d Cir. 2001), the Second Circuit considered the limitations imposed by the FTAIA in a class action that alleged antitrust violations by international auction houses. After noting therein that the defendants had not disputed that the alleged conduct had a direct, substantial, [*13] and reasonably foreseeable effect on the commerce of the United States under subsection one of the FTAIA, see Kruman 284 F.3d at 399 n. 5, the court turned to the issue presented in that appeal, that is, the scope of the term "effect" as used in subsection two of FTAIA § 6a. Id. 284 F.3d at 399. There, the court explained that subsection two provided an additional limitation on the reach of the Sherman Act, and, specifically, that in order for a federal court to have subject matter jurisdiction, there must also be antitrust effect, where:

>   (2) such effect gives rise to a claim under the provisions of [the Sherman Act]. .

Kruman, 284 F.3d at 399. The Second Circuit further explained that, HN6 consistent with the rule for determining subject matter jurisdiction that existed prior to the 1982 enactment of FTAIA, i.e., the National Bank of Canada test, the requisite "effect" for establishing jurisdiction under subsection two is that which stems from antitrust conduct that is directed:

>   at both domestic and foreign markets [that] actually reduced the competitiveness of a domestic market. . . [or] [otherwise] [*14] makes possible anticompetitive conduct that 'gives rise to a claim' under the Sherman Act.

Kruman, 284 F.3d at 401 (citing National Bank of Canada v. Interbrook Card Assoc., 666 F.2d 6, 8 (2d Cir. 1981)).

This court's September 12, 2003 decision misinterpreted Kruman to mean that federal subject matter jurisdiction may exist where a plaintiff only makes a showing under the National Bank of Canada test. MM Global Services, Inc. et al v. Dow Chemcial Co, et al., 283 F. Supp. 2d 689, 698 (D. Conn. 2003)(quoting Kruman, 284 F.3d at 401)). This was error as HN7 "the FTAIA provides another significant limit on the reach of the antitrust laws [not considered in Kruman but in issue here], i.e., "the 'effect' of the conduct must be 'direct, substantial, and reasonably foreseeable.'" Kruman, 284 F.3d at 402 (quoting FTAIA, 15 U.S.C. § 6a(1)). Such

effects may not be presumed when jurisdiction is contested -- even in cases where a per se violation of the Sherman Antitrust Act is alleged. If domestic effects could be presumed, then in every case alleging a per **[*15]** se violation "United States courts would have jurisdiction [however foreign the conduct] without any showing whatsoever of an effect on United States commerce." Dee-K Enters v. Heveafil Sdn. Bhd., 299 F.3d 281, 292 (4th Cir. 2002).

Without the benefit of presumed effects, the parties present a close contest. At this juncture, however, the court is persuaded that both the amended complaint and evidentiary record support a finding of conduct having a direct, substantial, and reasonably foreseeable effect on domestic trade or commence. The amended complaint alleges that the defendants coerced the plaintiffs into agreeing to fix the resale price of Union Carbide products in India, and that they did so in order to "ensure that prices charged by [the] plaintiffs to end-users in India for products would not cause erosion to prices for the products charged by [Union Carbide] and Dow to end-users. . . in the United States as well as in other jurisdictions. . ," and that,

> as a direct and proximate result of [the] defendants fixing of minimum resale prices and other terms of sale, competition in the sale and resale of [Union Carbide] products in and from **[*16]** the United States was improperly diminished and restrained. . .(emphasis added).

The amended complaint alleges a price fixing conspiracy for product sales in India that was intended to prevent erosion to prices and, in this way, maintain artificially high prices for products that Union Carbide and Dow sold to end-users in the United States.

Arguably, these allegations amount to little more than activities directed at a foreign market with domestic spillover effects -- effects that are not direct and would therefore not constitute a basis for jurisdiction within the meaning of FTAIA. See Eurim-Pharm GmbH v. Pfizer, Inc., 593 F. Supp. 1102, 1106-07 (S.D.N.Y. 1984) (spillover effect in the United States in the form of inflated prices for the same product was insufficient to constitute direct, substantial, and reasonably foreseeable effect on the domestic market). However, as Congress contemplated when enacting the FTAIA, [HN8] even spillover effects that cause artificially inflated prices can rise to direct and substantial over time. See H.R. Rep. No. 97-686 at 13 (1982). Moreover, as the Second Circuit has recently stated in Sniado v. Bank Austria AG, 352 F.3d 73 (2d Cir. 2003), **[*17]** the [HN9] district courts must adopt a broad view of the proscribed conduct. Id. at 78. Certainly, it is the conduct at issue that, while directly informing whether jurisdiction would be proper under FTAIA § 6a(2), necessarily informs, though indirectly, the issue of whether the effects of such conduct are direct, substantial, and reasonably foreseeable for jurisdiction under FTAIA § 6a(2). Focusing on the conduct alleged here, that is, conduct involving quite possibly the largest industrial chemical manufacturers in the world - it is not a stretch in logic, and quite foreseeable, to conclude that a conspiracy to fix prices in the India market might reasonably cause direct and substantial effects on the prices charged for the same products in the United States. Certainly, the evidentiary records amply supports the conclusion that Union Carbide was at all times concerned with this very probability, in that the record reflects various e-mails and correspondence in which Union Carbide: (1) refused orders placed by the plaintiffs because of domestic market pricing concerns: (2) directed the plaintiffs to "keep moving prices UP" in order to be on par with U.S. and Canadian **[*18]** prices; (3) examined competitive pricing during world strategy meetings: and (4) considered the firmness of domestic prices before deciding to meet competitive pricing in the Indian market. (Decl. of R. Taffet). Consequently, at this juncture, the court is of the opinion that the plaintiffs have, at the very least, presented a compelling case going far beyond speculation of direct, substantial, and foreseeable effects on domestic commerce. In the absence of additional discovery, it would be inappropriate to reach any conclusion to the contrary. The relief requested in the motion for reconsideration must therefore be denied.

**CONCLUSION**

For the foregoing reasons, the motion for reconsideration is GRANTED. The relief requested is DENIED (document no. 147). While the court is grateful to the defendants for correcting an error of law, the court's September 12, 2003 order denying the motion to dismiss stands undisturbed.

It is so ordered this 18th day of March, 2004 at Hartford, Connecticut.

Alfred V. Covello

United States District Judge

Service: **Get by LEXSEE®**
Citation: **2004 U.S. Dist. LEXIS 4139**
View: **Full**
Date/Time: Friday, May 21, 2004 - 2:19 PM EDT

* Signal Legend:
● -  Warning: Negative treatment is indicated
▲ -  Caution: Possible negative treatment
◆ -  Positive treatment is indicated
Ⓐ -  Citing Refs. With Analysis Available
ⓘ -  Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.