**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
(Hartford)**

| | | |
|---|---|---|
| GARY ZIMMERMAN | : | No.: 302 CV 0181 (AVC) |
| *Plaintiff* | : | |
| | : | |
| vs. | : | |
| | : | |
| GARY COHEN | : | November 8, 2004 |
| *Defendant* | : | |

**SUPPLEMENTAL AMENDED LOCAL RULE 56(a) STATEMENT IN
OPPOSITION TO
<u>DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

I.      Pursuant to Rule 56(a) of the Local Rules of Civil Procedure, the Plaintiff, Gary

Zimmerman ("Plaintiff") responds to the Defendant statement of Undisputed Material

facts as follows:

1.      The Defendant was retained by the Plaintiff to provide legal

services to the Plaintiff in connection with divorce proceedings against the

Plaintiff's former wife, Joan Zimmerman.  Complaint, First Count, ¶ 6.

**Admitted.**

2.      On December 16, 2002, pursuant to Rule 36 of the Federal Rules

of Civil Procedure, the Defendant served on the Plaintiff Defendant's First Set of

Requests for Admission ("Requests for Admissions").  Defendant's First Set of

Requests for Admissions, dated December 16, 2002.

**Admitted.**

3.      Request #3 of the Requests for Admissions stated, "The copy of the Marital Settlement Agreement, attached as Exhibit 3, is a true and accurate copy of the Marital Settlement Agreement that creates no suspicion as to authenticity."  Requests for Admissions, p. 2, ¶ 3.

**Admitted.**

4.      To date, the Plaintiff has not responded to the Defendant's First Set of Requests for Admissions.

**Admitted.  However, counsel for the Plaintiff has informed counsel for the Defendant that a formal response will be forthcoming and that the Plaintiff does in fact admit the authenticity of the submitted documents.**

5.      Pursuant to Rule 36 of the Federal Rules of Civil Procedure, after thirty days, requests to which no answer or objection is received are deemed admitted.  Fed.R.Civ.Pro. 36.

**OBJECTION:        The statement requires a legal conclusion.  However, the Plaintiff admits Rule 36 is controlling.**

6.      More than thirty days has elapsed without response from the Plaintiff and, therefore, the Requests for Admissions are deemed admitted. Fed.R.Civ.Pro. 36.

**OBJECTION:        Seeks a legal conclusion.  The Plaintiff admits that Rule 36 is applicable.**

7.    Accordingly, the Marital Settlement Agreement (hereinafter the "Agreement") (attached hereto as Exhibit A), is a true and accurate copy of the Agreement that creates no suspicion as to its authenticity.  Fed.R.Civ.Pro. 36.

**Admitted.**

8.    The Plaintiff and his former wife, Joan Zimmerman, signed the Agreement on May 25, 2001.  Marital Settlement Agreement, dated May 25, 2001, at 24.

**Admitted.**

9.    The Defendant provided legal services to the Plaintiff in connection with the negotiation and finalization of the Agreement.  Complaint, First Count, ¶ 11; Agreement, at 18.

**Admitted.**

10.    The Agreement is twenty-four pages long, and the Plaintiff initialed each page and signed the last page before a notary public.  See generally Agreement.

**Admitted.**

11.    The Agreement calls for the Plaintiff to transfer his interest in certain commercial properties located in Arizona and Nevada to Ms. Zimmerman. Agreement, at 3-5.

**Denied.**

12.     The Agreement additionally calls for the Plaintiff to transfer his interest in certain real property located in California to Ms. Zimmerman. Agreement, at 3-5.

**Denied.**

13.     The Agreement further calls for the Plaintiff to cooperate in the sale of the former primary residence of the Plaintiff and Mrs. Zimmerman, located in Redding, Connecticut.  Agreement, at 8.

**OBJECTION:         The Agreement speaks for itself.**

14.     The Agreement finally calls for the corporation held jointly by the Plaintiff and Mrs. Zimmerman, Zimmerman Properties, Inc., to compensate the Defendant and Mrs. Zimmerman's counsel in the amount of $300,000 each for legal services rendered in connection with the negotiation of the Agreement. Agreement, at 8-9.

**Denied.**

15.     The Plaintiff and Mrs. Zimmerman stipulated in the Agreement that each "had the opportunity to discuss with independent tax counselors, other than the attorneys of record in the divorce action filed pertaining to the parties, concerning the income tax and estate tax implications and consequences with respect to the agreed upon division of properties and indebtedness."  Agreement, at 18.

**OBJECTION:         The document speaks for itself.**

16.    The Plaintiff and Mrs. Zimmerman stipulated in the Agreement that each defendant "[was] not expected to provide and, in fact, did not provide tax advice." Agreement, at 18.

**Denied.**

17.    The Plaintiff and Mrs. Zimmerman stipulated in the Agreement that each party "had the opportunity to be independently advised by his or her attorneys as to the legal effect of the execution of this Agreement."  Agreement, at 18.

**OBJECTION:**    **The document speaks for itself.  To the extent specific statements are contained in the Agreement, they state what they state.**

18.    The Plaintiff and Mrs. Zimmerman stipulated in the Agreement that "both parties have entered into this Agreement without undue influence, coercion, misrepresentation, or for any other cause except as herein specified." Agreement, at 18.

**OBJECTION:**    **The document speaks for itself.  To the extent specific statements are contained in the Agreement, they state what they state.**

**II.    PLAINTIFF'S STATEMENT OF ISSUES OF MATERIAL FACT TO WHICH THERE IS DISPUTE.**

1.    On or about August 4, 2000, Mr. Zimmerman retained attorney Gary Cohen to represent his interests in a divorce proceeding against his then wife.  He paid Gary Cohen an initial retainer fee in the amount of $20,000.  He

5

signed a written retainer letter.  Supplemental Affidavit ("Supp. Aff.") of Gary Zimmerman ¶ 2.

2.     Mr. Zimmerman paid various additional retainer fees to Gary Cohen, when requested by Gary Cohen during the course of his representation. In total he paid Attorney Cohen over $100,000 of hourly fees and he kept an additional $46,000 of his retainer which was not billed against.  Supp. Aff. ¶ 3.

3.     Attorney Cohen pursued an existing divorce action in the Superior Court of the State of Connecticut for Mr. Zimmerman.  Supp. Aff. ¶ 4.

4.     Mr. Zimmerman feels Gary Cohen's wrongful billing, unfair and deceptive trade practices involve (a) keeping clients' unused retainers, (b) deceptively representing to his client when soliciting his bonuses, that a bonus is completely discretionary and to be addressed at the conclusion of the case and once he is retained as counsel, demanding additional fees be paid to him as a condition of continued representation, (c) demanding additional unearned fees as a condition of his continued representation of a client, (d) demanding that such fees to be paid as and under threats of relating confidential information to opposing counsel, (e) demanding that such bonus be paid to him based on the size of the marital estate, thereby transforming this case into a contingent fee case (in addition to charging a $400/hr fee), (f) calling this bonus "tax advice", while sending a letter that he provides no tax advice, (g) demanding that such bonuses be paid even before the judge approves a settlement agreement, (h)

failing to provide accounting when requested, and (i) keeping unearned retainers.

Mr. Zimmerman believes the practices of Gary Cohen are unfair and deceptive

trade practices.  Supp. Aff. ¶ 6.

5.     When Mr. Zimmerman first met with Gary Cohen at his office to

discuss his fee agreement, he questioned the paragraph of this agreement as it

related to additional fees.  Supp. Aff. ¶ 7.

6.     Mr. Zimmerman asked Mr. Cohen to delete this paragraph from the

agreement because it seemed to him that it could be a source of disagreement

and possible lawsuits between Mr. Cohen and Mr. Zimmerman; and could

present a conflict of interest.  Mr. Cohen assured him this would not be the case;

that the bonus was a discretionary "bonus" if he performed work on unusually

difficult issues, that it was entirely in Mr. Zimmerman's discretion if he wanted to

pay him this bonus, and that he would not discuss this bonus until the case was

completely concluded.  He also told me that the amount of the bonus was in the

area of $50,000.  He gave Mr. Zimmerman a recent example in which, after his

female client's case was concluded in a matter of a few weeks and with multi-

million dollar award to her, he asked her for a $50,000 bonus; and she refused;

and he said "fine" and never mentioned the issue of a bonus to this client again.

Supp. Aff. ¶  8.

7.     Because of Mr. Cohen's example referred to above and his

assurances that this was a standard trade practice for attorneys to ask for a

bonus; and that Mr. Zimmerman had complete discretion not to pay this bonus; and that his decision regarding paying him a bonus would not affect his representation of him because he would not ask for this bonus until the case was concluded and his representation of Mr. Zimmerman was completed, he signed the fee agreement.  Supp. Aff. ¶ 9.

8.      Mr. Zimmerman later learned that the representation set out in his fee agreement and the representations he made to him regarding his billing and fee agreement (in order to induce him to sign his fee agreement and hire him as his attorney) were false, fraudulent and involved deceptive trade practices. Supp. Aff. ¶ 10.

9.      Mr. Cohen, upon information and belief, has engaged in this deceptive conduct regarding his fees and bonuses with other clients and continues to do so.  Supp. Aff. ¶ 11.

10.      Once Mr. Zimmerman had signed the fee agreement, Gary Cohen brought up the issue of a bonus several times throughout his representation of him; contrary to his assurances that the bonus would not be brought up until the conclusion of his representation of him. In fact, Mr. Cohen testified in his deposition that he would discontinue his representation of Mr. Zimmerman if he did not agree to pay him a $300,000 bonus prior to concluding the then ongoing mediation hearing.  Mr. Cohen then hid his bonus as a fee for tax advice he never gave. Supp. Aff. ¶ 12.

11.     Contrary to his assurance to Mr. Zimmerman that this bonus would not affect his representation of him and that he would not discuss the bonus prior to concluding his case, he believes the bonus or fees for tax advice whatever the term used, did affect his decision making and representation of him, and presented a conflict of interest of whether he was making decisions that were in Mr. Zimmerman's best interest or making decisions based on the fee and bonus he was demanding, and his willingness to pay him a bonus.  Supp. Aff. ¶ 13.

12.     One example of this is when, five months into the case, there were settlement talks.  At this time, Mr. Cohen brought up to the issue of Mr. Zimmerman paying him a bonus.  He replied that he would not discuss paying him a bonus until the case was concluded and he reminded him that this is what he promised when he signed his fee agreement.  After this conversation in which Mr. Zimmerman refused to discuss the bonus issues, the December settlement discussions were "shelved".  Mr. Zimmerman thinks it is reasonable for him to question if the reason his case was not settled back in December is that Mr. Cohen was influenced by the fact that he was refusing to discuss a bonus; and that he had earned as of December only $60,000 in fees (versus the $450,000 he ultimately received); and he should therefore delay settling the case until Mr. Zimmerman would agree to pay him a bonus and/or he could bill more fees. Supp. App. ¶14.

13.     Mr. Zimmerman believes that Mr. Cohen's trade practices of demanding a bonus, and of describing them as "fees" for tax advice, especially prior to the conclusion of the case, is an unfair trade practice and is an improper condition of an attorney's continued representation of his client.  Mr. Cohen testified in his deposition that if he refused to pay the bonus, he would discontinue his representation of him and leave the ongoing mediation hearing. Supp. App. ¶ 15.

14.     Prior to the conclusion of the case, Gary Cohen demanded that Mr. Zimmerman pay him $300,000 as fees for tax advice and $300,000 to his wife's attorney for tax advice never given. Supp. App. ¶ 16.

15.     When Mr. Zimmerman refused to pay these fees, he threatened to leave the mediation hearing (which he admitted in his deposition), he hung up the phone on him (which he admitted to his deposition), and threatened to reveal confidential matters that could adversely affect the case and the division of the marital property.  Supp. App. ¶17.

16.     Gary Cohen never stated to that this "bonus" of additional fees he might ask for would be based on the size of the marital estate or how much of the marital estate Mr. Zimmerman would be awarded.  Yet, he demanded $300,000 and insisted that $300,000 was "appropriate and customary" and standard trade practice among attorneys in light of the size of the marital estate.  Supp. App. ¶18.

17.    Gary Cohen even pointed out that the bonus he was demanding was an acceptable percentage of the marital estate Mr. Zimmerman would be awarded.  Mr. Zimmerman is requesting the court allow this issue to be adjudicated as to whether Gary Cohen's $300,000 bonus is standard trade practice and if it is acceptable trade practice to base this bonus on the size of the marital estate, especially when he is being paid an hourly rate of $400/hour. Supp. App. ¶ 19.

18.    Mr. Zimmerman does not believe it is an acceptable trade practice for Gary Cohen to take a case on hourly basis, charging $400/hour, and then –in essence—transform this case into a contingent fee case, in which Mr. Cohen would demand a fee based on the percentage of the marital estate awarded to his client.  This was not provided for in the fee agreement; this seems a wrongful and deceptive trade practice.  In fact, it allows Mr. Cohen to have the benefit of both the hourly fee and a contingent fee.  Supp. App. ¶ 20.

19.    With regard to Mr. Cohen's assurances to that he would not discuss this additional fee until the conclusion of the case, not only did he demand this fee as a condition to his completing his representation, he demanded in the settlement agreement that Mr. Zimmerman wire into his account this bonus of $300,000 prior to leaving the Chicago mediation hearing.  Supp. App. ¶ 21.

20.    Mr. Zimmerman questioned him about this and pointed out to Mr. Cohen that a judge had not yet approved the settlement agreement.  Mr. Cohen

replied that it was standard practice to receive this money at the time the settlement agreement was signed and not when approved by a judge. Supp. App. ¶ 22.

21.    This trade practice in which Gary Cohen demanded that Mr. Zimmerman pay a bonus at the time of signing a settlement agreement stating that this is standard practice –as opposed to the time when it is approved by a judge, seems but another example of Gary Cohen's unfair trade practices. Supp. App. ¶ 23.

22.    Gary Cohen never stated that this issue of his bonus was a matter to be addressed at the mediation hearing in Chicago. Mr. Zimmerman attended this mediation hearing to discuss settlement issues relating to the division of the marital property, not to discuss Gary Cohen receiving a bonus. Supp. App. ¶ 24.

23.    Much of the discussion once Mr. Zimmerman got to the mediation was centered on Gary Cohen's bonus and most of Gary Cohen's conduct that week involved coercing him into agreeing to pay him a bonus. I believe Gary Cohen's fee agreement and his conduct regarding his fees presented conflict of interest issues adverse to the client. Supp. App. ¶25.

24.    Gary Cohen also represented—and put in his fee agreement—that it was his practice to obtain a retainer from which he would draw to pay his hourly billings. Supp. App. ¶26.

25.    He told me the initial retainer was non-refundable. Supp. App. ¶27

12

26.    He told Mr. Zimmerman that he would periodically ask him to replenish the initial retainer, but any unused amounts of any retainer paid after the initial one would be refunded to him at the conclusion of the case. Supp. App. ¶28.

27.    At the conclusion of the case, Mr. Zimmerman's bookkeeper pointed out that Gary Cohen should be returning $46,000 of unused retainer money.  Supp. App. ¶29.

28.    Gary Cohen did not provide a final billing and accounting of this money. Supp. App. ¶30.

29.    In his deposition, Gary Cohen admitted that this was his trade practice and that he was keeping the unused retainer in the amount of $46,000. Supp. App. ¶31.

30.    Mr. Zimmerman respectfully requests that the court rule that the above referred to trade issues are triable issues involving Gary Cohen's trade practices regarding (a) his deceptive fee agreement and billing practices, (b) his refusal to return his client's unused retainers, (c) his demanding "bonuses" based on the size of the marital estate (i.e. as is done in a contingency fee case) in a case that he represented to me he was taking on a $400/hr fee basis, (d) his calling this bonus "tax advice" while at the same time giving me a letter stating that he was not giving me tax advice, his demanding a bonus or additional unearned fees as a condition of his continued representation of his client, and (e)

his demanding that such bonus be paid at the time the settlement agreement is signed and before the agreement is even approved by a judge and his demanding a bonus prior to conclusion of the case, as a condition of his settling a case, which presents a conflict of interest, and that these be ruled triable trade issues to be adjudicated by this court.  Supp. App. ¶33.

31.     When Mr. Zimmerman hired Attorney Cohen, he believed and relied upon the fact that he had accepted the duty and obligation to represent him diligently and faithfully and to meet the standard of care and abide by the ethical rules applicable to attorneys representing clients in divorce proceedings.  Supp. App. ¶34.

32.     Beginning on May 24, 2001, Attorney Cohen, due to what Mr. Zimmerman believes was a conflict of interest, that being his desire to charge additional fees, failed to remain within the scope of the representation as defined by Mr. Zimmerman and abide by my decisions concerning his divorce, when his decisions were well within the parameters prescribed by law.  Supp. App. ¶35.

33.     In particular, it is my belief, that Attorney Cohen negotiated away Mr. Zimmerman's claim to at lease one of the five (5) marital homes in order to secure $300,000 of additional fees.  Supp. App. ¶36.

34.     From on or about May 21, 2001 onward, Attorney Cohen's representation was blatantly adverse to Mr. Zimmerman's interests, in that it appeared to him that Attorney Cohen's ultimate goal was to coerce an additional

$300,000 from him and as part of that coercion to pay an additional $300,000 to his wife's lawyer.  At various times he used threatening language, hung up phones on him and walked away from him all while he was being paid to be Mr. Zimmerman's lawyer.  Supp. App. ¶37.

35.    During the mediation in Chicago, Attorney Cohen focused more energy on coercing Mr. Zimmerman into agreements to pay additional fees than securing at least one of the marital homes.  Supp. App. ¶38.

36.    In particular, Attorney Cohen on Wednesday, May 23, 2001 and Thursday, May 24, 2001 and at various other times demanded and pressured Mr. Zimmerman to pay to him and to his wife's lawyer $600,000 of additional fees for work never performed.  Supp. App. ¶39.

37..    During this one-week mediation attempt in Chicago, Illinois, in particular on Wednesday, May 23rd and Thursday, May 24th, 2001, Attorney Cohen demanded that Mr. Zimmerman pay him $300,000 in addition to approximately $150,000 of legal fees already paid, or billed by him for his representation in the divorce proceeding upon the actual or implicit threat of withdrawal of his representation unless he agreed.  Supp. App. ¶40.

38.    Attorney Cohen clearly implied to me that he would divulge to opposing counsel certain information related to the divorce action in Connecticut which would be detrimental to the client's  best interests, which information was

in fact withheld from him until the time of the mediation unless he paid the additional fees.  Supp. App. ¶41.

39.     During the Chicago Mediation, Attorney Cohen demanded that Mr. Zimmerman make a $300,000 payment to his wife's counsel.  Supp. App. ¶42.

40.     Attorney Cohen told Mr. Zimmerman and also told others including a lawyer in Chicago Mr. Zimmerman consulted for help, that should he not agree to pay the requested fees, he would leave Chicago, and "Shelve" the mediation and any possibility of settlement.  Supp. App. ¶40.

41.     Attorney Cohen's demand for $300,000 is a sum far in excess of any fees Mr. Zimmerman agreed to or was obligated to pay by the Retainer Agreement and created a conflict of interest, forcing him to attempt to retain an attorney admitted to practice in the State of Illinois, to represent him in discussions with Attorney Cohen.  He was in the impossible and untenable situation of having to hire an attorney to talk to his own attorney for him all the while being pressured to pay sums he did not owe or face imminent disaster. Supp. App. ¶41.

42.     Mr. Zimmerman was so fearful of Attorney Cohen's threats that he would not allow the Attorney he contacted in Chicago to step into the case because when Attorney Cohen found out that Mr. Zimmerman spoke with another lawyer he became angry and reiterated his implied threat to disclose adverse information to opposing counsel.  Supp. App. ¶35.

16

43.    When the attorney consulted in Chicago informed Attorney Cohen Mr. Zimmerman did not wish to pay him the demanded $300,000 or pay his wife's attorney $300,000, Attorney Cohen's angry response to Attorney Andrew Eichner, who Mr. Zimmerman hired to talk to Attorney Cohen, was that the $600,000 would then have to go to his wife.  That result was clearly contrary to his best interests and was clearly a threat to make him give in and pay the money he wanted.  Supp. App. ¶43.

44.    As a result of the threats and intimidation he was coerced and frightened into paying the $600,000 to Attorney Cohen and to Attorney Grund, his wife's lawyer.  It is important to note that Mr. Zimmerman never spoke directly with Attorney Grund about his $300,000.  It was Attorney Cohen who made demand for Attorney Grund.  Supp. App. ¶47.

45.    Also, when Mr. Zimmerman refused to pay, Attorney Cohen demanded the $300,000. Attorney Cohen failed to follow his instructions and remove provisions from the settlement agreement that discussed the payment of the funds.  Supp. App. ¶48.

46.    Attorney Cohen designated the $600,000 as a fee paid for "tax advice", while Mr. Zimmerman was told in a letter dated May 24, 2001 that no such advice was given.  In addition, the settlement agreement that Mr. Zimmerman objected to held a provision disclaiming liability relative to "tax advice".  Finally, the tax structure of the separation agreement was defective as it

17

actually caused Mr. Zimmerman to incur taxes for distribution to his wife.  Supp. App. ¶49.

47.     While Attorney Cohen was coercing his client into paying him the $300,000 and to pay Attorney Grund $300,000, Attorney Cohen out of nowhere told Mr. Zimmerman there was a serious jurisdictional defect in my Connecticut case which threatened his ability to obtain a valid property division in Connecticut.  He implied he would disclose this fact to Mr. Zimmerman's wife's attorney if he did not capitulate and Mr. Zimmerman believed him.  Mr. Zimmerman did not hear of this problem until he was in Chicago and it did not come up until he objected to paying him and paying Attorney Grund each $300,000.  Supp. App. ¶50.

48.     As result of Attorney Cohen's conduct, Mr. Zimmerman has been damaged.  In particular, he lost a large portion of his assets including at least one of the family homes, incurred unnecessary attorney fees, was forced into paying large sums of money under threat, coercion, misrepresentation and intimidation and deceitful trade practices and he did not want to pay.  Mr. Zimmerman to-date has not been provided with a final accounting of the charges incurred and amounts paid to Attorney Cohen and have been deprived of over $46,000 in retainer funds which represent payment of unearned fees.  Supp. App. ¶51.

49.     Attorney Cohen made various statements and representations to Mr. Zimmerman during the course of his divorce which were untrue, and were

clearly designed to benefit Attorney Cohen and not Mr. Zimmerman including the fact that the Connecticut Divorce action was jurisdictionally defective. Attorney Cohen has never told Mr. Zimmerman why that was so. Moreover, Attorney Cohen told me him had a two step process by which the distributions from Zimmerman Properties, Inc. to his wife would be tax fee. He never told Mr. Zimmerman what that method was. Supp. App. ¶52.

50. Attorney Cohen's statement that the jurisdictional basis for the Connecticut divorce action was flawed and that he would disclose that fact to opposing counsel was untrue, unsupported and designed to mislead or threaten Mr. Zimmerman. Supp. App. ¶53.

51. Attorney Cohen's statement that if another attorney appeared for Mr. Zimmerman he would cause the mediation to fail was designed solely to threaten him. Supp. App. ¶54.

52. Attorney Cohen's statement in the Separation Agreement he prepared that the $300,000 fee can be treated as "tax advice" and be deductible was untrue. In fact, the Separation Agreement he and Attorney Grund drafted specifically denied that tax advice was being given. Attorney Cohen also sent Mr. Zimmerman or gave me a letter dated May 24, 2001 in which he claimed Mr. Zimmerman received no tax advice. Supp. App. ¶55.

53.    The actions of Attorney Cohen were directed to the business relationship and designed to allow him to collect fees far in excess of the fees Mr. Zimmerman was legally obligated to pay.  Supp. App. ¶56.

54.    Attorney Cohen misrepresented the status of negotiations with Mr. Zimmerman's wife's attorney and concealed from Mr. Zimmerman the fact he was negotiating with his wife's counsel for additional fees to be paid by Mr. Zimmerman to both he and Mr. Zimmerman's wife's attorney.  Supp. App. ¶57.

55.    Attorney Cohen's actions toward Mr. Zimmerman in connection with the fee arrangement was entirely contrary to his representation in the engagement letter.  Supp. App. ¶58.

56.    Mr. Zimmerman reasonably relied upon the statements and representations of Gary Cohen all to his detriment.  Mr. Zimmerman relied upon these statements and upon Attorney Cohen to represent his  best interests. Supp. App. ¶59.

57.    Most of Attorney Cohen's actions asserted above related solely to the business relationship between the parties and not his representation of Mr. Zimmerman.  Supp. App. ¶60.

58.    Mr. Zimmerman has sustained ascertainable loss of money and property, and it is substantial in nature including $600,000 in payments to Attorney Cohen and Attorney Grund, as fees far in excess of the hourly fees he

already paid, $200,000 in taxes, $46,000 in excess retainer funds, attorney fees for his Chicago attorney and legal fees in pursing this action.

59.    Mr. Zimmerman believes Attorney Cohen's wrongful acts included established principles and concepts of unfairness.  Attorney Cohen acted deceptively and unfairly.  He charged unreasonable fees and demanded sums upon threats far in excess to which he was entitled.  He required Mr. Zimmerman to pay additional fees and would withdraw unless he paid additional fees beyond his obligations. Supp. App. ¶62.

60.    Attorney Cohen's unfair and deceptive acts and practices as alleged herein, directly and proximately caused Mr. Zimmerman's injuries and losses.  Supp. App. ¶60.

61.    Mr. Zimmerman has spoken to other former clients of Attorney Cohen's and their experiences with him are not unlike his.  Supp. App. ¶61.

62.    The actions alleged in connection with the CUTPA claims relate directly to Attorney Cohen's practices in regard to solicitation of business and billing.  Supp. App. ¶62.

THE PLAINTIFF
GARY ZIMMERMAN


By:_____

      Kenneth A. Votre, Esq. (ct05981)
      Votre & Rini, P.C.
      201 Orange Street
      New Haven, CT 06510
      Tel:   (203) 498-0065
      Fax:  (203) 821-3595


## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, on this, the 8th day of November, 2004, to the following counsel of record:

Benjamin Berger
Katherine C. Callahan, Esq.
Updike, Kelly & Spellacy, P.C.
One State Street, Suite 2400
P.O. Box 231277
Hartford, CT 06123-1277

Christopher P. McClancy, Esq.
1051 Post Road, Suite 3
P.O. Box 1124
Darien, CT 06820-1124


      _____
      Kenneth A. Votre, Esq.