### UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GARY ZIMMERMAN | : | No.:302 CV 0181 (AVC) |
| *Plaintiff* | : | |
| | : | |
| VS. | : | |
| | : | |
| GARY COHEN | : | |
| *Defendant.* | : | November 8, 2004 |

### SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION

**FACTS:**

The Plaintiff, Gary Zimmerman, is currently a resident of the State of Nevada. He was formerly a resident of Connecticut. The Defendant, Gary Cohen, is an attorney duly admitted to practice in the State of Connecticut, and is, upon information and belief, a resident of the Town of Greenwich, County of Fairfield and State of Connecticut. At all times relevant herein the Defendant, Gary Cohen, maintained a law office in the Town of Greenwich, County of Fairfield and State of Connecticut.

On or about August 4, 2000, the plaintiff, Gary Zimmerman, retained attorney Gary Cohen to represent him in a divorce proceeding against his wife Joan Zimmerman. The divorce action had already been filed by another attorney. Attorney Cohen was hired to replace Mr. Zimmerman's prior counsel.

At Attorney Cohen's request, Mr. Zimmerman executed a written retainer agreement. Pursuant to the retainer agreement executed between Mr. Zimmerman and Attorney Cohen, Mr. Zimmerman paid the Defendant an initial retainer fee in the amount of $20,000. A copy of the Retainer Agreement is attached hereto as Exhibit "A." Gary Zimmerman thereafter paid various additional retainer fees to the Defendant Gary Cohen whenever requested by the Defendant. In all, Mr. Zimmerman paid over $100,000 in billed hourly fees. The Defendant, Gary Cohen, at the Plaintiff's request, pursued the existing divorce action in the Superior Court of the State of Connecticut. Shortly thereafter, however, the Plaintiff's then wife initiated a competing divorce action against the Plaintiff, Gary Zimmerman in the State of Nevada. Attorney Cohen participated in the defense of that action as well as through local counsel.

Attorney Cohen represented Mr. Zimmerman in the defense of a motion to dismiss filed in Connecticut and assisted, in defense of a motion to dismiss filed in the Nevada action. No substantive depositions were taken. However, certain depositions limited only to the issue of jurisdiction and residence were taken.

After both motions to dismiss were denied and both divorce actions proceeded, the parties agreed to "mediate" their divorce. On or about May 17, 2001, the Plaintiff paid the Defendant an additional retainer fee of $25,000,

which was requested just prior to a scheduled mediation conference to be held in Chicago, Illinois.

On or about May 21, 2001, the Plaintiff, Attorney Gary Cohen, the Plaintiff's then wife, and her attorney, met in Chicago for a one-week mediation in an attempt to reach a divorce settlement agreement, and to end the litigation proceeding in both Connecticut and Nevada (the "Chicago Mediation"). From approximately May 21, 2001 to May 25, 2001, the Defendant, Gary Cohen represented the Plaintiff, Gary Zimmerman at the mediation.

As the mediation progressed, the Defendant, Gary Cohen's representation of the Plaintiff became directly adverse to the Plaintiff's interests, in that said representation was devoid of any degree of loyalty normally afforded a client in that the Defendant's ultimate goal was to coerce $300,000, for the Defendant and $300,000 for Mr. Zimmerman's wife's lawyers. In addition to Mr. Cohen's breach of the applicable standard of care, the Plaintiff claims that Attorney Cohen's action in coercing additional fees from the Plaintiff constituted fraudulent conduct and a violation of CUTPA. During this one-week mediation attempt in Chicago, Illinois, the Defendant, Attorney Gary Cohen, demanded that the Plaintiff pay him $300,000, in addition to approximately $150,000 of legal fees already paid by the Plaintiff, or billed by the Defendant for his representation in the divorce proceeding upon the actual

or implicit threat of withdrawal of his representation unless the Plaintiff agreed. Attorney Cohen said and implied, that he would divulge to opposing counsel certain information related to the divorce action in Connecticut which would be detrimental to Mr. Zimmerman's best interests, which information was in fact withheld from the Plaintiff Gary Zimmerman, until the time of the mediation. The $300,000 is falsely in the Separation Agreement as a fee to Attorney Cohen for tax advice given to Zimmerman Properties, Inc. (a corporation at that time to be wholly owned by Mr. Zimmerman) as well as a fee to Mr. Zimmerman's ex-wife's attorney for the same services.  No tax advice was given.  In fact, just before the execution of the Separation Agreement Attorney Cohen told Mr. Zimmerman in writing that he was giving no tax advice.

During this one-week mediation attempt, the Defendant, Attorney Gary Cohen also demanded that the Plaintiff pay his then wife's counsel $300,000. The Defendant, Attorney Gary Cohen advised the Plaintiff and reported to others that should the Plaintiff, Gary Zimmerman fail to pay the requested sums, the Defendant, Attorney Cohen would leave Chicago, and "shelve" the mediation and possible settlement.

The Defendant's demand of $300,000 created a conflict of interest forcing the Plaintiff to retain new counsel, an attorney admitted to practice in the State of Illinois, to represent the Plaintiff in negotiations with the Defendant

Gary Cohen. When the Defendant, Gary Cohen learned that the Defendant's new counsel would represent the Plaintiff in the mediation should the Defendant leave Chicago as intimated, the Defendant threatened or intimated that he would undermine the ongoing mediation were the Plaintiff to replace him. When the Plaintiff's new counsel informed the Defendant that the Plaintiff did not wish to pay him the demanded $300,000.00, or pay his wife's attorney $300,000, the Defendant's response was that said $600,000.00 would then have to go to his wife as part of the divorce settlement. Attorney Cohen never said this to Mr. Zimmerman. These sums were misrepresented on the Settlement Agreement creating a very risky tax position in regards to Zimmerman Properties, Inc.[1]

      Moreover, the Defendant, Gary Cohen, failed to secure for the Plaintiff in his divorce proceeding any one of the family homes despite at least one of the four homes being available to the Plaintiff at the beginning of negotiations. He failed to provide any substantial tax advice at all to the Plaintiff during the course of the divorce despite assessing over $300,000 in legal fees for tax advice. In fact, Attorney Cohen expressly disclaimed providing any tax advice.

---

[1] The Plaintiff bases his misrepresentation claims as well as his CUTPA claims on the fact that these alleged misrepresentations and conduct arise from the "entrepreneurial" aspects of the relationship.

Attorney Cohen has taken the position that the approximately $46,000 balance in Mr. Zimmerman's account at the conclusion of the representation was covered by this provision. As a result, Attorney Cohen retained in addition to his hourly fees and an additional fee of $300,000 the unused portion of Mr. Zimmerman's additional retainer of $46,000.

As a result of the Defendant's conduct, the Plaintiff was damaged. In particular, the Plaintiff sustained a loss of a significant portion of his estate, incurred unnecessary attorney fees, was forced into paying large sums of money under threats, misrepresentations and intimidation that he did not want to pay, has not been provided with a final accounting of the charges incurred and amounts paid to the Defendant pursuant to the Defendant's representation during the divorce proceeding, and has been deprived of over $46,000 in retainer funds which represent payment of unearned fees to the Defendant.

**ARGUMENT:**

A.   **THE CONDUCT UPON WHICH THE PLAINTIFF BASES HIS CUTPA CLAIMS DO NOT SIMPLY CONSTITUTE LEGAL MALPRACTICE BUT INVOLVE THE ENTREPRENEURIAL ASPECTS OF THE PRACTICE OF LAW AND THIS COURT DECIDED SO IN ITS MEMORANDUM OF DECISION.**

Connecticut General Statutes § 42-110b(a) provides:

No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. The Connecticut Supreme Court said in <u>Suffield Development Associates Limited Partnership v. National Loan Investors, L.P., et al</u>, 260 Conn. 766, 781 (2002) in regards to the applicability of CUTPA to attorneys:

> The U.S. District Court has stated that, in general, CUTPA applies to the conduct of attorneys. <u>Heslin v. Connecticut Law Clinic of Trantolo & Trantolo</u>, 190 Conn. 510, 521, 461 A.2d 938 (1983). The statute's regulation of the conduct of any trade or commerce does not totally exclude all conduct of the profession of law…. Id. <u>The Connecticut Supreme Court has stated, that the entrepreneurial aspects of the practice of law are covered by CUTPA</u>. <u>Haynes v. Yale-New Haven Hospital</u>, 243 Conn. 17, 34, 699 A.2d 964 (1997). <u>Beverly Hills Concepts, Inc. v. Schatz & Schatz, Ribicoff & Kotkin</u>, 247 Conn. 48, 79, 717 A.2d 724 (1998).  (emphasis added)

The Supreme Court's analysis has been stated simply as: Our CUTPA cases illustrate that the most significant question in considering a CUTPA claim against an attorney is whether the allegedly improper conduct is part of the attorney's professional representation of a client or is part of the entrepreneurial aspect of practicing law.

The Supreme Court in <u>Suffield Development Associates Limited Partnership v. National Loan Investors, LP</u>, 260 Conn. 766 (2002) specifically said about the "entrepreneurial" exception:

> First, it is important to note that, although all lawyers are subject to CUTPA, most of the practice of law is not. The "entrepreneurial" exception is just that, a specific exception from CUTPA immunity for a well-defined set of activities – advertising and bill collection, for example. <u>See</u>, <u>Haynes v. Yale-New Haven Hospital</u>, 243 Conn. 17, 34-38, 699 A.2d 964 (1997) (reasoning that practice of law and medicine may give rise to CUTPA claims only for entrepreneurial aspects, such as solicitation of business and billing, and not for claims involving issues of competence and strategy). It is not a call-all provision intended to subject any arguably improper attorney conduct to CUTPA liability. Therefore, the mere fact that the actions of the attorney and the law firm might have deviated from the standards of their profession does not necessarily make the action entrepreneurial in nature.

The allegations of the Plaintiff's complaint fall squarely within the entrepreneurial exception.[2] The claims made by the Plaintiff, at least in part, relate to the Defendants' billing practices, fees, retainer agreement and the solicitation of a fee for services he acknowledged were not provided. This conduct is completely within the entrepreneurial exception. It deals with the business relationship between the client and attorney. The allegations are sufficient to set forth a claim under CUTPA. Each is supported by evidence.

---

[2] The court seems to have accepted this in its Memorandum of Decision.

Zimmerman/memo of law re motion for reconsideration

In <u>Williams Ford</u>, the Connecticut Supreme Court dealt with similar issues raised by the Defendant in this case.

In <u>Williams Ford</u>, <u>supra</u>, the Plaintiff alleged as follows:

> Count four of the plaintiffs' complaint asserted that, based on the allegations contained therein, the defendants have violated CUTPA by "[using] and [employing] unfair and deceptive acts and practices in connection with the solicitation and entering into of structured settlements in connection with the sale of annuities." The defendants argue that this count should be stricken because: <u>(1) no consumer relationship existed between the defendants and the plaintiffs' and (2) the claim was not pleaded with sufficient particularity</u>.
>
> ...

The Supreme Court held:

> "In determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise – in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons] …. All three criteria do not need to be satisfied to support a finding of [a violation of CUTPA]." (Internal quotation marks omitted.) <u>Hartford Electric Supply Co. v. Allen-Bradley Co.</u>, 150 Conn. 334, 367-68, 736 A.2d 824 (1999)…. We are unpersuaded that there is any special requirement of pleading particularity connected with a CUTPA claim, over and above any other claim….The

> Plaintiff has adequately pled a CUTPA claim. There is no particularity of pleading required under Connecticut law and clearly Connecticut is a fact pleading jurisdiction.

The Plaintiff's allegations are more than sufficient to allow the CUTPA claim to proceed. The Court already decided that the allegations of the complaint sufficiently invoke the entrepreneurial aspect of the practice of law. The Plaintiff's Affidavit and the Defendant's conduct relate not to his role as the Plaintiff's attorney but to his role as a businessman getting, collecting and obtaining a fee from his client. The Defendant cannot cloak his conduct in the attorney-client relationship, when in fact it was separate and distinct from the legal representation. The Plaintiff's Affidavit and Supplemental Affidavit as well as the Transcript excerpts of both Mr. Zimmerman's and Mr. Cohen's depositions demonstrate a violation of CUTPA.

**B.    THERE IS A MATERIAL ISSUE OF FACT FOR TRIAL AS TO CUTPA**

The facts supported by the Affidavit of Gary Zimmerman as well as his supplemental affidavit, the Deposition of Gary Zimmerman and the Deposition of Gary Cohen show conclusively a material issue of fact remains as to the Plaintiff's CUTPA claims.

Connecticut's Unfair Trade Practice Act, Conn. Gen. Stat. § 42-110b(a) states: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." CUTPA

applies to the conduct of attorneys.  <u>Heslin v. Conn. Law Clinic of Trantolo & Trantolo</u>, 190 Conn. 510, 521, 461 A.2d 938 (1983).  The Connecticut Supreme Court stated:

> [W]e have declined to hold that every provision of CUTPA permits regulation of every aspect of the practice of law…We have stated, instead, that, only the entrepreneurial aspects of the practice of law are covered by CUTPA…[W]e conclude that professional negligence—that is, malpractice—does not fall under CUTPA.

(citations omitted; internal quotation marks omitted.)  <u>Suffield Dev. Assocs. Ltd. Partnership v. Nat'l Loan Investors</u>, 260 Conn. 766, 781 (2002).  "[T]he most significant question in considering a CUTPA claim against an attorney is whether the allegedly improper conduct is part of the attorney's professional representation of a client or is part of the entrepreneurial aspect of practicing law."  <u>Suffield Dev. Assocs. Ltd. Partnership v. Nat'l Loan Investors</u>, 260 Conn. 766, 781 (2002).  "The 'entrepreneurial' exception is…a specific exception from CUTPA immunity for a well-defined set of activities, [including] advertising and bill collection."  <u>Id</u>. At 782.

Specifically, the complaint alleges that Attorney Cohen "designated the 'bonus' as a fee paid for 'tax advice' [after Cohen] notified [Zimmerman] in writing that no such advice was being given."  Such a bonus deals with the entrepreneurial portion of the practice of law subject to CUTPA.  In addition, the

various pressure tactics of Attorney Cohen in seeking to obtain monies not

earned are equally a violation of CUTPA.

**C.    THE PLAINTIFF'S AFFIDAVIT AND THE DEPOSITION OF GARY COHEN CLEARLY ESTABLISH AN ISSUE OF FACT SUFFICIENT TO SUPPORT PLAINTIFF'S CUTPA CLAIMS**

The Plaintiff's Affidavit and Supplemental Affidavit and Attorney Cohen's

deposition clearly demonstrates a material issue of fact in regards to CUTPA.

More particularly, they demonstrate multiple issues relating to the

entrepreneurial aspects of the practice of law.

The following paragraphs of the Supplemental Affidavit which

demonstrate Mr. Cohen's violations of CUTPA are as follows:

> 37.    The actions of Attorney Cohen were directed to our business relationship and designed to allow him to collect fees far in excess of the fees I was legally obligated to pay.
> 42.    I have sustained ascertainable loss of money and property, and it is substantial in nature including $600,000 in payments to Attorney Cohen and Attorney Grund, $200,000 in taxes, $46,000 in excess retainer funds, attorney fees for my Chicago attorney and legal fees in pursing this action.
> 43.    I believe Attorney Cohen's wrongful acts established principles and concepts of unfairness.  He acted deceptively and unfairly.  He charged unreasonable fees and demanded sums upon threats for in excess to which he was entitled.
> 44.    Attorney Cohen's unfair and deceptive acts and practices as alleged herein, directly and proximately caused my injuries and losses.

Moreover, Attorney Cohen said at his deposition:

Page 85 line 1-13

> Q. Okay. Is it fair to say that paragraph 5.2 says that "Zimmerman Properties, Inc., shall pay to Gary Cohen and Grund and Stafkopf the sum of $300,000 each for and as attorneys' fees in connection with services rendered to Zimmerman Properties, Inc., with respect to tax planning, counseling, and in matters relating to advice, consultation given to Zimmerman Properties, Inc., and to husband and wife in conjunction with the preservation and disposition of income-producing properties."
> That's what it says?
>
> A. That's what it says.

Page 88 line 8 to page 89 line 19:

> Q. So let's go back a step to the $300,000. Grund made a demand for some amount of money more than maybe $300,000?
>
> A. No. He didn't make a demand for anything. He – there was – there were operating accounts that were part of the discussion for division.
>
> Q. Okay.
>
> A. In fact, I remember asking Balbirer some questions about what he thought a reasonably fee in addition to time would be for me, and I thought that a reasonable fee in addition to time would be about three fifty, and I had – Balbirer though it should be higher.
> I had discussions with Gary on Thursday, and we ultimately agreed on 300, I think. I think I told him I thought it was fair.
> He said, "No," it wasn't fair.
> I said, "What do you think is fair?"
> This went around and around. But ultimately he thought that – whether he thought it was fair or reasonable or not, he ended up agreeing that it should be the three.
> And I remember pointing out to him that since I was getting him relieved of the obligation to pay Balbirer's or Berman's – one or the other – premium fee of $75,000 and I was getting him relieved of the obligation of picking up the expenses for the mediators, and

>because I was also relieving him of the obligation to pick up my expenses for the week in Chicago, that the net cost to him of the 300,000 would be something just north of 200,000.
>That's my best recollection.

Page 90 line 23 to 91 line 19

>Q. You were also getting paid by the hour to represent Mr. Zimmerman; is that correct?
>
>A. Not "also." I was – I was getting paid by the hour according to my retainer agreement, and at the conclusion of the case had the right to discuss with Mr. Zimmerman a reasonable fee in addition to time, and that's what I did.[3]

Page 99 lines 2-21

>Q. But that amount of money was $300,000, and isn't it correct that up until that time your hourly bills to Mr. Zimmerman were less than $150,000? Is that correct?
>
>A. About that, yes.
>
>Q. So this extra fee that's laid out in the agreement is twice – two times itself what you billed him up to that point in representing him?
>A. I only billed him the time that I had spent. That's correct.
>
>Q. And your retainer agreement doesn't entitle you to any type of bonus for your work; it just indicates that it's a possibility?
>
>A. That's ab –
>
>            MS. SPALDING: Objection
>A. I don't have a bonus provision. I have a provision for the negotiation of a reasonable additional fee in addition to time. It's not a bonus. It's a premium.

---

[3] Of course, this is not the case since Mr. Cohen demanded additional fees prior to settlement.

Page 102 line 13-16

> Q. So your testimony is that nearly $450,000 was a reasonable fee for handling this divorce?
>
> A. Yes, sir, it is. That is my testimony.

Page 107 lines 7-9

> Q. Well, wasn't it, in fact, billed and billed again, the retainer?
>
> A. Probably.

Page 151 line 19 to Page 152 line 10

> Q. And at the time this separation agreement, marked as Exhibit D, was entered into Zimmerman Properties, Inc., owed you no money for legal fees. Is that fair to say?
>
> A. No.
>
> Q. Okay. How much money did they owe you?
>
> A. Zimmerman Properties, Inc., by virtue of Mr. Zimmerman's acceptance of the terms of this agreement, owed me $300,000.
>
> Q. What was the consideration for that $300,000?
>
> A. The consideration was all of the services that I provided to Mr. Zimmerman in connection with his distribution of assets involved in his divorce from Joan Zimmerman.

Page 154 lines 11 -23

> Q. As of that date, the date the separation agreement was signed, Mr. Zimmerman had paid all the fees that had been

>billed to him by your firm, and provided you an additional retainer for services rendered to be rendered during the mediation. Isn't that correct?
>
>A. Partially.
>
>Q. Okay. What is not correct about it?
>
>A. He provided an additional retainer for services to be rendered into the future. We did not know, at the time that the additional retainer was billed or provided, whether the mediation would end the proceedings or not.

Page 157 line 2 to 158

>Q. But on Thursday, the 24th, Mr. Zimmerman told you, did he not, that he did not want to pay these two $300,000 fees for whatever services you might claim they were for?
>
>A. Mr. Zimmerman told me that he thought the fee was high. He wanted to known how it had gotten into the draft. I told him that David Grund had put in that number, that I also believed that it was a reasonable number, that no number could in fact be kept in the agreement except with his approval.
>Mr. Zimmerman and I spoke on the telephone. I was in my room at the hotel. I believe that he was in his room, but I'm not – I can't tell you.
>We spoke on the phone for approximately forty-five minutes. At the end of the discussion, Mr. Zimmerman, for whatever reasons he had, had agreed that the fee was reasonable, and that that provision could be included in the agreement.

Page 157 line 2 through Page 158 line 8:

>Q. But on Thursday, the 24th, Mr. Zimmerman told you, did he not, that he did not want to pay these two $300,000 fees for whatever services you might claim they were for?

>A. Mr. Zimmerman told me that he thought the fee was high. He wanted to known how it had gotten into the draft agreement.
>I told him that David Grund had put in that number, that I also believed that it was a reasonable number, that no number could in fact be kept in the agreement except with his approval.
>Mr. Zimmerman and I spoke on the telephone   I was in my room at the hotel. I believe that he was in his room, but I'm not – I can't tell you.
>We spoke on the phone for approximately forty-five minutes. At the end of the discussion, Mr. Zimmerman, for whatever reasons he had, had agreed that the fee was reasonable, and that that provision could be included in the agreement.
>The next day, when he was presented with a final draft of the agreement, he read it; he considered it; he initialed each and every page; he signed it; he called his office and gave instructions for wire transfers to be made.
>He then took a copy of the agreement, got into a taxicab with me, and drove off to the airport. That's what happened, Mr. Votre.

Page 160 lines 2-7

>Q. What did you tell him would happen if he didn't accept the two $300,000 payments?
>
>A. That Mr. Grund made it clear that if the payments were not made, the agreement would not be made and we would end up – the mediation would be over.

Page 162 lines 1-7

>Q. Did you believe on Thursday that a conflict of interest may have arisen because you had gotten a call from another lawyer representing Mr. Zimmerman, concerned

>about the $300,000 going to you and the $300,000 going to Mr. Grund?
>
>A.  No.

Page 172 lines 3-10

>Q.  In addition, to the fees charged, which are outlined in Exhibit B, and in addition to the $300,000 you received pursuant to paragraph 5.2 of the separation agreement, you also, did you not, retain the remainder of Mr. Zimmerman's retainer on deposit with your firm; is that correct?
>
>A.  Yes, it is.

Page 173 lines 10-18

>Q.  It does, in fact, say that you retain any unused retainer?
>
>A.  No, it doesn't.  It's the additional – I'm sorry – the original retainer, sir.  I don't keep any unused retainer at the end of the case.
>
>Q.  Okay.  Well, you did with Mr. Zimmerman's case?  You retained the unused additional retainer?
>
>A.  I guess I did.

Page 174 pages 15-20

>Q.  Sure.  And there came a time – and you can review your ledger if you'd like -- that the additional unused retainer that was held of Mr. Zimmerman's, went from your trust account to the firm account?
>
>A.  I guess so.

THE PLAINTIFF
GARY ZIMMERMAN

By:_____
   Kenneth A. Votre, Esq. (ct05981)
   Votre & Rini, P.C.
   201 Orange Street
   New Haven, CT 06510
   Tel: (203) 498-0065
   Fax: (203) 821-3595

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, postage prepaid, on this, the 8th day of November, 2004, to the following counsel of record:

Benjamin Berger
Katherine C. Callahan, Esq.
Updike, Kelly & Spellacy, P.C.
One State Street, Suite 2400
P.O. Box 231277
Hartford, CT 06123-1277

Christopher P. McClancy, Esq.
1051 Post Road, Suite 3
P.O. Box 1124
Darien, CT 06820-1124

_____
Kenneth A. Votre, Esq.