## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GARY ZIMMERMAN | : | No.:302 CV 0181 (AVC) |
| *Plaintiff* | : | |
| | : | |
| VS. | : | |
| | : | |
| GARY COHEN | : | |
| *Defendant.* | : | November 8, 2004 |

## SUPPLEMENTAL AFFIDAVIT OF
## GARY ZIMMERMAN IN SUPPORT OF
## MOTION FOR RECONSIDERATION

1. I am Gary Zimmerman. I currently reside in Las Vegas, Nevada.

2. On or about August 4, 2000, I retained attorney Gary Cohen to represent my interests in a divorce proceeding against my then wife. I paid Gary Cohen an initial retainer fee in the amount of $20,000. I signed a written retainer letter, a true and accurate copy of which is attached hereto as Exhibit "A".

3. I paid various additional retainer fees to Gary Cohen, when requested by Gary Cohen during the course of my representation. In total I paid Attorney Cohen over $100,000 of hourly fees and I believe he kept an additional $46,000 of my retainer which was not billed against.

4. Attorney Cohen, at my request, pursued an existing divorce action in the Superior Court of the State of Connecticut for me.

5. I am filing this supplemental affidavit for the sole purpose of addressing Gary Cohen's unfair and deceptive trade practices and the court's concerns regarding the sufficiency of the evidence in this case.

6. I feel Gary Cohen's wrongful billing, unfair and deceptive trade practices involve (a) keeping clients' unused retainers, (b) deceptively representing to his client when soliciting his bonuses, that a bonus is completely discretionary and to be addressed at the conclusion of the case and once he is retained as counsel, demanding additional fees be paid to him as a condition of continued representation, (c) demanding additional unearned fees as a condition of his continued representation of a client, (d) demanding that such fees to be paid as and under threats of relating confidential information to opposing counsel, (e) demanding that such bonus be paid to him based on the size of the marital estate, thereby transforming this case into contingent fee case (in addition to charging a $400/hr fee), (f) calling this bonus "tax advice", while sending a letter that he provides no tax advice, (g) demanding that such bonuses be paid even before the judge approves a settlement agreement, (h) failing to provide accounting when requested, and (i) keeping unearned retainers. I believe the practices of Gary Cohen are unfair and deceptive trade practices.

7. When I first met with Gary Cohen at his office to discuss his fee agreement, I questioned the paragraph of this agreement as relates to additional fees.

8. I asked Mr. Cohen to delete this paragraph from the agreement because it seemed to me that it could be a source of disagreement and possible lawsuits between Mr. Cohen and me; and could present a conflict of interest. Mr. Cohen assured me this would not be the case; that the bonus was a discretionary "bonus" if he performed work on unusually difficult issues, that it was entirely in my discretion if I wanted to pay him this bonus, and that he would not discuss this bonus until the case was completely concluded. He also told me that the amount of the bonus was in the area of $50,000. He gave me a recent example in which, after his female client's case was concluded in a matter of a few weeks and with multi-million dollar award to her, he asked her for a $50,000 bonus; and she refused; and he said "fine" and never mentioned the issue of a bonus to this client again.

9. Mr. Cohen's example referred to above and his assurances that this was a standard trade practice for attorneys to ask for a bonus; and that I had complete discretion not to pay this bonus; and that my decision regarding paying him a bonus would not affect his representation of me because he would not ask for this bonus until the case was concluded and his representation of me was completed, I signed the fee agreement.

10. I later learned that the representation set out in his fee agreement and the representations he made to me regarding his billing and fee agreement (in order to

induce me to sign his fee agreement and hire him as my attorney) were false, fraudulent and involved deceptive trade practices.

11.    Mr. Cohen, upon information and belief, has engaged in this deceptive conduct regarding his fees and bonuses with other clients and continues to do so.

12.    Once I had signed the fee agreement, Gary Cohen brought up the issue of a bonus several times throughout his representation of me; contrary to his assurances that the bonus would not be brought up until the conclusion of his representation of me. In fact, Mr. Cohen testified in his deposition that he would discontinue his representation of me if I did not agree to pay him a $300,000 bonus prior to concluding the then ongoing mediation hearing.  Mr. Cohen then hid his bonus as a fee for tax advice he never gave.

13.    Contrary to his assurance to me that this bonus would not affect his representation of me and that he would not discuss the bonus prior to concluding my case, I believe the bonus or fees for tax advice whatever the term used, did affect his decision making and representation of me, and presented a conflict of interest of whether he was making decisions that were in my best interest or making decisions based on the fee and bonus he was demanding, and my willingness to pay him a bonus.

14.    One example of this is when, five months into my case, there were settlement talks.  At this time, Mr. Cohen brought up to me the issue of my paying him a

bonus. I replied that I would not discuss paying him a bonus until the case was concluded and I reminded him that this is what he promised me when I signed his fee agreement. After this conversation in which I refused to discuss the bonus issues, the December settlement discussions were "shelved". I think it is reasonable for me to question if the reason my case was not settled back in December is that Mr. Cohen was influenced by the fact that I was refusing to discuss a bonus; and that he had earned as of December only $60,000 in fees (versus the $450,000 he ultimately received); and he should therefore delay settling the case until I would agree to pay him a bonus and/or he could bill more fees.

15. I believe that Mr. Cohen's trade practices of demanding a bonus, and of describing them as "fees" for tax advice, especially prior to the conclusion of the case, is an unfair trade practice and is an improper condition of an attorney's continued representation of his client. Mr. Cohen testified in his deposition that if I refused to pay the bonus, he would discontinue his representation of me and leave the ongoing mediation hearing.

16. Prior to the conclusion of the case, Gary Cohen demanded that I pay him $300,000 as fees for tax advice and $300,000 to my wife's attorney for tax advice never given.

17. When I refused to pay these fees, he threatened to leave the mediation hearing (which he admitted in his deposition), he hung up the phone on me (which he

5

admitted to his deposition), and threatened to reveal confidential matters that could adversely affect my case and the division of the marital property.

18.  Gary Cohen never stated to me that this "bonus" of additional fees he might ask for would be based on the size of the marital estate or how much of the marital estate I would be awarded.  Yet, he demanded $300,000 and insisted that $300,000 was "appropriate and customary" and standard trade practice among attorneys in light of the size of the marital estate I would be awarded.

19.  Gary Cohen even pointed out that the bonus he was demanding was an acceptable percentage of the marital estate I would be awarded.  I am requesting the court allow this issue to be adjudicated as to whether Gary Cohen's $300,000 bonus is standard trade practice and if it is acceptable trade practice to base this bonus on the size of the marital estate, especially when he is being paid an hourly rate of $400/hour.

20.  I do not believe it is an acceptable trade practice for Gary Cohen to take a case on hourly basis, charging $400/hour, and then –in essence—transform this case into a contingent fee case, in which Mr. Cohen would demand a fee based on the percentage of the marital estate awarded to me.  This was not provided for in the fee agreement; this seems a wrongful and deceptive trade practice.  In fact, it allows Mr. Cohen to have the benefit of both the hourly fee and a contingent fee.

21.  With regard to Mr. Cohen's assurances to me that he would not discuss this additional fee until the conclusion of the case, not only did he demand this fee as a

condition to his completing his representation of me, he demanded in the settlement agreement that I wire into his account this bonus of $300,000 prior to my leaving the Chicago mediation hearing.

22. I questioned him about this and pointed out to Mr. Cohen that a judge had not yet approved the settlement agreement. Mr. Cohen replied that it was standard practice to receive this money at the time the settlement agreement was signed and not when approved by a judge.

23. This trade practice in which Gary Cohen demanded that I pay a bonus at the time of signing a settlement agreement stating that this is standard practice –as opposed to the time when it is approved by a judge, seems but another example of Gary Cohen's unfair trade practices.

24. Gary Cohen never stated to me that this issue of his bonus was a matter to be addressed at the mediation hearing in Chicago. I attended this mediation hearing to discuss settlement issues relating to the division of the marital property, not to discuss Gary Cohen receiving a bonus.

25. Yet, much of the discussions once I got to the mediation were centered on Gary Cohen's bonus and most of Gary Cohen's conduct that week involved coercing me into agreeing to pay him a bonus. I believe Gary Cohen's fee agreement and his conduct regarding his fees presented conflict of interest issues adverse to the client.

26. Gary Cohen also represented to me—and put in his fee agreement—that it was his practice to obtain a retainer from which he would draw to pay his hourly billings.

27. He told me the initial retainer was non-refundable.

28. He told me that he would periodically ask me to replenish the initial retainer, but any unused amounts of any retainer I paid after the initial one would be refunded to me at the conclusion of the case.

29. At the conclusion of the case, my bookkeeper pointed out to me that Gary Cohen should be returning $46,000 of unused retainer money.

30. Gary Cohen did not provide me a final billing and accounting of this money.

31. In his deposition, Gary Cohen admitted that this was his trade practice and that he was keeping the unused retainer in the amount of $46,000.

32. It is my understanding that the court has ruled that the issues set out in my complaint fall within the CUPTA exceptions and that my complaint does set forth legitimate and triable issues of violations of fair trade practices, but that there were no affidavits, testimony, or deposition transcripts to support the issues raised in my complaint. I have therefore submitted this affidavit, together with supporting testimony and deposition transcripts, in compliance with the requirement that the court required to be fulfilled to back up the legitimate trade issues raised by my complaint.

33.     I respectfully request that the court rule that the above referred to trade issues are triable issues involving Gary Cohen's trade practices regarding (a) his deceptive fee agreement and billing practices, (b) his refusal to return his client's unused retainers, (c) his demanding "bonuses" based on the size of the marital estate (i.e. as is done in a contingency fee case) in a case that he represented to me he was taking on a $400/hr fee basis, (d) his calling this bonus "tax advice" while at the same time giving me a letter stating that he was not giving me tax advice, his demanding a bonus or additional unearned fees as a condition of his continued representation of his client, and (e) his demanding that such bonus be paid at the time the settlement agreement is signed and before the agreement is even approved by a judge and his demanding a bonus prior to conclusion of the case, as a condition of his settling a case, which presents a conflict of interest, and that these be ruled triable trade issues to be adjudicated by this court.

34.     When I hired Attorney Cohen, I believed and relied upon the fact that he had accepted the <u>duty</u> and <u>obligation</u> to represent me diligently and faithfully and to meet the standard of care and abide by the ethical rules applicable to attorneys representing clients in divorce proceedings.

35.     Beginning on May 24, 2001, Attorney Cohen, due to what I believe was a conflict of interest, that being his desire to charge me additional fees, failed to remain within the scope of the representation as defined by me and abide by my decisions

concerning my divorce, when my decisions were well within the parameters prescribed by law.

36.    In particular, it is my belief, that Attorney Cohen negotiated away my claim to at lease one of our five (5) marital homes in order to secure $300,000 of additional fees.

37.    From on or about May 21, 2001 onward, Attorney Cohen's representation of me was blatantly adverse to my interests, in that it appeared to me that Attorney Cohen's ultimate goal was to coerce an additional $300,000 from me and as part of that coercion to pay an additional $300,000 to my wife's lawyer.  At various times he used threatening language, hung up phones on me and walked away from me all while I was paying him to be my lawyer.

38.    During the mediation in Chicago, Attorney Cohen focused more energy on coercing me into agreements to pay additional fees than securing at least one of my marital homes.

39.    In particular, Attorney Cohen on Wednesday, May 23, 2001 and Thursday, May 24, 2001 and at various other times demanded of me and pressured me to pay to him and to my wife's lawyer $600,000 of additional fees for work never performed.

40..    During this one-week mediation attempt in Chicago, Illinois, in particular on Wednesday, May 23rd and Thursday, May 24th, 2001, Attorney Cohen demanded that I pay him $300,000 in addition to approximately $150,000 of legal fees already paid

by me, or billed by him for his representation in the divorce proceeding upon the actual or implicit threat of withdrawal of his representation unless I agreed.

41. Attorney Cohen clearly implied to me that he would divulge to opposing counsel certain information related to the divorce action in Connecticut which would be detrimental to my best interests, which information was in fact withheld from me until the time of the mediation unless I paid the additional fees.

42. During the Chicago Mediation, Attorney Cohen demanded that I make a $300,000 payment to my wife's counsel.

43. Attorney Cohen told me and also told others including a lawyer in Chicago I consulted for help, that should I not agree to pay the requested fees, he would leave Chicago, and "Shelve" the mediation and any possibility of settlement.

44. Attorney Cohen's demand for $300,000 is a sum far in excess of any fees I agreed to or was obligated to pay by the Retainer Agreement and created a conflict of interest, forcing me to attempt to retain an attorney admitted to practice in the State of Illinois, to represent me in my discussions with Attorney Cohen. I was in the impossible and untenable situation of having to hire an attorney to talk to my attorney for me all the while being pressured to pay sums I did not owe or face imminent disaster.

45. I was so fearful of Attorney Cohen's threats that I would not allow the Attorney I contacted in Chicago to step into the case because when Attorney Cohen

found out that I spoke with another lawyer he became angry and reiterated his implied threat to disclose adverse information to opposing counsel.

46. When the attorney I consulted in Chicago informed Attorney Cohen I did not wish to pay him the demanded $300,000 or pay my wife's attorney $300,000, Attorney Cohen's angry response to Attorney Andrew Eichner, who I hired to talk to Attorney Cohen, was that the $600,000 would then have to go to my wife. That result was clearly contrary to my best interests and was clearly a threat to make me give in and pay him the money he wanted.

47. As a result of the threats and intimidation I was coerced and frightened into paying the $600,000 to Attorney Cohen and to Attorney Grund, my wife's lawyer. It is important to note that I never spoke directly with Attorney Grund about his $300,000. It was Attorney Cohen who made demand for Attorney Grund.

48. Also, when I refused to pay, Attorney Cohen demanded the $300,000. Attorney Cohen failed to follow my instructions and remove provisions from the settlement agreement that discussed the payment of the funds.

49. Attorney Cohen designated the $600,000 as a fee paid for "tax advice", while I was told in a letter dated May 24, 2001 that no such advice was given. In addition, the settlement agreement that I objected to held a provision disclaiming liability relative to "tax advice". Finally, the tax structure of the separation agreement was defective as it actually caused me to incur taxes for distribution to my wife.

50. While Attorney Cohen was coercing me into paying him the $300,000 and to pay Attorney Grund $300,000, Attorney Cohen out of nowhere told me there was a serious jurisdictional defect in my Connecticut case which threatened his ability to obtain a valid property division in Connecticut. He implied he would disclose this fact to my wife's attorney if I did not capitulate and I believed him. I did not hear of this problem until I was in Chicago and it did not come up until I objected to paying him and paying Attorney Grund each $300,000.

51. As result of Attorney Cohen's conduct I have been damaged. In particular, I lost a large portion of my assets including at least one of the family homes, incurred unnecessary attorney fees, was forced into paying large sums of money under threat, coercion, misrepresentation and intimidation and deceitful trade practices and I did not want to pay. I to-date have not been provided with a final accounting of the charges incurred and amounts paid to Attorney Cohen and have been deprived of over $46,000 in retainer funds which represent payment of unearned fees.

52. Attorney Cohen made various statements and representations to me during the course of my divorce which were untrue, and were clearly designed to benefit him and not me including the fact that the Connecticut Divorce action was jurisdictically defective. Attorney Cohen has never told me why that was so. Moreover, Attorney Cohen told me he had a two step process by which the distributions from

Zimmerman Properties, Inc. to my wife would be tax fee. He never told me what that method was.

53. Attorney Cohen's statement that the jurisdictional basis for the Connecticut divorce action was flawed and that he would disclose that fact to opposing counsel was untrue, unsupported and designed to mislead me or threaten me.

54. Attorney Cohen's statement that if another attorney appeared for me he would cause the mediation to fail was designed solely to threaten me.

55. Attorney Cohen's statement in the Separation Agreement he prepared that the $300,000 fee can be treated as "tax advice" and be deductible was untrue. In fact, the Separation Agreement he and Attorney Grund drafted specifically denied that tax advice was being given. Attorney Cohen also sent me or gave me a letter dated May 24, 2001 in which he claimed I received no tax advice. A true and accurate copy of that Separation Agreement is attached hereto as Exhibit B. A true and accurate copy of that letter is attached hereto as Exhibit C.

56. The actions of Attorney Cohen were directed to our business relationship and designed to allow him to collect fees far in excess of the fees I was legally obligated to pay.

57. Attorney Cohen misrepresented to me the status of negotiations with my wife's attorney and concealed from me the fact he was negotiating with my wife's counsel for additional fees to be paid by me to both he and my wife's attorney.

58. Attorney Cohen's actions toward me in connection with the fee arrangement was entirely contrary to his representation in the engagement letter.

59. I reasonably relied upon the statements and representations of Gary Cohen all to my detriment. I relied upon these statements and upon Attorney Cohen to represent my best interests.

60. Most of Attorney Cohen's actions asserted above related solely to the business relationship between us and not his representation of me.

61. I have sustained ascertainable loss of money and property, and it is substantial in nature including $600,000 in payments to Attorney Cohen and Attorney Grund, as fees far in excess of the hourly fees I already paid, $200,000 in taxes, $46,000 in excess retainer funds, attorney fees for my Chicago attorney and legal fees in pursing this action.

62. I believe Attorney Cohen's wrongful acts included established principles and concepts of unfairness. He acted deceptively and unfairly. He charged unreasonable fees and demanded sums upon threats far in excess to which he was entitled. He required me to pay additional fees and would withdraw unless I paid additional fees beyond my obligations.

63. Attorney Cohen's unfair and deceptive acts and practices as alleged herein, directly and proximately caused my injuries and losses.

64. I have spoken to other former clients of Attorney Cohen's and their experiences with him are not unlike mine.

65. The actions I allege in connection with my CUTPA claims relate directly to Attorney Cohen's practices in regard to solicitation of business and billing.

_____
Gary Zimmerman

Subscribed and sworn to before me this \_\_\_\_\_ day of _____ 2004.

_____
Commissioner of the Superior Court/
Notary Public

My Commission Expires:

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, postage prepaid, on this, the ___ day of _____, 2004, to the following counsel of record:

Robert Scott Slifka, Esq.
Katherine C. Callahan, Esq.
Updike, Kelly & Spellacy, P.C.
One State Street, Suite 2400
P.O. Box 231277
Hartford, CT 06123-1277

Christopher P. McClancy, Esq.
1051 Post Road, Suite 3
P.O. Box 1124
Darien, CT 06820-1124

_____
Kenneth A. Votre,