# ORIGINAL TRANSCRIPT
## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| GARY ZIMMERMAN, | CIVIL ACTION NUMBER |
| Plaintiff, | 3:02CV01811(AVC) |
| V. | |
| GARY COHEN, | |
| Defendant. | |

Oral deposition of PROFESSOR GEOFFREY C. HAZARD, JR., taken at the offices of Stradley, Ronon, Stevens & Young, LLP, 2600 One Commerce Square, Philadelphia, Pennsylvania, on Friday, December 19, 2003, commencing at approximately 10:15 a.m., before Pamela Harrison, a Registered Merit Reporter, Certified Realtime Reporter and Notary Public, pursuant to notice.

**James DeCrescenzo Reporting, LLC**
Pennsylvania's Leader in Information and Technology Management
1700 Sansom Street, 5th Floor,
Philadelphia, PA 19103
www.jdreporting.com
215.564.3905 phone
215.751.0581 fax

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1   APPEARANCES:

2   KENNETH A. VOTRE, ESQUIRE
        HURWITZ, COOPER, SILVERMAN &
3       VOTRE, P.C.
        667 State Street
4       New Haven, Connecticut   06511
        203.562.9955
5       Counsel for Plaintiff

6   R. SCOTT SLIFKA, ESQUIRE
        UPDIKE, KELLY & SPELLACY, P.C.
7       One State Street
        P.O. Box 231277
8       Hartford, Connecticut   06123
        860.548.2600
9       Counsel for Defendant

10

11                  EXAMINATION INDEX

12  PROFESSOR GEOFFREY C. HAZARD, JR.

13      BY MR. SLIFKA                         4
        BY MR. VOTRE                         80
14      BY MR. SLIFKA                        85
        BY MR. VOTRE                         92
15

16                    EXHIBIT INDEX

17                                        MARKED

18  Hazard
     A      Letter dated 3/21/03 to          26
19          Professor Geoffrey C.
            Hazard from Kenneth A.
20          Votre

21   B      Letter dated 12/18/03 to         29
            Kenneth A. Votre from
22          Geoffrey C. Hazard, Jr.

23   C      Letter dated 6/22/03 to          30
            Kenneth A. Votre from
24          Geoffrey C. Hazard, Jr.

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor    FAX 215.751.0581
                Philadelphia, PA 19103
                www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

```
         EXHIBIT INDEX (CONTINUED)

   D     Document entitled                              31
         Complaint, In Re:
         Zimmerman vs. Cohen, plus
         document entitled Return
         of Service

   E     Letter dated 8/1/00 to                         54
         Mr. Gary Zimmerman from
         Gary I. Cohen

   F     Letter dated 5/24/01 to                        86
         Mr. Gary Zimmerman from
         Gary I. Cohen
```

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1  (PROFESSOR GEOFFREY C.
2  HAZARD, JR., after having been duly
3  sworn, was examined and testified as
4  follows:)
5  THE COURT REPORTER: Usual
6  stipulations today?
7  MR. VOTRE: I think what we
8  are doing is we are taking them based
9  on the usual Connecticut stipulations
10 which are those that are contained in
11 Connecticut practice.
12 MR. SLIFKA: Agreed.
13 MR. VOTRE: And in terms of
14 Professor Hazard, we, in Connecticut,
15 have a write to read and sign.
16 THE WITNESS: I prefer to
17 read and sign.
18 MR. VOTRE: Yes, we reserve
19 the right to read and sign.
20 EXAMINATION
21 BY MR. SLIFKA:
22 Q. Thanks for coming today,
23 Professor Hazard.
24 A. Sure. Sorry, I appreciate

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905      1700 Sansom Street, 5th Floor      FAX 215.751.0581
Philadelphia, PA 19103
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1  the adjustment of the time.
2      Q.    Not a problem. And I
3  understand you have a doctor's
4  appointment, so we will attempt to do
5  this as expediently as possible.
6      A.    Thank you.
7      Q.    I introduced myself
8  earlier, but I will do it for the
9  record. My name is Scott Slifka. I
10 represent Gary Cohen in the matter of
11 Gary Zimmerman versus Gary Cohen.
12     I understand that you have
13 quite an extensive experience with
14 expert testimony and the like --
15     A.    Yes.
16     Q.    -- so I'm sure you are
17 familiar with the ground rules, but
18 I'll just say that if you need a
19 break at any time, please just let me
20 know.
21     A.    Thank you.
22     Q.    I had asked you pursuant
23 to the re-notice of deposition to
24 essentially bring your file today. I

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905
1700 Sansom Street, 5th Floor
Philadelphia, PA 19103
FAX 215.751.0581
www.JDReporting.com

1  understand that you have done that?
2      A.   Yes, sir.
3      Q.   Is that the materials that
4  are in front of you right now?
5      A.   Yes, sir.
6           MR. SLIFKA: I'm not going
7  to mark the whole thing right now. I
8  don't know that we don't need to do
9  that.
10          MR. VOTRE: Whatever you
11 would like. And if you want, I mean,
12 we can make a copy and provide you
13 with a copy, we can mark it as one
14 exhibit, whatever you want to do, or
15 if you want to mark individual pages.
16          MR. SLIFKA: Well, let's
17 mark it as a --
18          MR. VOTRE: Group.
19          MR. SLIFKA: -- as a group.
20 I'm sorry, we'll mark it as a group
21 and just make a copy of it; but I may
22 pull some things out as we go along.
23          MR. VOTRE: Absolutely.
24 BY MR. SLIFKA:

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905     1700 Sansom Street, 5th Floor     FAX 215.751.0581
                Philadelphia, PA 19103
                www.JDReporting.com

1   Q. Professor Hazard, I was
2   provided the other day with a copy of
3   your CV.
4   A. Yes, sir.
5   Q. And which I also understand
6   is contained within your file. If
7   only I could locate that at the
8   moment.
9   A. It wasn't in my file. It
10  might have been provided to you.
11  Q. Bear with me. Here we go.
12  Professor Hazard, you are
13  obviously a preeminent member of the
14  bar and with a rather extensive
15  resume, so I'm not going to belabor
16  that today but I would just like to
17  ask you a couple of questions. I
18  assume the CV is an updated
19  representation of your professional
20  background?
21  A. Yes. It might be a little
22  dated now, but it's essentially
23  correct.
24  Q. Is it fair to say the only

**James DeCrescenzo Reporting**
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor    FAX 215.751.0581
Philadelphia, PA 19103
www.JDReporting.com

1   change might be maybe in the
2   publications area?
3       A.    Yeah.
4       Q.    Okay. Professor Hazard, do
5   you have any professional experience
6   in the field of matrimonial law?
7       A.    Yes. The ALI did an
8   extensive project on family
9   dissolution which involved questions
10   of the law, spousal support, division
11   of property, custody. It involved a
12   participation of expert lawyers from
13   around the country, all of whom were
14   marital practitioners. I listened to
15   that for about six years. It was
16   quite an excellent education.
17       Q.    By ALI, is that the
18   American Law Institute?
19       A.    Yes, sir.
20       Q.    And when did this project
21   take place?
22       A.    Well, I finally published
23   it I think last year, But it started
24   when I was director. It maybe

**James DeCrescenzo Reporting**
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor
Philadelphia, PA 19103    FAX 215.751.0581
www.JDReporting.com

1  started about 1990, somewhere in
2  there, and went on for about,
3  actively, for about six or seven
4  years.
5      Q.  And what specifically was
6  your role in the project?
7      A.  I was then the director of
8  the ALI. The responsibilities were
9  to attend all the meetings, to review
10 all the drafts, to supervise the
11 performance of the reporters. We had
12 to make a couple of changes in the
13 reporters. So I closely monitored
14 the whole project.
15     Q.  And you stated that in the
16 end this project produced a written
17 report?
18     A.  Yes. It's a volume called
19 Principles of Family Law -- Family
20 Dissolution.
21     Q.  Is it fair to say that's a
22 textbook, or...?
23     A.  No, it's a treatise --
24     Q.  Treatise.

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905   1700 Sansom Street, 5th Floor
Philadelphia, PA 19103   FAX 215.751.0581
www.JDReporting.com

1    A.    -- of ALI-recommended rules
2  governing these aspects of divorce
3  law.
4    Q.    Professor Hazard, in your
5  professional experience, have you had
6  any experience with mediations?
7    A.    Yeah. Some. That is, I've
8  participated in presentations that I
9  knew were going to mediation. For
10 example, writing an opinion
11 concerning the conduct of somebody or
12 other in anticipation, among other
13 things, that it would go to mediation
14 as well as possible trial has
15 happened in a lot of cases.
16   Q.    In your career, I know you
17 are a member of the bars of Oregon
18 and California. Is that correct?
19   A.    I am now a member of
20 California. I was a member in
21 Oregon. I was a member in
22 Connecticut. I am now a member in
23 Pennsylvania.
24   Q.    When did you cease being a

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor
Philadelphia, PA 19103
www.JDReporting.com    FAX 215.751.0581

1  member of the Connecticut bar?
2      A.    About three or four years
3  ago.
4      Q.    What was the reason for
5  that?
6      A.    Just didn't want to
7  continue to have nominal membership
8  and pay dues. I was a member of the
9  bar here in Pennsylvania and that
10 seemed to be sufficient.
11     Q.    Have you ever in your
12 career been in what I'll refer to as
13 private practice?
14     A.    Oh, yes. The first three
15 years after admission to the bar in
16 Oregon and since 1982 I've done
17 consulting work, much of it as an
18 expert but a lot of it as a lawyer.
19 For example, I argued a case in the
20 court of appeals here in Philadelphia
21 on Monday.
22     Q.    In your career, have you
23 ever been engaged in private practice
24 in the state of Connecticut?

**James DeCrescenzo Reporting**
Pennsylvania's Leader in Technology and Information Management
215.564.3905   1700 Sansom Street, 5th Floor, Philadelphia, PA 19103   FAX 215.751.0581
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

```
 1        A.    Yeah; in 1982 to 1994.
 2        Q.    Did you engage in private
 3  practice at any time in Fairfield
 4  County, Connecticut?
 5        A.    No.
 6        Q.    And while you engaged in
 7  private practice in Connecticut from
 8  1982 to '94 -- I believe those were
 9  the dates you gave me?
10        A.    Yes, sir.
11        Q.    -- did you ever practice in
12  the field of matrimonial law?
13        A.    No.  I assisted people that
14  had disputes arising out of lawyer
15  activity in some matrimonial matters,
16  but I didn't involve myself directly
17  in the matrimonial matters.
18        Q.    In what you have referred
19  to as the private practice during
20  your time in Connecticut, did you
21  personally represent clients?
22        A.    Sometimes.
23        Q.    And what types of clients
24  did you represent?
```

```
 1      A.   Mostly clients either
 2 unhappy with lawyers or clients who
 3 were lawyers, giving them advice as
 4 to how to handle situations.
 5      Q.   In your entire career, in
 6 what you constitute your time in
 7 private practice, have you ever
 8 personally handled a divorce matter?
 9      A.   No.
10      Q.   In your career, have you
11 ever drafted a client retainer
12 agreement?
13      A.   Yeah.  Sometimes I have
14 them with my clients.  Usually I ask
15 the client to draft it, but sometimes
16 I've drafted it.
17      Q.   Have you ever drafted a
18 client retainer agreement in
19 connection with your representation
20 of a client as opposed to your, what
21 you have referred to as consulting
22 work?
23      A.   It's the same thing.  I
24 don't personally do litigation.  I've
```

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905      1700 Sansom Street, 5th Floor      FAX 215.751.0581
Philadelphia, PA 19103
www.JDReporting.com

1  done appellate arguments, I've argued
2  cases in trial courts, but as a
3  special counsel assisting somebody
4  who was carrying the primary
5  responsibility, I'm just not set up
6  to handle litigation.  Most of my
7  private work is consultation.
8      Q.    Have you ever drafted a
9  client retainer agreement while you
10 were in private practice in the state
11 of Connecticut?
12     A.    Probably, but I can't
13 remember.
14     Q.    Have you ever drafted a
15 marital settlement agreement?
16     A.    No.
17     Q.    Based on your resume,
18 Professor Hazard, and our discussions
19 this week with Mr. Votre, I
20 understand you've been testifying up
21 in Boston.
22     A.    Yes.
23     Q.    So I guess that gives me
24 the basis to state that you do have

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor    FAX 215.751.0581
Philadelphia, PA 19103
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

```
 1   experience with expert testimony.
 2        A.    Yes.
 3        Q.    Could you just describe for
 4   me generally your experience as an
 5   expert witness?
 6        A.    I've been retained very
 7   often as an expert witness.  Most
 8   all of the cases, I suppose maybe a
 9   thousand cases, most of them, my work
10   has consisted of submitting a report.
11   Then one moves to the next stage
12   which is possible deposition.  I
13   think I've had a deposition taken in
14   something like a hundred and fifty or
15   a hundred and eighty cases, and some
16   of those cases have then gone to
17   trial and in a few cases I testified
18   at trial not preceded by a
19   deposition, and the number of
20   instances of trial testimony I think
21   is about fifty or sixty.
22        Q.    Is it fair to say the most
23   recent of your testimonial experience
24   was up in Boston this week?
```



1      A.      Tuesday, yes.

2      Q.      What type of case was that?

3      A.      I testified on behalf of
4  the Commonwealth of Massachusetts
5  which was resisting an effort by
6  lawyers that had handled tobacco
7  litigation for the Commonwealth.
8  They wanted more money. I said that
9  the money they got was reasonable.

10     Q.      Just so I can understand:
11 You say that the money received by
12 the attorneys, the private attorneys,
13 from the state was reasonable?

14     A.      No. They had a deal, they
15 had a contingent fee agreement with
16 the Commonwealth. They also had a
17 side deal with the tobacco companies
18 whereby the tobacco companies agreed
19 to pay them, the plaintiffs' lawyers,
20 a fee that was supposed to be
21 reasonable. They had an arbitration,
22 they got $775 million in that
23 arbitration. They then wanted to
24 get, nevertheless, another $2 billion

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor
Philadelphia, PA 19103    FAX 215.751.0581
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

```
 1   in fees, 25 percent of 5.8 million --
 2   billion, they wanted that from the
 3   Commonwealth.  And the Commonwealth
 4   resisted on the ground that it would
 5   result in the fee being unreasonable.
 6              So we had some expert
 7   witnesses on their side and some on
 8   the side of the Commonwealth.  And I
 9   gave testimony on behalf of the
10   Commonwealth.
11        Q.     In your more than one
12   thousand instances of being retained
13   as an expert, do you have a general
14   area of expertise in which you have
15   been retained?
16        A.     No.  Most of them one way
17   or another involved conflict of
18   interest but we have questions about
19   reasonableness of fees, illegal
20   conduct, failure to carry through
21   a representation, abandonment of
22   clients, a variety of misbehaviors,
23   either charged by someone where I was
24   speaking for the lawyer or where I
```

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor
Philadelphia, PA 19103    FAX 215.751.0581
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

```
 1   was supporting a charge against a
 2   lawyer.
 3        Q.   When was the most recent
 4   time other than this case you have
 5   testified in a matter involving the
 6   alleged misconduct of a private
 7   attorney?
 8        A.   August.  I was deposed in a
 9   case involving a claimant against a
10   lawyer who provided documentation
11   indeed in a marital situation that
12   resulted in an adverse disposition of
13   property, adverse to one of the
14   spouses, where the lawyer didn't tell
15   the other spouse, although he was
16   representing both of them, what the
17   disposition was.
18        Q.   What was the name of that
19   case, if you remember?
20        A.   Oetting, O-E-T-T-I-N-G,
21   it's a German name, against Lewis,
22   L-E-W-I-S, Rice, R-I-C-E, and
23   Fingersh, F-I-N-G-E-R-S-H.
24        Q.   And in what jurisdiction
```

**JDR**
**James DeCrescenzo Reporting**
Pennsylvania's Leader in Technology and Information Management
215.564.3905   1700 Sansom Street, 5th Floor
Philadelphia, PA 19103   FAX 215.751.0581
www.JDReporting.com

1  was that case?
2       A.   Missouri.
3       Q.   And how many times in your
4  experience as an expert witness have
5  you been retained to offer an opinion
6  in a case involving fees arising from
7  a marital dissolution action?
8       A.   I think this is the first
9  one that involves a combination of
10 the problem of fees and a marital
11 dissolution.  I've had marital
12 dissolution cases and I've had fee
13 cases, but this is the first one
14 where it fits both categories.
15      Q.   Professor Hazard, you are
16 also a full-time professor at the
17 University of Pennsylvania School of
18 Law?
19      A.   I'm now half-time.  I'm in
20 semiretirement.  I'll work full time
21 this fall.  I'll be on leave this
22 spring.
23      Q.   How much time do you
24 presently devote to your work as an

**James DeCrescenzo Reporting**
Pennsylvania's Leader in Technology and Information Management
215.564.3905   1700 Sansom Street, 5th Floor, Philadelphia, PA 19103   FAX 215.751.0581
www.JDReporting.com