DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

```
 1   expert witness?
 2        A.    Well, I spend probably 50
 3   days a year, eight- or ten-hour days,
 4   on my consulting work, and of that I
 5   will say maybe 70 percent is expert
 6   witnesses, 30 percent is giving
 7   advice, and so on.
 8        Q.    How generally do these
 9   matters come to you?
10        A.    Somebody calls me up and
11   says, I want help, and I find out who
12   the players are, check the conflicts.
13   We'll talk about it if it's the kind
14   of thing where I think I can help
15   them.  I have an engagement, ask for
16   documents, study them, give them a
17   preliminary analysis.  I don't
18   advertise.
19        Q.    Of the cases you have been
20   involved in regarding the alleged
21   misconduct of an attorney, how many
22   times -- you can express it in a
23   percentage, if you wish, if you
24   can -- have you been retained on
```

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

```
 1  behalf of the claimant?
 2       A.   I think it's about
 3  somewhere around 50 percent.  Maybe
 4  60 percent in favor of the claimants,
 5  40 percent in favor of lawyers,
 6  something like that.
 7       Q.   So you just termed the 40
 8  percent in favor of the lawyers.  Is
 9  that fair to say that you have
10  offered an opinion which defends the
11  conduct of the attorney in question?
12       A.   Yes.
13       Q.   Have you ever served as an
14  expert in a case where the underlying
15  dispute involved a mediation?
16       A.   I can't remember.  I'm sure
17  there were such cases, but sometimes
18  I didn't know about it.
19       Q.   Have you ever served as an
20  expert witness in a case involving a
21  dispute over a retainer agreement?
22       A.   I can't remember, but it
23  could well be.  Yes, I can remember.
24  I can remember a case where that
```

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

```
 1   was true of both.  It was a case
 2   involving an Alaska enterprise of
 3   some kind and a dispute with a law
 4   firm based in Washington, D.C., and
 5   both the mediation and a fee dispute.
 6        Q.   I don't suppose you
 7   remember the name of the D.C. law
 8   firm?
 9        A.   No.  I could find it.  I
10   could let you know what it is.
11        Q.   Do you know when
12   approximately that case took place?
13        A.   Four or five years ago.
14        Q.   And on whose behalf were
15   you retained?
16        A.   The law firm.
17        Q.   And did you offer an
18   opinion that defended the conduct of
19   the law firm?
20        A.   Yes.
21        Q.   Professor Hazard, how are
22   you being compensated for your time
23   in this matter?
24        A.   Usual basis.  $5,000
```

1  engagement fee plus $500 an hour. I
2  charge more for non-Connecticut
3  cases.
4      Q.    Is there a reason you
5  offered this distinction for
6  Connecticut?
7      A.    It's nostalgia.
8      Q.    Fondness for the state.
9      Is that rate of $500 an
10 hour regardless of the type of
11 participation?
12     A.    Yes. Reading, thinking,
13 talking, giving deposition, trial.
14     Q.    Musing?
15     A.    Yes.
16     Q.    Professor Hazard, I'm sorry
17 to ask you this, but have you ever
18 been the subject of a malpractice
19 action?
20     A.    No.
21     Q.    Have you ever been the
22 subject of a grievance proceeding?
23     A.    No.
24     Q.    Have you ever otherwise

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905   1700 Sansom Street, 5th Floor   FAX 215.751.0581
Philadelphia, PA 19103
www.JDReporting.com

1  been disciplined for your
2  professional conduct?
3      A.   No.
4      Q.   Professor Hazard, what is
5  the nature of your relationship with
6  Attorney Votre?
7      A.   He called me up, he wanted
8  to know whether I could be an expert,
9  told me the name of the parties. I
10 told him my fee. I said send me some
11 documents. He sent me them, I read
12 them, talked to him, then wrote him
13 an opinion.
14     Q.   So this is the first time
15 you have had any contact with him?
16     A.   Yes.
17     Q.   When did Attorney Votre
18 first contact you about this case?
19     A.   I think it was in May of
20 this year, somewhere around there.
21     Q.   Do you have any
22 relationship, professional or
23 otherwise, with Gary Zimmerman?
24     A.   No.

JDR
**James DeCrescenzo Reporting**
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor    FAX 215.751.0581
Philadelphia, PA 19103
www.JDReporting.com

1  Q. Do you have any relationship, professional or otherwise, with Gary Cohen?
4  A. No.
5  Q. Do you have any relationship, professional or otherwise, with Christopher McClancy?
8  A. Never heard of him.
9  Q. Have you ever heard of a gentleman named Andrew Eichner?
11 A. No.
12 Q. What did you do to prepare for the deposition today?
14 A. Well, I had done the work previously that led to the opinion, scheduled it with Mr. Votre. We had the change, which I appreciate. And I talked to him this morning about our meeting at his hotel at eight o'clock.
21 Q. Have you ever met or otherwise spoken with Gary Zimmerman?
23 A. No.
24 Q. Did you review any

**James DeCrescenzo Reporting**
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor
Philadelphia, PA 19103    FAX 215.751.0581
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1  materials in preparation for today
2  that are not reflected in the file
3  which you have handed to me?
4      A.   No.
5      Q.   In forming your opinion in
6  this case, did you conduct any
7  research independent of the materials
8  provided to you by Mr. Votre?
9      A.   No.  I consider myself
10 quite familiar with the relevant
11 rules, so I didn't have to look up
12 anything.
13          (Document marked for
14 identification as Hazard Exhibit A.)
15 BY MR. SLIFKA:
16     Q.   Professor Hazard, I'm
17 handing you what has been marked as
18 Exhibit A.  Do you recognize this
19 document?
20     A.   Yes.  That's an engagement
21 letter with Mr. Votre.  Obviously,
22 the time was earlier than I had
23 remembered, so it must have been he
24 spoke to me probably the early part

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905   1700 Sansom Street, 5th Floor, Philadelphia, PA 19103   FAX 215.751.0581
www.JDReporting.com

1   of March.
2       Q.   And this letter came from
3   your file, correct?
4       A.   Yeah.
5       Q.   In the letter it lists --
6   I'll just read it.
7            "I am enclosing the
8   following:
9            "Zimmerman versus Cohen
10  complaint," that's designated as
11  No. 1.
12           No. 2, "Deposition of Gary
13  Cohen October 14th, 2002, including
14  Plaintiff's Exhibits"; and then
15  beneath that, "a, Letter from
16  Zimmerman; "b, Billing statement
17  dated August 1st, 2000; "c,
18  Memorandum in Opposition to Motion to
19  Dismiss dated November 20, 2000 will
20  be submitted under separate cover;
21  "d, Separation Agreement; and "e,
22  Letter dated May 24, 2001, from Mr.
23  Cohen to Mr. Zimmerman."
24      A.   I assume he sent those.

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor
Philadelphia, PA 19103    FAX 215.751.0581
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

```
 1        Q.    Did you review all of those
 2   documents in forming your opinion in
 3   this matter?
 4        A.    Yes.  Whatever he sent me I
 5   read.
 6        Q.    Did you rely on any
 7   documents outside of that list to
 8   perform your opinion in this matter?
 9        A.    Not unless he's provided me
10   some since, and I don't think he has.
11        Q.    Can I ask you, Professor
12   Hazard, to please just take a quick
13   peak at the file to let me know if
14   there is anything outside of that
15   list that you have relied on in
16   forming your opinion.
17        A.    I don't think so.  Well,
18   the file now has copies of opinions
19   supplied to you or on behalf of Mr.
20   Cohen but they weren't here before.
21   I think they've arrived since.
22        Q.    Did you rely on those
23   opinions in forming your opinion here
24   today?
```

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor    FAX 215.751.0581
Philadelphia, PA 19103
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1   A.   No.  Nor did I rely on the
2   opinion by -- is it Professor
3   Ferrari?  I think I've got her name
4   right.  Who is the tax expert that
5   Mr. Votre engaged.  I read it.  I
6   read the other two opinions.
7   Q.   Are there any documents
8   that you have reviewed in forming
9   your opinion in this matter that are
10  not reflected in the file?
11  A.   No.
12       (Document marked for
13  identification as Hazard Exhibit B.)
14  BY MR. SLIFKA:
15  Q.   Professor Hazard, I'm
16  showing you what has been marked as
17  Exhibit B.  Do you recognize that
18  document?
19  A.   Yes.  This is a printout
20  that I asked my wife to make
21  yesterday, I think, of the original
22  opinion which was in the hard drive
23  of her computer, the original.  So
24  the date is yesterday, but this is

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905   1700 Sansom Street, 5th Floor
Philadelphia, PA 19103   FAX 215.751.0581
www.JDReporting.com

1  simply -- that's the way it
2  automatically dates.  It's the same
3  opinion that I sent to Mr. Votre back
4  last summer, I guess.  I don't have a
5  copy of that.
6       Q.    Not in the file?
7       A.    No.  Just keep it on the
8  computer.
9            MR. SLIFKA:  If we could go
10 off the record for a moment.
11           (Discussion held off the
12 record.)
13           (Document marked for
14 identification as Hazard Exhibit C.)
15 BY MR. SLIFKA:
16      Q.    Professor Hazard, I'm now
17 showing you what has been marked as
18 Exhibit C.  Do you recognize that
19 document?
20      A.    Yes, that's the same
21 opinion but with the date June 22.
22      Q.    As you stated before, other
23 than the date, it is identical to
24 what was marked as Exhibit B?

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

```
 1      A.    Yeah.  Well, we changed our
 2 street address because we moved in
 3 Swarthmore from one place to another
 4 so there's a discrepancy.  The
 5 original was Cedar Lane, which is
 6 where we then lived.  Now it's
 7 Rutgers Avenue.  Otherwise, it's the
 8 same.
 9      Q.    Okay.  So no change in the
10 contents?
11      A.    None.
12            (Document marked for
13 identification as Hazard Exhibit D.)
14 BY MR. SLIFKA:
15      Q.    Professor Hazard, Exhibit
16 C, is that a fair representation of
17 your opinions regarding attorney Gary
18 Cohen's conduct in this matter?
19      A.    That's the opinion that I
20 submitted at that time.  As a result
21 of discussions with Mr. Votre which
22 suggested that there might be
23 additional subject matter, but as of
24 this point that's the content of the
```

**James DeCrescenzo Reporting**
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor
Philadelphia, PA 19103    FAX 215.751.0581
www.JDReporting.com

1   opinion.
2       Q.    Do you intend to revise
3   your opinion after this date?
4       A.    Only if Mr. Votre asks me
5   to address -- I will not change the
6   opinions expressed here.  I may, if
7   he asks me and so on, express an
8   opinion on other aspects of Mr.
9   Cohen's conduct.
10      Q.    Professor Hazard, in the
11  second paragraph, you write:  "In
12  summary," I think there's a typo,
13  but, "in my opinion, Mr. Cohen failed
14  to conform his conduct to recognized
15  professional standards in accepting
16  and keeping an amount as attorneys
17  fees in excess of the amount he had
18  agreed upon with his client, Mr.
19  Zimmerman."
20      A.    Yes.
21      Q.    When you state that Mr.
22  Cohen breached the professional
23  standards in some form, are you
24  stating that he committed negligence

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor
Philadelphia, PA 19103
www.JDReporting.com    FAX 215.751.0581

33

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1   or that he committed a breach of
2   professional ethics?
3       A.   Well, those are both --
4   negligence is a legal concept that
5   the law can impose on or make
6   reference to in deciding whether
7   there ought to be legal liability
8   imposed on Mr. Cohen.  On the matter
9   of professional ethics, the reference
10  is to the recognized rules of
11  professional conduct.  But what I'm
12  saying is that in light of the rules
13  of professional conduct, I think Mr.
14  Cohen violated recognized standards.
15           It's not just an ethics
16  opinion.  It's an opinion about
17  conduct of lawyers according to
18  recognized standards.
19       Q.   Maybe I can ask it in
20  laymen's terms.  Are you stating that
21  in your opinion because Attorney
22  Cohen was unethical he was also
23  negligent?
24       A.   I don't know whether you

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905   1700 Sansom Street, 5th Floor Philadelphia, PA 19103   FAX 215.751.0581
www.JDReporting.com

1  would say he was negligent, you might
2  say he was reckless, but it certainly
3  was injurious to Mr. Zimmerman, in my
4  opinion, and violated the standards
5  governing the relationship with a
6  client concerning fees.
7          To characterize it as
8  negligence is a legal conclusion and
9  I think is beyond the responsibility
10 of an expert.
11         Q.    In general, in your
12 opinion, can an attorney be found
13 negligent without being found to
14 breach professional ethics?
15         A.    Yes, it could be, because
16 the standard of professional ethics
17 concerning care is generally less
18 exacting than is the standard of
19 negligence applied by the law.
20 That's bizarre, but it's correct,
21 that in order to violate the
22 professional standard concerning
23 care, you have to be guilty of almost
24 conscious disregard of exercising

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor
Philadelphia, PA 19103    FAX 215.751.0581
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1  care, whereas, a trier of fact can
2  find that you were careless,
3  negligent, even if you hadn't
4  violated the professional rule.
5      Q.   So conversely, can an
6  attorney be found to have been
7  unethical without being found
8  negligent?
9      A.   Sure.
10     Q.   In the fourth paragraph of
11 exhibit, I guess we are looking at C,
12 you stated that you reviewed various
13 documents in reaching your opinions.
14 Are those the documents that we
15 discussed listed in Exhibit A?
16     A.   Yes.
17     Q.   And you state that the
18 essential facts are not in dispute,
19 correct?
20     A.   Well, maybe Mr. Cohen now
21 disputes them, but --
22     Q.   I'm just asking your
23 opinion today, Professor Hazard.
24     A.   Well, I mean, the fact

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905   1700 Sansom Street, 5th Floor   FAX 215.751.0581
Philadelphia, PA 19103
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1  predicate on which this opinion is
2  recited in the following paragraph,
3  and as I read the documents, the
4  recitals there reflect facts that
5  were not disputed at the time of the
6  documents, at the time the statements
7  made in the documents were made.
8      Q.    I noticed that in the list
9  of documents that you reviewed that
10 the answer to the Complaint in this
11 matter is not listed.
12     A.    That's right.
13     Q.    So you have not reviewed
14 that?
15     A.    That's right.
16     Q.    Would you consider an
17 answer which denies certain factual
18 allegations to state that facts are
19 in dispute?
20     A.    Probably did, but I read
21 Mr. Cohen's deposition, he
22 acknowledged he received the
23 $300,000, he had testified it was
24 insisted upon by the other party, and

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905     1700 Sansom Street, 5th Floor
Philadelphia, PA 19103     FAX 215.751.0581
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1   he acknowledged, at least in the
2   deposition, that it was not agreed to
3   by his client.
4       Q.   Other than the facts that
5   you have listed in your opinion, are
6   there any other facts that you would
7   like to know about the case?
8       A.   Well, I mentioned to you
9   Mr. Votre told me some additional
10  things about it which would be the
11  basis of other opinions.  I would be
12  happy to consider any additional
13  facts you might want me to assume.
14  An expert --
15      Q.   Well, could you tell me the
16  facts that Mr. Votre asked you to
17  consider?
18      A.   Yeah.  Well, one thing was
19  that Mr. Cohen had this fee agreement
20  with what I would call an Evergreen
21  agreement; that is, it involved a
22  deposit of a retainer and then hourly
23  charges against the retainer with a
24  requirement that Mr. Zimmerman from

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905   1700 Sansom Street, 5th Floor
Philadelphia, PA 19103   FAX 215.751.0581
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1   time to time replenish the deposit so
2   it continued to cover the accruing
3   attorneys' fees.
4               I understand that Mr.
5   Cohen, toward the end of the
6   representation, had accrued some
7   substantial sum -- I have forgotten
8   what it was; it was more than
9   $10,000 -- in Evergreen deposits
10  received from Mr. Zimmerman according
11  to requests, and that when they
12  concluded the representation, Mr.
13  Cohen kept that.
14              As described to me, the
15  circumstances indicated that Mr.
16  Cohen was asking for Evergreen
17  replenishments at a rate in excess
18  of what would reasonably cover
19  anticipated further hours and
20  therefore built up a reserve in the
21  Evergreen fund, or retainer fund,
22  which under the contract he could
23  then keep.
24              Well, if you were asking

JDR

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management

215.564.3905          1700 Sansom Street, 5th Floor          fax 215.751.0581
                      Philadelphia, PA 19103
                      www.JDReporting.com