1  laws are very clear that you can't
2  charge contingent fees in divorce
3  settlements. And there's a reason
4  for that. It easily lends itself to
5  exploitation. And when you start
6  talking about there being lots of
7  money, the relevance of that
8  ultimately relates back to the
9  tailoring the fees not to the
10 lawyer's normal hourly rate but
11 tailoring it to the amount of
12 property this particular couple has,
13 and that is what is disapproved in
14 the rule concerning contingent fees
15 in divorce cases.
16         Now, you can have cases
17 where there is lots of money and lots
18 of legal complication on account of
19 that, but I don't see anything in
20 this, nothing I have been told
21 suggests that that was a problem
22 here.
23     Q.   So based on the fact that
24 this case dealt with marital

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

```
 1   dissolution, is it your opinion that
 2   essentially under no circumstances
 3   any lawyer involved in the case could
 4   have accepted the $300,000 payment?
 5         A.   Under these circumstances,
 6   I don't think -- I think it would
 7   have been unreasonable for any lawyer
 8   to take it, and I think it was
 9   unreasonable for the plaintiff's
10   lawyer to take it, but they are not
11   complaining about it on their side.
12         Q.   Is the reason that you are
13   characterizing it as a contingent
14   fee?
15         A.   No, but it -- well, if
16   there had been a wide-open bonus
17   arrangement and it had been agreed
18   to, it would be okay.  There wasn't a
19   wide-open bonus agreement and I don't
20   think it was freely agreed to by
21   Zimmerman.
22         Q.   Could you explain to me
23   what you mean by wide open?
24         A.   That simply says the
```

**James DeCrescenzo Reporting**
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor
Philadelphia, PA 19103    fax 215.751.0581
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

```
 1   parties at the conclusion may review
 2   the circumstances and agree upon a
 3   suitable bonus for the lawyer.  If
 4   such is agreed to, it will be paid.
 5        Q.   So you don't consider this
 6   $300,000 payment to be a contingent
 7   fee, using that term of art?
 8        A.   It is moving in the
 9   direction of a contingent fee; that
10   is, that's the background rule.  I do
11   not say it's a contingent fee.  I say
12   that the reasonableness in divorce
13   litigation has to take account of the
14   fact that there's a kind of fee you
15   can't charge and that's a contingent
16   fee.  You can call it whatever you
17   want, a bonus, a premium.
18        Q.   Well, what do you call it?
19        A.   In this case?
20        Q.   Yes.
21        A.   I call it an exaction, that
22   Mrs. Zimmerman imposed it in the
23   deal.  I've already covered that.
24        Q.   If this were to be
```

**James DeCrescenzo Reporting**
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor    FAX 215.751.0581
Philadelphia, PA 19103
www.JDReporting.com

61

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1  characterized as a contingent fee,
2  and by "this" I mean the $300,000
3  payment, it would be per se
4  unallowable because this involves a
5  marital dissolution case?
6      A.    Exactly.
7      Q.    All right.  Then are you
8  considering it to be a contingent fee
9  that is disallowable in all
10 circumstances?
11     A.    No, I'm just saying it has
12 characteristics like a contingent fee
13 and --
14     Q.    Is it based on a particular
15 percentage?
16     A.    No, it's just based on what
17 Mrs. Zimmerman said.  Well, the way
18 the dynamics seem to work here is
19 that Mrs. Zimmerman's lawyer agreed
20 with her that he would get a premium
21 of 300,000, and then there's a
22 discussion to equalize it with Cohen.
23 I mean, it's a very strange
24 negotiation, but there it is.  And

**James DeCrescenzo Reporting**
Pennsylvania's Leader in Technology and Information Management

215.564.3905      1700 Sansom Street, 5th Floor      FAX 215.751.0581
Philadelphia, PA 19103
www.JDReporting.com

```
 1   Mr. Cohen -- I've already said I
 2   think it was prudent to say let's do
 3   it.  The problem is that Mr. Cohen
 4   should not, in my opinion, keep the
 5   money.
 6        Q.    And had he returned the
 7   money that would have cured any
 8   misconduct in your mind?
 9        A.    Yeah.  I would have said it
10   was not a happy thing to have to do,
11   Mr. Cohen, but in the circumstances,
12   given the strange way this thing
13   evolved, I think it was prudent for
14   you to say let's do it and we'll take
15   care of it by my restoring the money
16   to Zimmerman Properties, because that
17   would be consistent with the
18   agreement with Mrs. Zimmerman, so
19   you are not going to violate the
20   contract, but it would also be
21   consistent with the agreement that he
22   had with Mr. Zimmerman concerning his
23   fees.  So it's a way of behaving
24   ethically and it was open to him to
```

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1   do it.
2       Q.   Are there circumstances
3   under which it would have been
4   acceptable for Mr. Cohen to collect
5   and keep the $300,000 following the
6   signing of the marital dissolution
7   agreement?
8       A.   I think probably so.  If
9   you said that -- this doesn't say
10  that the agreement -- now, you could
11  modify the agreement afterwards
12  and say, by the way, this is a
13  superseding agreement, things have
14  worked out exceptionally well, I, Mr.
15  Zimmerman, think that you are
16  entitled to a bonus, therefore, we
17  supersede the agreement of August 1,
18  2000, and now replace it with a
19  different agreement concerning in
20  which it says you are entitled to a
21  suitable bonus.  As I think about it,
22  you're entitled to a bonus of 300,000
23  because you did so well and I'm glad
24  to pay it for you.  I think that in

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor    fax 215.751.0581
Philadelphia, PA 19103
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1  the circumstances that would be okay.
2     Q.    Could the superseding
3  agreement you reference be contained
4  within another document such as the
5  marital dissolution agreement?
6     A.    Not in these circumstances,
7  because of the problem with Mrs.
8  Zimmerman, but theoretically it
9  could.
10    Q.    Professor Hazard, are you
11 familiar with the concept at all
12 called result-oriented payments?
13    A.    Sure.
14    Q.    What do you understand them
15 to be?
16    A.    Well, basically lawyers
17 charge on an hourly rate or a
18 contingent fee, but sometimes you
19 have situations where a client and
20 lawyer will recognize that the lawyer
21 did something exceptionally well and
22 that the proper basis -- or
23 anticipate that he will do it very
24 well, and that the proper basis of

**James DeCrescenzo Reporting**
Pennsylvania's Leader in Technology and Information Management
215.564.3905   1700 Sansom Street, 5th Floor
Philadelphia, PA 19103   FAX 215.751.0581
www.JDReporting.com

1  fee will be what they call value
2  based. And these days some
3  engagements are taken on that basis.
4  I can recall taking one or two
5  myself. I'll say I'll charge you
6  $25,000 regardless, so then I do the
7  work, whatever work that's required.
8  And that's essentially the same kind
9  of thing you are talking about.
10       Q.    In your opinion, are
11 result-oriented payments different
12 from contingent fees?
13       A.    Yes. I would say we agree
14 that the value of services will be
15 based on the value that you have
16 contributed to the transaction to be
17 determined by mutual agreement at the
18 end of the representation. That's
19 not a contingent fee; that's not an
20 hourly rate; it's essentially a
21 relationship of trust and
22 appreciation.
23       Q.    Are result-oriented
24 payments allowed in marital

JDR

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management

215.564.3905    1700 Sansom Street, 5th Floor    FAX 215.751.0581
                Philadelphia, PA 19103
                www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1  dissolution actions?
2      A.   Yes.
3      Q.   Is there anything in your
4  report, Exhibit C, that discusses the
5  concept of result-oriented payments?
6      A.   No.
7      Q.   Is it, in your opinion,
8  appropriate for an attorney to get a
9  result-oriented payment if the result
10 is achieved and the result is
11 warranted?
12     A.   Sure.
13     Q.   And that, what I just
14 described --
15     A.   Assuming that's what the
16 deal is.  That's not what this
17 agreement provides for.  But I
18 understood your question to be, if it
19 were so agreed would that be proper?
20 Answer:  Yes.
21     Q.   And that's specifically
22 allowed by the ethical canons?
23     A.   It's not inconsistent with
24 them.

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor    FAX 215.751.0581
                Philadelphia, PA 19103
                www.JDReporting.com

1  Q. Professor Hazard, do you
2  have an opinion regarding the
3  evaluation of Mr. Zimmerman's
4  recovery in the marital settlement
5  agreement?
6  A. No, I gather it worked out
7  pretty well.
8  Q. Do you dispute that Mr.
9  Zimmerman wanted property rather than
10 money in this agreement?
11 A. I understood that's what he
12 was interested in.
13 Q. And do you doubt that Mr.
14 Zimmerman received in value
15 approximately $46 million resulting
16 from the settlement?
17 A. I don't know what the
18 number is, but it's something like
19 that.
20 Q. Do you disagree that Mr.
21 Zimmerman received savings of, I'll
22 represent to you approximately $16
23 million by settling through the
24 mediation rather than proceeding to

**James DeCrescenzo Reporting**
Pennsylvania's Leader in Technology and Information Management
215.564.3905   1700 Sansom Street, 5th Floor   Fax 215.751.0581
Philadelphia, PA 19103
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1 verdict in Nevada?
2    A.   It's a guess, because we
3 never know what would have resulted
4 in the trial, but I'll assume that
5 given the risks and so on, that it
6 was a favorable settlement.
7    Q.   I'm not a math major, which
8 is why I ended up going to law
9 school, but I think my math says that
10 $300,000 is approximately 2 percent
11 of 16 million.
12    Would you agree, without
13 having a calculator in front of you?
14    A.   I went to law school also
15 for the same reason. But if this had
16 been based on a prior agreement
17 related to value and it was not so
18 close to being a continent fee to run
19 into that prohibition, the number
20 would not be unreasonable.
21    Q.   Let me get back to that,
22 though. I guess where do you draw
23 the line between the contingent fee
24 and result-oriented payment?

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor Philadelphia, PA 19103    FAX 215.751.0581
www.JDReporting.com

69

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1  A. It's a very distinct
2  conceptual line which in practice
3  is necessarily often fuzzy and is
4  simply a matter of conclusion and
5  characterization.
6  Q. Is a contingent fee
7  generally based on a percentage?
8  A. Yes, a percentage of the
9  benefit received.
10 Q. Is there any evidence that
11 you have reviewed in this case that
12 indicates the $300,000 payment was
13 based on some percentage?
14 A. No.
15 Q. Is there a particular piece
16 of evidence that pushes this
17 agreement closer to a contingent fee
18 agreement in your mind?
19 A. No, no. I wouldn't call it
20 a contingent fee. I'm just saying
21 that one of the problems you have in
22 divorce litigation is that you can't
23 have contingent fees, even though
24 those are very normal and very

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905   1700 Sansom Street, 5th Floor
Philadelphia, PA 19103   FAX 215.751.0581
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1  appropriate in a wide range of
2  circumstances and even though many
3  serious ethics experts, including me,
4  think that that restriction is
5  obsolete and inappropriate.  That
6  said, it's there, and it looms over
7  all domestic relation cases involving
8  lots of money.
9          Q.    Is it your opinion,
10 Professor Hazard, that Mr. Zimmerman
11 was charged $300,000 and didn't know
12 what was going to happen?
13         A.    You mean he didn't know
14 that that's the way it was going to
15 work?
16         Q.    Yes.
17         A.    No, I think he knew that.
18         Q.    I'm going to return to
19 Exhibit C for a second on the second
20 page, Professor.
21         A.    Which is --
22         Q.    That's your opinion.
23         A.    All right.
24         Q.    The last paragraph states

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905          1700 Sansom Street, 5th Floor          FAX 215.751.0581
                      Philadelphia, PA 19103
                      www.JDReporting.com

1  that in the circumstance of this case
2  it might be said that the bonus came
3  from Ms. Zimmerman.
4         Do you have any evidence
5  that exists to say that the bonus
6  came from Mr. Zimmerman?
7      A.   Well, I think that the
8  money actually came from Zimmerman
9  Properties, as I recall it.  That's
10 the way that they set it up.
11     Q.   So you agree that Mr.
12 Zimmerman did not pay this fee
13 himself?
14     A.   I think that it came out
15 of -- my impression is that it came
16 out of Zimmerman Properties, but it
17 was certainly on his account, so to
18 speak, and in pursuance of the fee
19 agreement that he had with Mr. Cohen.
20     Q.   Assuming that's true,
21 Professor Hazard, that the payment
22 to Attorney Cohen, who is Mr.
23 Zimmerman's attorney, comes from a
24 third party.  On what basis does a

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor
Philadelphia, PA 19103    FAX 215.751.0581
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1  third party have to claim recovery
2  for fees paid on its behalf but not
3  paid by itself?
4     A.   The coercion was exercised
5  on a CEO to agree to this agreement
6  whereby money would be paid out of
7  the company to somebody who legally,
8  in my opinion, didn't have any
9  entitlement to it.
10    Q.   But then isn't the proper
11 party to seek recovery the entity
12 that paid the money itself, in this
13 case, the corporation?
14    A.   That might be so.
15    Q.   Professor Hazard, do you
16 have an opinion regarding Mr.
17 Zimmerman's alleged damages in this
18 case?
19    A.   Well, on the case asking
20 for the 300,000, it's an interesting
21 question whether he is entitled to
22 anything besides restitution with the
23 understanding that he is to pay it
24 over to Zimmerman Properties. This,

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor    FAX 215.751.0581
Philadelphia, PA 19103
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1  in my opinion, is a very serious
2  abuse of a client and what the rule
3  of damages are in that kind of
4  situation I don't know.  There are
5  cases that say outrageous treatment
6  of a client is a wrong in itself that
7  can be a basis of mental distress
8  damages and so on.  That's a legal
9  question I haven't examined.
10     Q.    But that would be a tort
11 action?
12     A.    Yes.
13     Q.    But based on the
14 attorney-client relationship, does
15 the client have any, generally
16 speaking, entitlement to sue his
17 attorney for recovery of fees that
18 were paid by a third party?
19     A.    That's a very complicated
20 legal question concerning -- which I
21 don't have a present opinion.  There
22 are circumstances where you can do
23 that.  For example, somebody paid
24 your attorney and you didn't know it.

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905        1700 Sansom Street, 5th Floor        FAX 215.751.0581
                    Philadelphia, PA 19103
                    www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1  Q. Well, we are not stating,
2  though, in this case that Mr.
3  Zimmerman didn't know what was going
4  on.
5  A. Like I said, it's a very
6  complicated question. You've asked
7  it in general terms, and I'm telling
8  you in general terms it can happen,
9  but I haven't analyzed the situation
10 here.
11 Q. Well, for instance, if an
12 attorney is retained on behalf of a
13 child and the child's parents pay the
14 fees, does the child have entitlement
15 to sue the attorney for repayment of
16 the fees?
17 A. In some circumstances, it
18 could. I don't want to get into that
19 very great complex -- suppose you
20 then have a suit in which the nominal
21 claimant is the child by the guardian
22 ad litem. Question: Who is the
23 client? Interesting question. Could
24 the client, namely, the litigant

**James DeCrescenzo Reporting**
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor
Philadelphia, PA 19103    FAX 215.751.0581
www.JDReporting.com

1  child, have a right of action for the
2  fee? I can imagine circumstances
3  where you could.
4           This is a very complicated
5  legal problem concerning which there
6  are not too many decisions and
7  even -- and not very good analysis.
8       Q.   I'll just ask you one more
9  time. Perhaps my using an example
10 involving a child adds another level
11 of complexity that is not necessary.
12 But let's say just any adult over the
13 age of consent retains an attorney
14 but the fees are paid by an adult
15 third party. In that case, does that
16 adult have the right to recover fees
17 paid on its behalf by a third party
18 to that attorney?
19          MR. VOTRE:  I'm going to
20 object as to form, but you can
21 answer.
22          THE WITNESS:  You are
23 asking me a legal question about a
24 real party in interest, standing, and

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor
Philadelphia, PA 19103    FAX 215.751.0581
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1  so on, and I say to you I can imagine
2  cases where the answer to your
3  question would be yes, I can imagine
4  cases where I think the answer would
5  be probably no. I'm not here to be
6  an expert in measure of damages.
7  BY MR. SLIFKA:
8      Q.    Unless Mr. Votre asks you
9  to do so in the future?
10     A.    I can't imagine that would
11 be proper for me. That's what courts
12 are for.
13     Q.    Would it be fair to say
14 that by virtue of your opinion you
15 believe that Mr. Zimmerman was
16 damaged by Mr. Cohen's conduct?
17 Correct?
18     A.    In the layman sense of the
19 word, I think he was certainly
20 damaged. He was subjected to an
21 outrageous situation in which Mr.
22 Cohen had, as I said, an opportunity
23 to handle it professionally, but he
24 didn't. He could have said, look,

**James DeCrescenzo Reporting**
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor
Philadelphia, PA 19103    FAX 215.751.0581
www.JDReporting.com