77

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1  this is a mess, this is the right
2  way, I'll see you back in New Haven,
3  and we'll work out some way of
4  repayment.
5      Why didn't he do that?
6  Because I think he was inattentive to
7  his professional responsibilities to
8  Mr. Zimmerman.
9      Q.  Do you have an opinion as
10 to whether the issue of the $300,000
11 payment affected the overall
12 settlement of the marriage?
13     A.  I think --
14         MR. VOTRE:  Objection to
15 the form.  Go ahead.
16         THE WITNESS:  I think in
17 the circumstances -- I've said this
18 three times -- it was prudent for a
19 lawyer situated as Mr. Cohen to say
20 I think we ought to go through with
21 this deal as it is because for
22 whatever reason this makes Mrs.
23 Zimmerman happy and her being happy
24 means we are going to sign this thing

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor    FAX 215.751.0581
Philadelphia, PA 19103
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1  and get out of here, and that would
2  be, all things considered, to your
3  advantage.  That said, that's not a
4  sufficient basis for Mr. Cohen
5  keeping $300,000.
6  BY MR. SLIFKA:
7       Q.    But in layman's terms other
8  than the $300,000 payment you believe
9  that Mr. Zimmerman got a good deal?
10      A.    Yes.  That is, it was a
11 deal prudent to enter.
12      Q.    Would you turn to Exhibit
13 D, the Complaint, Professor.
14      A.    Yes.
15      Q.    Can you turn to Page 3,
16 please.
17      A.    Yes.
18      Q.    Paragraph 15, subparagraph
19 (a).
20      A.    Mm-hmm.
21           MR. SLIFKA:  Since this has
22 been entered as an exhibit, I'm not
23 going to belabor the point by reading
24 all of these.  I'll just ask

**James DeCrescenzo Reporting**
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor
Philadelphia, PA 19103
www.JDReporting.com    FAX 215.751.0581

1  Professor Hazard to read them.
2             MR. VOTRE:  That's fine.
3  BY MR. SLIFKA:
4       Q.   But in subparagraph (a),
5  Paragraph 15, Professor Hazard, and
6  that's Count 1, do you have an
7  opinion regarding the allegation
8  contained there?
9       A.   No.  I've already given my
10 opinions concerning the professional
11 conduct.
12      Q.   Turning to the next page,
13 that would be Page 4, do you have an
14 opinion regarding the allegation
15 contained in subparagraph (b)?
16      A.   No.  You can run down --
17 I've given you my opinions concerning
18 his conduct.  How that is
19 characterized in the Complaint is a
20 problem of Mr. Votre, not my problem.
21      Q.   So would it be fair to say
22 your testimony is that if any of
23 these allegations are outside of the
24 scope of the opinions you've already

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905   1700 Sansom Street, 5th Floor
Philadelphia, PA 19103   FAX 215.751.0581
www.JDReporting.com

1  provided that you do not have an
2  opinion regarding them?
3      A.   At present, that's correct.
4      Q.   Okay.  Professor Hazard,
5  what work do you plan to do in the
6  future in this matter?
7      A.   Whatever Mr. Votre asks me
8  and what is lawful.
9          MR. SLIFKA:  Thanks for
10 your time.  I don't have any further
11 questions.
12         THE WITNESS:  Thank you.
13         MR. VOTRE:  I do have one
14 question.  Sorry.
15         MR. SLIFKA:  Don't say
16 sorry to me.
17                EXAMINATION
18 BY MR. VOTRE:
19     Q.   Professor Hazard, I just
20 want to make sure that you have
21 expressed your opinion fully.  Can
22 you tell us, based on your experience
23 as both a professor and a lawyer and
24 your expertise in the field of legal

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905   1700 Sansom Street, 5th Floor
Philadelphia, PA 19103   FAX 215.751.0581
www.JDReporting.com

1  ethics, and based on the documents
2  that you reviewed in this case, what
3  your opinion is in this case?
4       A.   I already said it. I think
5  that it was prudent for Cohen to
6  recommend to Zimmerman that they do
7  the deal as was tendered to them, but
8  it was quite inappropriate for Mr.
9  Cohen to think at the time or
10 thereafter that it was right for him
11 to keep the money because that was
12 inconsistent with his fee agreement.
13 How could you do both of those? I've
14 already said how you do it. You say,
15 let's sign this and get out of here,
16 but then say we have to talk about
17 the 300,000, I would be delighted to
18 get a bonus if you really want to pay
19 me that; on the other hand, I think
20 that the way it sets up it's outside
21 the fee agreement. So if you are not
22 so inclined, I'll have to send the
23 money back to you.
24      Q.   And do you have an opinion

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor
Philadelphia, PA 19103    FAX 215.751.0581
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1  concerning Mr. Cohen's conduct at
2  the mediation in relation to the
3  presentation of the concept of the
4  fee to Mr. Zimmerman?
5      A.    Well, it all depends on how
6  you characterize it.  If you
7  characterize it as saying you have
8  got to do this or I'm out of here,
9  which is one interpretation of what
10 was done, I think that's a threat
11 to abandon the client and that's
12 exercising inappropriate coercion
13 against a client.
14           On the other hand, if you
15 say, look, I strongly recommend this,
16 please do this, this is a sensible
17 way to approach it, it's unorthodox,
18 and Zimmerman understands this and
19 understands that Mr. Cohen is
20 agreeing that the subject of the
21 300,000 is something that is still on
22 the agenda, I think that would be
23 okay.
24      Q.    And in terms of the way the

**James DeCrescenzo Reporting**
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor    FAX 215.751.0581
Philadelphia, PA 19103
www.JDReporting.com

1  fee was presented in the settlement
2  agreement signed by Mrs. Zimmerman
3  and Mr. Zimmerman, do you have any
4  opinion as to whether that was
5  appropriate or inappropriate?
6         A.   Well, if the question is
7  that it's ascribed to tax advice?  Is
8  that the question?
9         Q.   That's correct.
10         A.   Well, I think that in the
11 case of Cohen that was utterly an
12 allusion.  He didn't offer any
13 substantial tax advice.  Certainly
14 not $300,000 worth.  And I think in
15 fact the tax -- the handling of this
16 payment through the company and
17 claiming it as a tax deduction by the
18 company is an abuse of the tax law.
19         Q.   And, Professor, does the
20 fact that Zimmerman Properties, Inc.,
21 was not a party to the agreement have
22 any affect on your opinions in this
23 case, the separation agreement?
24         A.   No.  I mean, the 300,000

**James DeCrescenzo Reporting**
Pennsylvania's Leader in Technology and Information Management
215.564.3905   1700 Sansom Street, 5th Floor
Philadelphia, PA 19103   FAX 215.751.0581
www.JDReporting.com

1  going to Mr. Cohen goes to whoever is
2  the payor, and the problem about the
3  proper tax treatment is a problem of
4  Zimmerman Properties, whether Mr.
5  Cohen kept it or not.
6      Q.  And, finally, you were
7  asked questions concerning whether or
8  not the separation agreement could
9  under certain circumstances form the
10 basis of a remodification of the fee
11 agreement.
12          Does the fact that Mr.
13 Cohen was not a party to the
14 separation agreement affect your
15 opinion as to whether or not it forms
16 a modification of the fee agreement?
17     A.  Well, strictly speaking, a
18 fee agreement in Connecticut at this
19 time, as I recall, did not have to
20 be in writing.  That being so, a
21 modification could be made orally,
22 and that being so, it could be made
23 by some extrinsic document.  So that
24 if you work that through, the fact

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor
Philadelphia, PA 19103    FAX 215.751.0581
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1  that it was an extrinsic document,
2  assuming that it met the other
3  requirements of being agreed upon
4  without coercion, and so on, I think
5  that that would be a way in which the
6  original agreement could validly be
7  modified.
8      Q.   And do you have an opinion
9  as to whether or not it was validly
10 modified in this case?
11     A.   Well, that depends on
12 whether you think Mr. Cohen was
13 exercising improper coercive
14 influence, and I think there's
15 testimony from which you would draw
16 that conclusion, and if you did, then
17 it's not a valid modification because
18 modification is a contractual process
19 that requires voluntary consent free
20 of coercion.
21          MR. VOTRE:   I have no
22 further questions.
23                EXAMINATION
24 BY MR. SLIFKA:

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905   1700 Sansom Street, 5th Floor, Philadelphia, PA 19103   FAX 215.751.0581
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1  Q. I'm sorry, Professor, I
2  have to ask just a couple of
3  followups based on that.
4  A. Fine.
5  (Document marked for
6  identification as Hazard Exhibit F.)
7  MR. VOTRE: What are we
8  marking F?
9  MR. SLIFKA: This is the
10 May 24th, 2001, letter.
11 MR. VOTRE: Oh, okay.
12 BY MR. SLIFKA:
13 Q. Professor Hazard, I'm
14 showing you what has been marked as
15 Exhibit F. Do you recognize that
16 document?
17 A. I can't recall I've ever
18 seen this before. Let me read it.
19 (Witness reading.)
20 Q. If it's any assistance to
21 you, it is listed in your --
22 A. Yes. Okay.
23 Q. -- in your letter, your
24 Exhibit A.

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905   1700 Sansom Street, 5th Floor, Philadelphia, PA 19103   FAX 215.751.0581
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

```
 1      A.    Quote, "I'm not providing
 2  tax advice."  Oh, yeah.
 3            MR. VOTRE:  It was supposed
 4  to be in here.  If it wasn't, it's
 5  probably my fault.
 6            MR. SLIFKA:  I took it from
 7  the packet, so I'm sure it was.
 8            THE WITNESS:  Yeah, I've
 9  seen it.  Okay.
10  BY MR. SLIFKA:
11      Q.    Do you have any dispute as
12  to whether or not Mr. Zimmerman
13  received that letter prior to
14  executing the marital settlement
15  agreement?
16      A.    I don't have any
17  information one way or the other.  If
18  you want me to assume that he did,
19  that's fine.
20      Q.    Well, I'm not asking you to
21  assume anything.  I want to know your
22  opinion as to whether or not...
23            What is your understanding
24  of Mr. Zimmerman's receipt of that
```

**James DeCrescenzo Reporting**
Pennsylvania's Leader in Technology and Information Management
215.564.3905   1700 Sansom Street, 5th Floor
Philadelphia, PA 19103   FAX 215.751.0581
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1  letter in forming your opinion?
2     A.   I don't recall that it
3  played any part in the opinion that I
4  offered.  Now, if you go on to the
5  question of whether the 300,000
6  represented tax advice, I think it's
7  clear to me that it didn't regardless
8  of what Mr. Cohen might say.  If he
9  says it wasn't tax advice, that's
10 fine, too.
11    Q.   Well, notwithstanding that
12 opinion, if you assumed that Mr.
13 Zimmerman did receive it, receive the
14 exhibit prior to executing the
15 marital settlement agreement, would
16 that at all affect the opinions that
17 you have provided today?
18    A.   No.  I don't think this --
19 this is an attempt to characterize
20 Cohen's assistance, not the price to
21 be paid for it.
22    Q.   In response to some of the
23 questions that Mr. Votre was asking
24 you -- you can put that aside.

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor    FAX 215.751.0581
Philadelphia, PA 19103
www.JDReporting.com

1  Thanks.
2      A.    Okay.
3      Q.    -- you seem to indicate
4  there was testimony that Mr. Cohen
5  said he would walk away from the
6  mediation if he did not receive a
7  $300,000 payment.  Do you recall
8  saying that?
9      A.    Something like that, yes.
10     Q.    Now, the only testimony
11 that you have reviewed in this case
12 is Mr. Cohen's deposition, correct?
13     A.    I think that's right.
14     Q.    So then that evidence would
15 have to come from Mr. Cohen himself,
16 at least so far as what you have
17 reviewed to this point?
18     A.    Yeah, or maybe I picked
19 that up from the Complaint.
20     Q.    Do you believe that the
21 Complaint constitutes evidence?
22     A.    No, but it's a forecast of
23 what evidence might be.
24     Q.    Understood.  But at this

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor
Philadelphia, PA 19103    FAX 215.751.0581
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1   point, do you have any evidence that
2   Mr. Cohen actually said that he would
3   walk away from the mediation other
4   than intimations from the Complaint?
5       A.   No.
6       Q.   I would like you to assume
7   that evidence regarding that is
8   either in dispute or does not come
9   into evidence. Would that at all
10  affect your opinion?
11      A.   If it's in dispute, it's
12  because Zimmerman says that's what
13  Cohen said. If that's so, I can
14  assume that to be true. On the other
15  hand, if there's no evidence on it,
16  then that is not a proper fact
17  predicate for an expert opinion.
18      Q.   And you stated also a
19  moment ago that at the time this
20  marital settlement agreement, the
21  circumstances of this case, that you
22  thought a fee agreement could be
23  modified orally?
24      A.   Yes.

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905        1700 Sansom Street, 5th Floor        FAX 215.751.0581
                    Philadelphia, PA 19103
                    www.JDReporting.com

1  Q. Then if the fee agreement is modified orally and is not subsequently memorialized in writing, would not then the contents of that modification come down to essentially a he said/she said situation?

7  A. Sure.

8  Q. So, in other words, the attorney could have one version of those events and the client could have another?

12  A. That often happens.

(Discussion held off the record.)

BY MR. SLIFKA:

16  Q. Mr. Votre asked you a question about whether this arrangement was improper because Mr. Cohen was not a party to the marital settlement agreement. Is it normal for an attorney in a divorce action for him or herself be a party to the document dissolving the divorce?

24  A. No.

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor
Philadelphia, PA 19103    FAX 215.751.0581
www.JDReporting.com

1  MR. VOTRE: I was going to
2  object to the form. It wasn't the
3  question I asked, but...
4  THE WITNESS: The question
5  he asked, the answer is no.
6  MR. SLIFKA: I apologize
7  for an accidental mischaracterization
8  of testimony, if that's what I did.
9  MR. VOTRE: That wasn't the
10 question.
11 MR. SLIFKA: That's all I
12 have. Thank you, Professor Hazard.
13 THE WITNESS: Thank you.
14 MR. VOTRE: I'm sorry, but
15 I have one more question on your
16 questions. I apologize.
17                    EXAMINATION
18 BY MR. VOTRE:
19    Q.    You have been shown an
20 exhibit marked as Exhibit F which is
21 a letter of May 24th, 2001, correct?
22    A.    Yes.
23    Q.    Does that letter affect
24 your opinion if in fact the letter

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905   1700 Sansom Street, 5th Floor
Philadelphia, PA 19103   FAX 215.751.0581
www.JDReporting.com

93

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1   dated May 24th, 2001, to Mr.
2   Zimmerman indicates that there are no
3   representations or opinions being
4   rendered as to the tax effects to
5   Zimmerman Properties, Inc., yet the
6   separation agreement refers to the
7   $300,000 fee being related to tax
8   advice?  Does that affect, those two
9   facts, your opinion at all?
10        A.   Not really.  I mean, you've
11  got an argument about whether this is
12  a reasonable characterization of it
13  having to do with tax advice.  I
14  think it doesn't, but assuming it
15  did, I still think the circumstances
16  of the $300,000 were as I have
17  testified.
18        MR. VOTRE:  Nothing
19  further.
20        MR. SLIFKA:  I just ask
21  that you keep the file intact.  We'll
22  let you keep the exhibits and all.
23        MR. VOTRE:  And if you want
24  a complete copy, I mean, of even of

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor    FAX 215.751.0581
Philadelphia, PA 19103
www.JDReporting.com

DEPOSITION OF PROF. GEOFFREY HAZARD, JR., 12/19/03

1  things that weren't marked.
2         MR. SLIFKA: Yes, if we
3  could get a copy. For the record,
4  I'm going to leave the original
5  exhibits with Professor Hazard
6  because I trust him.
7         (Deposition concluded at
8  11:49 a.m.)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**James DeCrescenzo Reporting**
Pennsylvania's Leader in Technology and Information Management
215.564.3905   1700 Sansom Street, 5th Floor
Philadelphia, PA 19103   FAX 215.751.0581
www.JDReporting.com

WITNESS CERTIFICATION

I hereby certify that I have read the foregoing transcript of my deposition testimony, and that my answers to the questions propounded, with the attached corrections or changes, if any, are true and correct.

_____
DATE

_____
PROFESSOR GEOFFREY C. HAZARD, JR.

_____
PRINTED NAME

James DeCrescenzo Reporting
Pennsylvania's Leader in Technology and Information Management
215.564.3905    1700 Sansom Street, 5th Floor    FAX 215.751.0581
Philadelphia, PA 19103
www.JDReporting.com

```
 1                    CERTIFICATION
 2
 3                    I, PAMELA HARRISON, a
 4   Registered Merit Reporter, Certified Realtime
 5   Reporter and Notary Public in and for the
 6   Commonwealth of Pennsylvania, hereby certify
 7   that the foregoing is a true and accurate
 8   transcript of the deposition of said witness
 9   who was first duly sworn by me on the date
10   and place herein before set forth.
11                    I FURTHER CERTIFY that I am
12   neither attorney nor counsel for, not related
13   to nor employed by any of the parties to
14   the action in which this deposition was
15   taken; and further that I am not a relative
16   or employee of any attorney or counsel
17   employed in this action, nor am I
18   financially interested in this case.
19
20   _____/s/ Pamela Harrison_____
21   PAMELA HARRISON
22   Registered Merit Reporter, Certified Realtime
23   Reporter and Notary Public
```

**JDR**

**James DeCrescenzo Reporting**
Pennsylvania's Leader in Technology and Information Management

215.564.3905   1700 Sansom Street, 5th Floor
Philadelphia, PA 19103
www.JDReporting.com   FAX 215.751.0581