LEXSEE 2002 US DIST LEXIS 27412

MARY ALICE COOKE, ALEX COOKE, RICHARD COOKE, JR., Plaintiffs, v.
WILLIAMS & PATTIS, JOHN R. WILLIAMS, and NORMAN A. PATTIS,
Defendants.

3:99cv2223 (WWE)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2002 U.S. Dist. LEXIS 27412

August 27, 2002, Decided

**SUBSEQUENT HISTORY:** Affirmed by *Cooke v. Williams & Pattis, 97 Fed. Appx. 362, 2004 U.S. App. LEXIS 10087 (2d Cir. Conn., May 21, 2004)*

**PRIOR HISTORY:** *Cooke v. Cooke, 37 Conn. App. 928, 657 A.2d 725, 1995 Conn. App. LEXIS 240 (1995)*

**DISPOSITION:** Defendants' motion for summary judgment granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For Maryalice Cooke, on behalf of Richard Cooke, Jr., Alex Cooke, Plaintiffs: Robert E. Arnold, III, Law Offices of Robert E. Arnold LLC, New Haven, CT.

For Williams & Pattis, LLC, suc Law Offices of John R. Williams, suc Williams, Polan & Pattis, LLC, Williams, Polan & Pattis, LLC, John R. Williams, Norman A. Pattis, Defendants: Thomas E. Katon, Susman, Duffy & Segaloff, New Haven, CT.

**JUDGES:** WARREN W. EGINTON, SENIOR UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** WARREN W. EGINTON

**OPINION:**

RULING ON MOTION FOR SUMMARY JUDGMENT

This action concerns alleged legal malpractice committed by defendants Williams & Pattis, Attorney John Williams, and Attorney Norman Pattis in filing a legal malpractice action on behalf of plaintiffs, Mary Alice Cooke, Alex Cooke, and Richard Cooke, Jr. Plaintiffs' multi-count complaint alleges claims of legal malpractice (count one), negligent misrepresentation (count two), breach of covenant of good faith and fair dealing (count three), breach of contract (count four), violation of the Connecticut Unfair Trade Practices Act ("CUTPA")(count five), statutory theft in violation of *Connecticut General Statutes Section 52-564* (count six), [*2] breach of public policy and common law (count seven), and breach of contract (count eight).

Defendants have moved for summary judgment on the complaint in its entirety. For the following reason, the motion for summary judgment will be granted.

Background

The parties have submitted briefs, statements of facts, and supporting exhibits. These materials reveal the following relevant undisputed facts.

Plaintiff Mary Alice Cooke, who was formerly married to Richard Cooke, retained Attorney Herman Tarnow to represent her and the interests of her children, Alex Cooke and Richard Cooke, Jr., in an action for dissolution of marriage pending in the Connecticut Superior Court for the Judicial District of Fairfield at Bridgeport. That action was entitled Cooke v. Cooke.

On February 1, 1991, Mary Alice Cooke executed an affidavit in the presence of a notary, acknowledging that Mr. Tarnow was not admitted to practice law in Connecticut, and was applying for admission pro hac vice. On October 3, 1991, the Superior Court granted Mr. Tarnow permission to appear pro hac vice.

Case 3:02-cv-00181-AVC    Document 66-3    Filed 02/10/2005    Page 2 of 7

Page 2
2002 U.S. Dist. LEXIS 27412, *

In a letter dated February 19, 1991, Mary Alice Cooke wrote to an acquaintance that she had met "a truly [*3] wonderful-Harvard man who is a native of Tacoma Washington," and that she hoped to be divorced by June, and thereafter marry this individual, which would mean that she would have to move to Washington.

In September, 1991, Mechanics Savings Bank brought a foreclosure action against Richard and Mary Alice Cooke regarding the property in which they lived at Sasco Hill Road in Westport, Connecticut. The complaint in that action stated that Richard and Mary Alice Cooke were in default of a mortgage owing to GMAC Mortgage Corporation with an unpaid principal balance of $ 485,384.69, plus interest from December 1, 1990, and late charges. The complaint alleged that Atlantic Financial Federal, Union Trust Company, The Chase Manhattan Bank, and Dominick F. Burke also claimed interests in the property, which were prior in right to the interest of Mechanics Savings Bank. The complaint also stated that Mary Alice Cooke claimed an interest in the premises "by virtue of a lis pendens giving notice of an action for dissolution of marriage and other relief brought against Richard T. Cooke...."

From September, 1991, to October, 1992, Richard Cooke was unemployed.

On January 28, 1992, Mary Alice Cooke [*4] received an estimate and signed an "Order of Service" from North American Van Lines concerning a move from Sasco Hill Road, Westport, Connecticut, to Tacoma, Washington.

On February 17, 1992, Mary Alice Cooke signed an agreement settling the divorce action. The agreement was subsequently approved and made a judgment by the court. In that agreement, Richard Cooke agreed, inter alia, (1) to provide alimony of $ 1 per year, which condition Mary Alice Cooke could seek to modify if an application was made within one year of the agreement's execution; (2) to provide child support of $ 150 per week per child, which support was to continue until each child attained the age of 18 years; (3) to maintain the existing life insurance policy, in which Mary Alice Cooke was irrevocably designated beneficiary and trustee for the benefit of the children until the children became emancipated; (4) to pay joint debts of the parties from the proceeds of the sale of the marital residence; and (5) to pay Mary Alice Cooke $ 10,000, within one week of her vacating the marital premises. Additionally, the agreement provided that, if Richard Cooke had the financial ability, he was to pay for tuition and other [*5] expenses of his children's summer camp, tutoring, private school, and college.

The agreement provided that Mary Alice Cooke was to have exclusive use of the marital premises for two weeks after signing the agreement, and that she was to transfer to Richard Cooke title to the premises by quitclaim; upon the sale of the premises, Mary Alice Cooke was to receive $ 72,500.

In a Superior Court notice dated October 19, 1992, judgment of strict foreclosure was entered. In that notice, the fair market value of the marital home was stated to be $ 862,000.

On December 15, 1992, Richard Cooke filed for Chapter 11 bankruptcy protection for the period beginning December 1, 1992 through December 31, 1992. Mary Alice Cooke appeared in that bankruptcy action, In re Richard Thomas Cooke. In this action, the value of the marital home was litigated and, by order dated September 24, 1993, Judge Shiff found the value of the home to be $ 1,020,000 as of September 24, 1993. That order stated that eleven liens against the house were voided for lack of equity.

In a letter dated May 28, 1993, Mary Alice Cooke wrote to Richard Cooke that she had received $ 10,000 from him.

On November 8, 1993, Mary [*6] Alice Cooke signed a retainer agreement with defendants for Cooke v. Ward, a civil rights action asserted by Mary Alice Cooke against Fairfield police officers. The retainer agreement did not provide for any retainer fee. On that same day, Mary Alice Cooke also retained defendants to represent her in a criminal defense matter related to an arrest. That retainer agreement required her to pay a $ 2,000 flat fee for the representation. Subsequently, Mary Alice Cooke also retained the defendants to represent her in an action for legal malpractice against Herman Tarnow relative to his representation of her for the dissolution of marriage.

On January 12, 1994, defendant John Williams filed a complaint on behalf of the plaintiff against Attorney Tarnow in the United States District Court, District of Connecticut, Cooke v. Tarnow.

On August 29, 1994, Williams filed a complaint in the United States District Court, District of Connecticut, on behalf of Mary Alice Cooke in Cooke v. Ward.

On June 13, 1994, the Superior Court of Connecticut entered an order of strict foreclosure in Everett C. Reed v. Richard Thomas Cooke, setting the fair market value of the property at $ 910,000 [*7] as of that date. On September 13, 1994, the Superior Court entered a stipulated motion for deficiency judgment. As that stipulation indicated, title to the marital property was transferred to Everett C. Reed, subject to the Mechanics Savings Bank's mortgage, as discharge of Cooke's debt. Given the valuation of the property at $ 910,000, the mortgage on the property of $ 640,350.95, and Cooke's

Case 3:02-cv-00181-AVC   Document 66-3   Filed 02/10/2005   Page 3 of 7

Page 3
2002 U.S. Dist. LEXIS 27412, *

debt of $ 490,500.11, the Superior Court entered a deficiency judgment of $ 310,017.91.

In July, 1995, Richard Cooke was convicted for forgery and was "statutorily disqualified" from securities trading, his former profession.

In a motion to the Connecticut Superior Court dated November 15, 1995, Mary Alice Cooke filed a motion to compel Richard Cooke to pay her $ 72,500 in connection with the transfer of the marital home in the Reed foreclosure action. That motion was denied by the Superior Court, which held that "the plaintiff has failed to establish that the transfer of the property to Everett Reed in bankruptcy was not a bona fide involuntary transfer of title...."

On March 12, 1996, a judgment in the amount of $ 100,000 entered in favor of Mary Alice Cooke in Cooke v. Ward based [*8] on a jury verdict rendered on March 11, 1996. On June 6, 1996, a Satisfaction of Judgment was filed in Cooke v. Ward.

In Cooke v. Tarnow, however, the defendants failed to file any opposition papers to Tarnow's motion to dismiss, or in the alternative, for summary judgment. On January 9, 1997, the district court granted the motion to dismiss upon review and absent objection. Judgment entered in favor of Tarnow on January 14, 1997. Defendants then filed an appeal to the Second Circuit. However, defendants also failed to observe the Second Circuit's deadlines. In his letter to Mary Alice Cooke dated December 29, 1997, Norman Pattis wrote:

> As of this moment, the case is still alive, but only barely so. I missed the deadline on filing this brief, and have asked the Court for permission to file out of time. The Court denied my first request to do so.
>
> In the event that the Court refuses to accept the brief, your only remedy will be against me.

In January, 1998, the Second Circuit denied the defendants' motion for reconsideration of the clerk's order denying permission to file out of time. As Mr. Pattis observed in his letter to Mary Alice Cooke dated January 19, 1998, this [*9] action effectively ended the lawsuit against Herman Tarnow.

Plaintiffs took action against defendants by filing this lawsuit on November 11, 1999.

DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.)*, cert. denied, *502 U.S. 849, 116 L. Ed. 2d 117, 112 S. Ct. 152 (1991)*.

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American International Group, Inc. v. London American International Corp., 664 F.2d 348, 351 (2d Cir. 1981)*. In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. If a nonmoving party has failed [*10] to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof, then summary judgment is appropriate. *Celotex Corp., 477 U.S. at 323*. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. *Anderson, 477 U.S. at 249*.

Counts One, Two, Three, and Four: Legal Malpractice, Negligent Misrepresentation, Breach of the Covenant of Good Faith and Fair Dealing, and Breach of Contract

Plaintiffs' claims of legal malpractice, negligent misrepresentation, breach of the covenant of good faith and fair dealing, and breach of contract are predicated on the allegation that defendants failed to provide competent legal representation, and failed to meet the standard of care. Defendants assert that plaintiffs cannot establish the requisite elements of legal malpractice to support these claims.

The four essential elements to a legal malpractice action are: (1) the defendant must have a duty to conform to a particular standard of conduct for the plaintiff's protection; (2) the defendant must have failed to measure [*11] up to that standard; (3) the plaintiff must suffer actual injury; and (4) the defendant's conduct must be a proximate cause of the plaintiff's injury. See *LaBieniec v. Baker, 11 Conn.App. 199, 202-03, 526 A.2d 1341 (1987)*. The test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries. *Grayson v. Wofsey, Rosen, Kweskin, and Kuriansky, 231 Conn. 168, 182, 646 A.2d 195 (1994)*.

In a legal malpractice action, the plaintiff must produce expert testimony that a breach of the professional standard of care has occurred, and that the

Case 3:02-cv-00181-AVC   Document 66-3   Filed 02/10/2005   Page 4 of 7

Page 4
2002 U.S. Dist. LEXIS 27412, *

breach was a proximate cause of the injuries suffered by the plaintiff. *Solomon v. Levett, 30 Conn.App. 125, 128, 618 A.2d 1389 (1992)*. An exception to the rule requiring expert testimony exists where there is "such an obvious and gross want of care or skill that the neglect is clear even to a layperson." *Davis v. Margolis, 215 Conn. 408, 416 n. 6, 576 A.2d 489 (1990)*.

In this instance, the Court finds that defendants' failure to timely respond to the motion to dismiss or for summary judgment, which failure resulted in dismissal [*12] of the case, constitutes an obvious and gross breach of the professional standard of care that is clear even to a layperson. However, since this case represents a claim of malpractice upon malpractice, plaintiffs must prove that but for defendants' failure to timely respond to Attorney Tarnow's motion to dismiss or for summary judgment, plaintiffs would have prevailed upon their claims against Tarnow. Plaintiffs' brief fails to address this issue.

However, plaintiffs rely upon the expert report of Donald Cantor, a family law attorney, who has identified certain conduct by Tarnow that constitutes a breach of the standard of care. Mr. Cantor's expert opinion as to the breach of the standard of care does not address whether Tarnow breached the standard of care as to the following conduct alleged by the plaintiffs: (1) failure to oblige the Mr. Cooke to pay for his children's college education unless he "is financially able to do so..."; (2) insertion into the agreement of a provision that Tarnow had provided Mary Alice Cooke with "competent legal representation"; (3) negotiation of "a settlement agreement with the husband/father by the terms of which fraudulent concealment by the husband [*13] of his assets would, if discovered, have no consequence other than that husband/father would there upon only divide such assets equally between himself and the Plaintiff/Mother, and suffer no costs of legal counsel or contempt of court..."; (4) negotiation of a settlement agreement with Mr. Cooke which favored him economically; and (5) failure to protect the interests of the two minor children, Alexander and Richard Cooke, Jr., failure to request or make a motion for appointment of a guardian ad litem or counsel for the minor children at the time of the divorce, and failure to provide adequately for the care, health or maintenance of the two children. Plaintiffs' brief offers no further support relevant to these allegations, and therefore such allegations cannot survive summary judgment.

Similarly, plaintiffs adduce no evidence in support of the allegation that Mr. Tarnow defrauded the plaintiff Mary Alice Cooke of large sums of money and caused her to be indebted to third parties.

Attorney Cantor does identify a breach of the standard of care as to Mr. Tarnow's negotiation and drafting of the agreement relevant to the following: (1) a one dollar per year alimony, (2) Mary Alice [*14] Cooke's obligation to vacate the marital home after two weeks and execute a quit claim deed to Mr. Cooke, (3) payment to Mary Alice Cooke of $ 72,500, without security for the amount; (4) no requirement that the marital home be sold; (5) no payment to Mary Alice Cooke for the sale of the marital home except to the extent that the property could be sold for a price greater than the encumbrances on it; (6) no list of life insurance policies that Mr. Cooke was required to keep in effect; (7) the provision that "all of their property has been divided between them pursuant to the terms of the agreement"; (8) the provision that Mary Alice Cooke was satisfied that she knew the nature, extent and value of Mr. Cooke's property and business interests; and (9) the provision that plaintiff entered into the agreement freely and without fraud, duress or undue influence.

Cantor observed that Tarnow had (1) failed to anticipate Mr. Cooke's bankruptcy and took no steps to protect the plaintiff against it; (2) forced his client into accepting potential responsibility for debts that were not properly hers; (3) failed to make an adequate effort to discover Mr. Cooke's assets, and failed to appraise the [*15] residence; (4) was not admitted to practice in Connecticut at the time he accepted a $ 10,000 retainer from Mary Alice Cooke; (5) failed to advise the plaintiff as to the amount of the money in the Maine property escrow account and never obtained such sums for her, which were to be paid after vacating the marital home; and (6) intimidated Mary Alice Cooke into signing the agreement without reading it. Although Mr. Cantor's report identifies a breach of the standard of care, it does not identify any specific injury or damages to the plaintiffs.

In his deposition, Mr. Cantor averred that he could not say whether, had Tarnow drafted an appropriate alimony provision, plaintiff would have received more money than she had received to date, that he had no knowledge of plaintiff incurring damages resulting from the agreement provision that proceeds from the sale of the marital home could be used to pay joint debts, that plaintiff had not been deprived of any life insurance benefit owing to her, and that there was no life insurance in effect naming her as a beneficiary at the time of the dissolution agreement.

He stated further that he did not know whether plaintiff was damaged at all by [*16] the fact that Tarnow was not admitted in Connecticut at the time he was retained. He posited that perhaps plaintiff would not have paid the $ 10,000 retainer fee if she had known that Tarnow was not admitted in Connecticut. However, such

Case 3:02-cv-00181-AVC    Document 66-3    Filed 02/10/2005    Page 5 of 7

Page 5
2002 U.S. Dist. LEXIS 27412, *

speculation does not constitute proof of injury or damages. Since plaintiffs have not provided any evidence of injury or damage to support these claims, and since plaintiff's expert attested to his lack of knowledge of any damages, the Court will grant summary judgment on these claims of malpractice.

Mr. Cantor also observed that, if no equity existed in the home, plaintiff could not claim any damages concerning Mr. Tarnow's breach of the standard of care related to her receipt of proceeds from the marital home. It is undisputed that a judgment of foreclosure in favor of Mechanics Savings Bank entered on the marital home on October 19, 1992. A subsequent order of strict foreclosure was entered on June 13, 1994, resulting in the transfer of title from Richard Cooke to Everett Reed and a deficiency judgment.

Plaintiffs challenge the assertion that no equity existed in the house and submits an appraisal that values the property at $ 2.15 million. However, [*17] the value of the property was litigated and adjudicated in the Mechanics Savings Bank foreclosure, Richard Cooke's bankruptcy, and the Reed foreclosure. Plaintiff was a party in both the Mechanics Savings Bank foreclosure and the bankruptcy proceeding. Plaintiff is barred from litigating the valuation of the property by the doctrine of collateral estoppel. *Aetna Cas. & Sur. Co. v. Jones, 220 Conn. 285, 292-299, 596 A.2d 414 (1991)*(collateral estoppel prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action).

Plaintiffs have provided no persuasive argument or evidence that equity in the house existed or that the valuation of the property was not litigated in these previous actions. Summary judgment will enter on the allegations concerning nonreceipt of proceeds from the marital home.

Plaintiffs' claims related to Mr. Tarnow's failure to ensure that Mary Alice Cooke received $ 10,000 fails, since the evidence indicates that Mary Alice Cooke was paid this money. A bank check drawn on the account of Richard Cooke was made out to Mary Alice Cooke on February 25, 1992, one week after the divorce decree was [*18] signed. Further, in her 1993 letter to Mr. Cooke concerning amounts received from him relative to the divorce, Mary Alice Cooke states that she had received $ 10,000.

Mr. Cantor also stated that Tarnow's provision requiring the plaintiffs to vacate the family home two weeks after execution of the dissolution agreement would not constitute legal malpractice, if plaintiffs had agreed to such provision and had plans to move across the country after the agreement was signed. In this instance, Mary Alice Cooke had written of such an intention to an acquaintance, and she had also made relevant inquiries to moving services. All inferences of fact indicate that Mary Alice Cooke intended to move across the country with her children shortly after the dissolution agreement was signed. Furthermore, the transcript from the court approval of the dissolution agreement demonstrates that plaintiff knew that she was agreeing to the provision to vacate the premises within two weeks of the signing date.

As to the allegations concerning Mr. Tarnow's failure to specify the division of property and to conduct adequate discovery as to Mr. Tarnow's assets, Mr. Cantor could only speak to speculative damages [*19] resulting from the breach of the standard of care. Similarly, plaintiffs have offered no evidence that any damages resulted from that alleged breach.

Mr. Cantor also could not specify damages related to the provision that Mary Alice Cooke had entered into the agreement freely, and without fraud, duress or undue influence. He stated that his only knowledge that Mr. Tarnow had intimidated plaintiff into signing and agreeing to the dissolution agreement came from Mary Alice Cooke. Plaintiffs have submitted no evidence to substantiate this claim.

Plaintiffs rely only upon Mr. Cantor's statement that "as a result of the foregoing acts of legal malpractice the plaintiffs have suffered economic damages." However, such a conclusory statement cannot constitute evidence sufficient to survive summary judgment and raise a genuine issue of material fact. *Edberg v. CPI-The Alternative Supplier, Inc., 156 F. Supp. 2d 190, 194 (D.Conn. 2001)*(broad conclusory statements by the nonmoving party or its experts are insufficient to defeat summary judgment). In light of plaintiffs' failure to adduce evidence that raises disputed issues of material fact relative to the existence of damages [*20] resulting from the breach of the standard of care for legal services, the Court will enter summary judgment on counts one, two, three and four.

Count Five: CUTPA

Plaintiffs assert a CUTPA claim that incorporates the allegations of legal malpractice, and alleges that "the Defendants induced the Plaintiff to enter into the aforesaid contract of employment by representing to the Plaintiffs that they possessed the skill and time to represent them competently and effectively" and, "engaged in unfair and deceptive acts in trade and commerce in violation of CUTPA and thereby caused the Plaintiffs to suffer ascertainable loss." As defendants argue, summary judgment should enter on this claim.

It is well established that professional malpractice does not give rise to a cause of action pursuant to

CUTPA. *Beverly Hills Concepts, Inc. v. Schatz & Schatz, Ribicoff & Kotkin, 247 Conn. 48, 717 A.2d 724 (1998).* In Beverly Hills Concepts, the Connecticut Supreme Court explained that only the entrepreneurial aspects of the practice of law are covered by CUTPA. The entrepreneurial aspects of legal practice include solicitation of business and billing practices, as opposed [*21] to claims directed at the competence of and strategy employed by the defendants. See *Haynes v. Yale-New Haven Hospital, 243 Conn. 17, 35-36, 699 A.2d 964 (1997).* Here, the allegations of the complaint and the evidence do not support an inference that plaintiffs' CUTPA claim is directed at the entrepreneurial aspect of the defendants' law practice. In their opposition brief, plaintiffs claim that Mary Alice Cooke "never received any credit or proper accounting for" a $ 15,000 retainer given by plaintiff to the defendants in the legal malpractice case, for which case plaintiffs claim there was no retainer agreement. However, these assertions are not supported by the evidence. Mary Alice Cooke signed a retainer agreement for Cooke v. Tarnow dated November 8, 1993, which agreement provided for no retainer fee and only a contingency fee agreement.

Count Six: Statutory Theft

Plaintiffs' claim of statutory theft is also premised on the allegations of legal malpractice. Specifically, plaintiffs assert that retainer fees were paid to defendants, and that their legal representation was inadequate. Defendants move for summary judgment on this claim for lack of evidence [*22] supporting an inference that any theft occurred.

*Section 52-564* provides that a person "who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages." Statutory theft is synonymous with larceny and must be proved by clear and convincing evidence. *Suarez-Negrete v. Trotta, 47 Conn. App. 517, 705 A.2d 215 (1998).* Thus, plaintiffs must prove that defendants intended to deprive them of property. See *Conn. Gen. Stat. § 53a-119.*

As defendants point out, plaintiffs have no evidence that raises the inference that defendants intended to steal from the plaintiffs. Although plaintiffs allege that defendants wrongfully accepted a $ 10,000 retainer from Mary Alice Cooke in Cooke v. Ward, the evidence demonstrates that defendants did not take a $ 10,000 retainer fee from the plaintiff in that matter. Furthermore, these allegations relate to conduct that took place in 1993, when the retainer agreement in that matter was signed; and in June, 1996, when the judgment was satisfied and funds disbursed. Since the plaintiffs did not file this action until November, 1999, this action is [*23] barred by the relevant three-year statute of limitations provided by *Section 52-577.* Accordingly, summary judgment will enter on this claim.

Count Seven: Offense Against Public Policy

Plaintiff Mary Alice Cooke alleges that defendants violated public policy by collecting both a retainer fee and then taking a percentage of the jury award plus expenses. Defendants argue that this claim fails as a matter of law.

As defendants state, plaintiff alleges a breach of unspecified public policy and common law without referencing any statutory or common law cause of action. Such an unrecognized and unsubstantiated claim does not give rise to a cognizable cause of action. See *Vogel v. Maimonides Academy of Western Connecticut, 58 Conn.App. 624, 630-1, 754 A.2d 824 (2000).*

Count Eight: Breach of Contract

Plaintiff Mary Alice Cooke alleges (1) that defendants induced her to enter into a retainer agreement, wherein they took $ 2,000, and represented that they possessed the skill and time to represent her interests competently and effectively in defense of an arrest which occurred on March 3, 1992; (2) that defendants filed the complaint in the action Ward v. Cooke [*24] on August 29, 1994; and (3) that they failed to protect her interests "by not amending the complaint and adding a claim for a second and third unlawful arrest, which occurred respectively, on or about June 3, 1993 and on or about November 2, 1994." Plaintiff asserts that defendants failed to conduct proper discovery on the second and third arrests, failed to expunge her record of these arrests, failed to properly present her with bills or any accounting detailing the hours spent and charged against her retainer, failed to properly represent the plaintiff and breached their contract of competent legal representation. Plaintiff claims that as a result of defendants' failure, the statute of limitations bars her future recovery, and that she has been unable to secure proper employment due to the fact that she has three arrests on her permanent record.

Defendants argue that plaintiff's claim is an unsubstantiated tort claim of legal malpractice veiled as a breach of contract, which claim is barred by the relevant three-year statute of limitations period of *Section 52-577*. The Court agrees that plaintiff's claim is one of legal malpractice that is barred by the statute of limitations. This [*25] action was filed on November 15, 1999, and according to the conduct alleged in the complaint, defendants' representation of the plaintiff in the matter of Cooke v. Ward ended after June, 1996. Summary judgment will be granted on this count.

Collusion

In their brief, plaintiffs assert that her ex-husband, his creditors, her former attorneys and others are in collusion together against Mary Alice Cooke. No evidence substantiates this claim. Thus, even if it were part of the complaint's allegations, the court would grant summary judgment on it.

CONCLUSION

For the foregoing reasons, the motion for summary judgment [document # 75] is GRANTED. The clerk is instructed to enter judgment in favor of the defendant and to close this case.

SO ORDERED.

____/s/____

WARREN W. EGINTON

SENIOR UNITED STATES DISTRICT JUDGE

Dated at Bridgeport, Connecticut this 27th day of August, 2002.