**MARY FERRARI**

Associate Professor of Law  
Quinnipiac University School of Law  
275 Mount Carmel Avenue  
Hamden, CT 06518  
203.582.3269

Consulting Office Address  
30 Indian Point Road  
Apt. 1  
Branford, CT 06405  
203.488.2203

August 18, 2003

Kenneth A. Votre  
Hurwitz, Cooper, Silverman & Votre, P.C.  
667 State Street  
New Haven, CT 06511

RE: <u>Zimmerman v. Cohen</u>

Dear Mr. Votre:

    This letter serves as my expert report in the above-captioned matter. You have asked me to render an opinion with respect to certain standards of practice and federal income tax issues raised by a Marital Settlement Agreement ("Agreement"), entered into on May 25, 2001, between Plaintiff, Gary Zimmerman, and his ex-wife, Joan Goodman Zimmerman, in connection with their divorce. Gary Zimmerman was represented in the divorce action by Defendant, Gary I. Cohen, a lawyer admitted to practice in the State of Connecticut, who, with opposing counsel, participated in the drafting of the Agreement, during the course of a week-long divorce mediation held in Chicago, Illinois during the week of May 21, 2001.

    At the outset let me briefly summarize my qualifications to render an expert opinion. I have been a member of the Connecticut Bar since 1978. In 1983 I received an LL.M. degree in taxation from New York University School of Law. I clerked for two years for a judge of the United States Tax Court, practiced law in the tax department of a large New Haven law firm, and, for the past seventeen years I have taught courses (at both the J.D. and LL.M. levels) and done research in individual and corporate taxation, and served as Co-Director of the Tax Clinic at the Quinnipiac University School of Law. I have attached a copy of my professional resume.

    It is my opinion that Mr. Cohen failed to conform his conduct to the recognized professional standards of a federal tax practitioner in the following ways: 1) by taking a fee of $300,000, designated as payment for tax planning, and yet failing properly to determine and inform Mr. Zimmerman of the tax consequences of the property transfers agreed to in the Marital Settlement Agreement; 2) by failing to consult competent tax counsel for advice

concerning the appropriate way to structure the property transfers; and 3) by designating as payor of the $300,000 fee a non-party corporate entity, the beneficial interest of which were owned by the Zimmermans, in order to justify a corporate business deduction when he should have known that attorneys fees incurred in a divorce action are the personal expenses of the individual parties, not attributable to corporate business, and, therefore, are not deductible by the corporation as an ordinary and necessary business expense.

In forming these opinions I have reviewed the documents you provided:

- A retainer letter, dated August 1, 2000, from Cohen to Zimmerman outlining the terms of Cohen's representation of Zimmerman in the divorce action;
- A letter, dated May 24, 2001, from Cohen to Zimmerman confirming that Cohen has not provided Zimmerman any tax advice in connection with the consequences of the property transfers that were part of the Marital Settlement agreement, and requesting that Zimmerman obtain independent tax advice concerning the property transfers;
- The Marital Settlement Agreement, signed by the Zimmermans on May 25, 2001, which sets forth the terms of their divorce property settlement;
- The affidavit, dated August 23, 2001, of Andrew D. Eichner, a Chicago attorney with whom Zimmerman briefly consulted during the course of the week-long divorce mediation that resulted in the signing of the Marital Settlement Agreement;
- The federal income tax return for tax year 2001, dated August 8, 2002, of Zimmerman Properties, Inc., a corporate entity owned by both Mr. And Mrs. Zimmerman prior to the divorce, which has substantial real estate holdings;
- Cohen's deposition in this matter, which you took on October 14, 2002 and February 6, 2003; and
- Cohen's billing records, dated from August 2, 2000 to June 29, 2001, which reflect all amounts billed by Cohen to Zimmerman during the course of the divorce proceedings (with the exception of the $300,000 fee provided for in the Marital Settlement Agreement.

Summary of Facts

Based on the documents described above, I formed my opinion in accordance with the facts, which I will summarize here. Zimmerman engaged Cohen to represent him in a divorce action in accordance with a retainer agreement that set forth an agreed-upon hourly fee. In an effort to settle the property issues of the divorce, the parties participated in a week-long divorce mediation session in Chicago, Illinois, during the week of May 21, 2001, culminating in the signing of the Agreement, signed by the Zimmermans on Friday, May 25, 2001, which set forth the terms of the their property division. The Agreement was negotiated and drafted on behalf of the parties by Cohen, representing Zimmerman, and David Grund, a Chicago attorney, who represented Mrs. Zimmerman.

Section 4 of the Agreement contains the terms of the division of property between the parties, the relevant portions of which are:

- Section 4.0.B, providing that Mrs. Zimmerman is awarded certain specified parcels of real estate, operating accounts, and security deposits, all of which are assets of Zimmerman Properties, Inc., an S Corporation engaged in the real estate business, the beneficial interest of which was theretofore owned jointly by the Zimmermans;
- Section 4.2.b, providing that Mr. Zimmerman is awarded :"[a]ny and all interest in and to Zimmerman Properties, Inc.," not including the property described above; and
- Section 4.1, providing that Mr. Zimmerman "shall cause the property described in 4.0(b) above to be transferred to" a trust containing Mrs. Zimmerman's separate property.

Section 7 of the Agreement is titled "Tax Provisions," the relevant portions of which are:

- Section 7.2, providing that the parties "acknowledge that the transfer of property herein constitutes a transfer of property between spouses in accordance with Internal revenue Code 1986," and that "[i]t is intended that no taxable event occur as a result of the transfers of properties" between the parties; and
- Section 7.3, providing that "[n]otwithstanding the parties' intent that the transfers to made herein shall be a nontaxable event in accordance with transfers between spouses pursuant to I.R.C. §1041," the parties agree to share equally "any tax liability imposed as a result of the transfer to the Wife of the property listed in paragraph 4.0(b)." They also agree "to work with their. . . accountant. . . and tax counsel to adopt any plan which might defer any taxable event" and to cooperate in "adopting a tax plan which would result in the least taxable gain to be reported or deferral of that gain[;]" and
- Section 7.6, reiterating that the parties "intend that all property transfers incident to this Agreement are to be treated as non-taxable events pursuant to section 1041 of the Code."

Section 12 of the Agreement, titled "Acceptance of Agreement and Advice of Counsel" contains section 12.3, in which the parties "admit and agree" that they have "had the opportunity to discuss with independent tax counselors, other than the attorneys of record" the income and estate tax "implications and consequences" of the property division, and that Grund and Cohen "were not expected to provide and, in fact, did not provide tax advice concerning this agreement."

Section 5.2 of the Agreement, however, provides that Zimmerman Properties, Inc. shall pay a fee in the amount of $300,000 each to Grund and Cohen "for and as attorneys fees in connection with services rendered to Zimmerman Properties, Inc. with respect to tax planning, counseling and in matters relating to advice and consultation given to Zimmerman Properties, Inc. and to Husband and Wife in conjunction with the preservation and disposition of income producing properties." In his deposition, Cohen explained that the inclusion of Section 5.2 providing for the payment by Zimmerman Properties, Inc. of the

3

$300,000 fees "was an effort by Mr. Grund and me to provide a means for the payments that were coming out of the Zimmerman Properties operating accounts to at least have the potential to be treated, in part or in whole, depending upon the conclusions of the tax return preparers, as business expenses." (Dep. Tr. at 109.) A review of Cohen's billing ledger for Zimmerman divorce matter reveals one entry, dated January 8, 2001, number 47160, indicating that Cohen spent .4 hours at his $450.00 per hour rate (or a total of $180.00) reviewing tax documents and having a telephone conference with Zimmerman. Cohen stated in his deposition that he spoke "from time to time" with Zimmerman's accountant, Stephen King. (Dep. Tr. at 110.) The billing ledger does not show any conferences or telephone communications identifying King as a participant.

In a letter dated May 24, 2001, the day before Zimmerman signed the Agreement, Cohen confirmed with Zimmerman that prior to the completion of the drafting of the Agreement he advised Zimmerman that he was not providing tax advice in connection with the transfer of real estate and cash assets to Mrs. Zimmerman as part of the property settlement. Cohen further stated in the letter that he had identified for Zimmerman a tax issue concerning the transfer of real estate assets to Mrs. Zimmerman. Cohen requested that Zimmerman obtain "independent advice from a tax expert" on the issue of whether Zimmerman would incur any income tax liability arising out of the transfer.

When asked at his deposition about the apparent contradiction between Section 5.2 of the Agreement, stating that he had provided tax advice to Zimmerman Properties, Inc. and Zimmerman, and Section 12 and the May 24th letter, stating that he had not provided tax advice, Cohen stated that "I did, in fact, provide tax advice to Mr. Zimmerman at various times throughout my representation of Mr. Zimmerman." (Tr. at 113.) Cohen stated that he raised questions with Zimmerman concerning whether or not section 1041 of the Internal Revenue Code would apply to shield the transfer of properties from Zimmerman Properties, Inc. to Mrs. Zimmerman from capital gains tax, and concerning the deductibility by Zimmerman Properties, Inc. of the $300,000 fees paid to him and Grund. (Tr. at 84, 164.) Cohen stated "I think that raising the questions is also advice," (Tr. at 165), and that "modern matrimonial practice involves tax issues constantly, and even though the lawyer may not provide the advice for the ultimate resolution of the issue, he provides tax-related advice in identifying further discussion with the experts." (Tr. at 115)

Cohen stated in his deposition that "[t]he whole deal that was worked out ... seemed to be cast in such a way that he [Zimmerman] would not have had any immediate capital gains recognition problems." (Tr. at 84.) Cohen further stated, however, that he did no research, came to no conclusions, and rendered no opinion on the questions he raised with Zimmerman. (Tr. at 116, 165.) Cohen stated several times in his deposition that he told Zimmerman that he should consult with his tax advisors for advice as to the tax consequences of the distribution of the real estate to Mrs. Zimmerman by Zimmerman Properties, Inc. and the deductibility by the corporation of the $300,000 fees paid to him and Grund. (Tr. at 84, 112, 166.) Cohen told Zimmerman that he should confer with tax counsel "in order to accomplish the distribution in as tax friendly manner as possible." (Tr. at 166.) He stated that "I wanted to make it very clear to Mr. Zimmerman that I was not giving him tax advice from which he should prepare a federal tax return. . . I was trying to identify

issues that would give him the ability to confer with and get competent expert advice on the specifics of the tax-related issues." (Tr. at 117.)

Analysis

Pursuant to section 5.2 of the Agreement, Cohen and Grund were each paid a fee of $300,000 by Zimmerman Properties, Inc. for "tax planning" advice given to Zimmerman Properties, Inc. and the Zimmermans in connection with the division of certain income-producing properties owned by the corporation. Cohen does not consider himself an expert in corporate taxation, and both the Agreement and the May 24 letter contain disclaimers that Cohen provided no tax advice to Zimmerman regarding the tax consequences of the Agreement. Cohen stated, however, that he did provide tax advice to Zimmerman, although he was not specific as to what advice he gave other than to say that "raising the questions is also advice." Cohen failed to engage the assistance of a tax specialist in structuring the property division set forth in the Agreement, and he failed to refer Zimmerman to a tax specialist or to allow Zimmerman a meaningful opportunity to consult a tax specialist concerning how best to structure the transaction or the tax consequences of the transaction as set forth in the Agreement before he signed it. Thus, Cohen, in participating in the drafting of the Agreement setting forth the terms of a transaction between the Zimmermans, recommending that Zimmerman sign it, and charging a fee of $300,000 for tax planning advice, in effect, elected to handle a specialty matter without the aid of expert assistance, and he should be held to the standard of care applicable to lawyers practicing in the federal tax area. See, Horne v. Peckham, 97 Cal. App. 3d 404, 415 (1979), overruled on other grounds, ITT Small Business Finance Corp. v. Niles, 9 Cal. 4th 245 (1994).

You have asked whether Cohen's representation of Zimmerman in connection with the drafting of the Marital Settlement Agreement meets the standard of practice of a federal tax practitioner. In my opinion, it does not. In Connecticut,

> [t]he duty of . . . an attorney specializing in taxation . . . [is] to exercise reasonable care, skill and diligence in the performance and execution of the legal services being furnished to the [client]. The level of that duty [is] to exercise the same degree of care, skill and diligence which other attorneys in the same or similar locality and in the same line of practice would have exercised in similar circumstances."

Bent v. Green, 39 Conn. Supp. 416, 420 (1983).

The conduct of a lawyer who practices in the field of federal income tax, in common with other lawyers, is governed by the Rules of Professional Conduct. Rule 1.1 requires that a lawyer provide competent representation. Rule 1.4 requires that a lawyer explain a matter to a client "to the extent reasonably necessary to permit the client to make informed decisions." Rule 2.1 provides that in his role as Counselor a lawyer must exercise "independent professional judgment and render candid advice." By disclaiming any responsibility for providing tax advice to Zimmerman, Cohen's conduct failed *ipso facto* to conform to the conduct expected of a federal tax practitioner under the foregoing rules. A federal tax practitioner who is consulted for tax planning advice would have used his

5

specialized knowledge to structure a transaction in, to use Cohen's words in his deposition, "as tax friendly" a manner as possible under the circumstances; would have explained to the client all the tax consequences of that transaction to ensure the client was entering into the transaction with informed consent, as it were; and would not have put language in the agreement specifying certain intended tax consequences that did not apply to the transaction as structured.

In addition to the Rules of Professional conduct described above, the basic ethical standards governing lawyers in federal tax practice are set forth in Formal Opinion 85-352, issued by the Standing Committee on Ethics and Professional Responsibility of the American Bar Association, on July 7, 1985. Formal Opinion 85-352 provides, in relevant part, that

> a lawyer, in representing a client in the course of the preparation of the client's tax return, may advise the statement of positions most favorable to the client if the lawyer has a good faith belief that those positions are warranted in existing law or can be supported by a good faith argument for an extension, modification, or reversal of existing law. A lawyer can have a good faith belief in this context even if the lawyer believes the client's position probably will not prevail. (Footnote omitted) However, good faith requires that there be some realistic possibility of success if the matter is litigated.
>
> . . .
>
> In the role as advisor, the lawyer should counsel the client as to whether the position is likely to be sustained by a court if challenged by the IRS. . . .

Although Formal Opinion 85-352 addresses the ethical obligation of tax lawyers in advising tax return positions, the ABA Tax Section's Special Task Force Report to ABA Formal Opinion 85-352 confirms that

> [t]he same principles should apply to all aspects of tax practice to the extent return positions would be involved. For example, it should govern the lawyer's duty as to tax advice in the course of structuring transactions that will involve tax return positions, including tax advice in the course of preparing legal documents such as employee benefit trusts, wills, and business buy-sell agreements.

Cohen structured a transaction in the Agreement that was intended to be a nontaxable transfer of property between divorcing spouses under section 1041 of the Internal Revenue Code. Based on the standard of Formal Opinion 85-352, Cohen should have counseled Zimmerman as to whether there was a realistic possibility of success for the position that the property transfer was indeed nontaxable under section 1041. He did not do so. He merely informed Zimmerman that he should consult his accountant as to the tax consequences of the transaction. Thus, Cohen's conduct does not meet the standard of Formal Opinion 85-352.

In fact, the property transfer described in the Agreement is not entirely a nontaxable transfer of property between spouses under section 1041. Section 1041 provides, generally,

that no gain or loss shall be recognized on the transfer of property from "an individual" to (or in trust for the benefit of) a spouse or former spouse, if the transfer is incident to the divorce. Pursuant to section 4.0.B of the Agreement, Mrs. Zimmerman was to receive certain parcels of real estate, and pursuant to section 4.2.b Mr. Zimmerman was to receive "any and all interest in and to Zimmerman Properties, Inc." Mr. Zimmerman, however, did not own the property that Mrs. Zimmerman was to receive. The property was owned by Zimmerman Properties, Inc., a corporation, the beneficial interest in which was owned jointly by the Zimmermans. Section 4.1 of the Agreement, however, provides that Mr. Zimmerman "shall cause the property described in section 4.0(b) to be transferred" to a trust containing Mrs. Zimmerman's separate property.

When read together, the most reasonable interpretation of these three provisions of Section 4 of the Agreement is that some form of a two-step transaction is intended: 1) Mrs. Zimmerman transfers her interest in Zimmerman Properties, Inc. to Mr. Zimmerman, and 2) the corporation makes a distribution of the properties to Mr. Zimmerman who transfers them to Mrs. Zimmerman in exchange for her interest in the corporation. The transfer, between Mr. and Mrs. Zimmerman, of properties for an interest in the corporation would qualify as a nontaxable transfer under section 1041. But the pre-transfer distribution of the properties by Zimmerman Properties, Inc. to Mr. Zimmerman is a taxable event to Mr. Zimmerman. Zimmerman Properties, Inc. is not an "individual" within the meaning of the Code who can transfer property to a spouse or former spouse under section 1041. The only individual who could transfer the properties to Mrs. Zimmerman was Mr. Zimmerman, and he could have done that only if the corporation first distributed the properties to him.

Section 311(b) of the Code, a section covered in a basic course in corporate taxation and well known to all tax practitioners who practice in the area, provides that when a corporation distributes appreciated property to a shareholder, the corporation must recognize gain as if the corporation had sold the property to the distributee shareholder at its fair market value. Assuming the values of the properties distributed to Mr. Zimmerman exceeded their adjusted tax bases (which, in the case of depreciable commercial real estate, is likely) Zimmerman Properties, Inc. would have to recognize taxable gain on the distribution under section 311(b). And because Zimmerman Properties, Inc. is an "S" corporation for federal income tax purposes, the gain the corporation recognizes passes through to its shareholders under section 1366, in this case, Mr. Zimmerman.* Thus, Mr. Zimmerman would have to include the corporation's gain in his individual income tax return for the taxable year of the distribution and pay tax on that gain. In addition, depending on the amount of Mr. Zimmerman's adjusted tax basis in his interest in Zimmerman Properties, Inc., he might incur additional capital gain on the distribution itself. When an S corporation makes a distribution to a shareholder, section 1368 provides that the distribution is tax-free to the extent of the

---

* In the May 24, 2001, letter from Cohen to Zimmerman, Cohen indicates that the owner of the shares of Zimmerman Properties, Inc. is a trust owned by the Zimmermans. In the limited situations in which a trust is permitted to be an S corporation shareholder under section 1361(c)(2), the owners of the trust are taxed on S corporation income. Thus, even if a trust technically owns the shares of Zimmerman Properties, Inc., the Zimmermans are treated here as the shareholders who bear the tax consequences of S corporation operations.

7

shareholder's adjusted tax basis in his interest. Any amount of a distribution in excess of adjusted basis is treated, generally, as capital gain, but in certain cases, it can be treated as ordinary income.

Thus, contrary to Cohen's statement in his deposition that the transaction seemed to be cast in such a way so that Zimmerman would have no immediate capital gains recognition problems, in fact, under the transaction structured by Cohen and Grund, as described in section 4 of the Agreement, Zimmerman would have an immediate recognition of capital gain upon receipt of the properties by Mrs. Zimmerman (even if he did not technically take possession of them), and he might have an additional capital gain, depending on the actual amount of the distribution, if it exceeded the amount of the adjusted basis in his interest in the corporation. So, although the Agreement states the intent that no taxable event occur as a result of the transfer of properties, the transaction, as structured, does create a taxable event. Based on the transaction as described in section 4 of the Agreement, Cohen could not have advised Zimmerman that there was a realistic possibility of success on the claim that the transfers of properties would be nontaxable. His conduct, therefore, does not meet the standard of Formal Opinion 85-352.

Nor does Cohen's conduct meet the standard of Formal Opinion 85-352 with respect to the designation of Zimmerman Properties, Inc. as payor of the $300,000 fees to him and Grund for "tax planning" advice. Cohen explained in his deposition that they designated Zimmerman Properties, Inc. as the payor of the fees in order to create the potential for the corporation to claim a business deduction for the payments coming out of the corporation. Any tax practitioner would know that, when determining whether attorneys fees are deductible, the United States Supreme Court has held, in United States v. Gilmore, 372 U.S. 39 (1963), that the "origin of the claim" test applies. In Gilmore, the Court held that a taxpayer's legal fees incurred in a divorce action to protect his interest in his business were non-deductible personal expenses, because the origin of the claim was the divorce action, which is personal in nature. The origin of the claim in which the attorneys fees were paid was not attributable to the taxpayer's profit-seeking activities, and, therefore, were not deductible as business expenses.

In this case, the claim that produced the attorneys fees at issue was the Zimmerman divorce action, a personal claim, which is neither an ordinary and necessary business expense of the corporation under section 162 nor an ordinary and necessary expense of the corporation in connection with the production of income under section 212(1). Zimmerman Properties, Inc. would have no realistic possibility of succeeding in deducting the $600,000 payment in this case. Thus, Cohen's conduct in designating the corporation as the payor of the attorneys fees also fails to meet the standard of practice applicable to a federal tax practitioner.

The only deduction allowed by the Code for attorneys fees in a divorce action is under section 212(3), which provides for the deduction of expenses incurred "in connection with the determination, collection, or refund of any tax." Courts and the Internal Revenue Service have interpreted this provision to allow taxpayers to deduct the amount of legal fees allocated to obtaining tax advice in divorce actions. See, e.g., Munn v. United States, 455

8

F.2d 1028 (Ct. Cl. 1972); Hall v. United States, 578 F. 2d 1389 (Ct. Cl. 1978); and Revenue Ruling 72-545, 1972-2 C.B. 179. Section 212(3), however, appears in Part VII of Subchapter B of the Code, designated "Additional Itemized Deductions for Individuals." Accordingly, the deduction is available only to individual taxpayers, not corporations. Thus, Zimmerman Properties, Inc. is ineligible to deduct the attorneys fees under section 212(3).

Indeed, the tax effect of Zimmerman Properties, Inc.'s payment of the attorneys fees in this case would be an additional distribution to Zimmerman in the amount of $600,000, which, as explained above, depending on the amount of Zimmerman's basis in the corporation, may result in additional income to him. A tax practitioner would know that whenever someone other than the taxpayer satisfies an obligation of the taxpayer, the tax law treats the transaction as though the taxpayer first received the payment from the payor and then he satisfied the obligation himself. Old Colony Trust Co. v. Commissioner, 279 U.S. 716 (1929). The tax status of the deemed payment from payor to the taxpayer is determined based on their relationship. In this case, Zimmerman Properties, Inc. would be considered to have satisfied the personal obligation of its shareholder, Zimmerman, to pay the $600,000 attorneys fees, which were personal, non-deductible expenses having their origin in the divorce action. Thus, as sole shareholder of the corporation, Zimmerman would be treated as having received a distribution in the amount $600,000 from the corporation, which he then used to pay the attorneys, Grund and Cohen.

If the payment is treated as a deemed distribution as described above, Zimmerman should be eligible to then deduct the fees under section 212(3). Revenue Ruling 72-545, cited above, however, requires that the attorney make a good faith allocation of the fees that reasonably relate to tax planning. The burden is on the taxpayer, in this case Zimmerman, to show a reasonable basis for allocating a portion of the fee to tax planning advice. See, Hall v. United States, 578 F. 2d 1389 (Ct. Cl. 1978). It is unlikely that Zimmerman could meet this burden in this case in light of the fact that Cohen's billing ledger shows a total of .4 hours spent on reviewing tax documents. Based on Cohen's hourly fee of $450 per hour, .4 hours amounts to $180, so far less than the $300,000 charged as to be unreasonable.

In sum, Cohen's raising of questions for his client, Zimmerman, regarding the tax consequences of a transaction that Cohen participated in drafting, and for which he charged a fee of $300,000, falls below the standard of practice expected of a federal tax practitioner.

Very truly yours,

Mary Ferrari